UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

| | |
|---|---|
| HYDENTRA HLP INT. LIMITED, a foreign corporation d/b/a METART<br><br>    Plaintiff,<br><br>v.<br><br>CONSTANTIN LUCHIAN, an individual, KONSTANTIN BOLOTIN, an individual, SUN SOCIAL MEDIA, INC., a corporation, individually and d/b/a PLAYVID.COM, FEEDVID.COM, PLAYVIDS.COM and PEEKVIDS.COM; PLAYVID.COM; FEEDVID.COM; PLAYVIDS.COM; PEEKVIDS.COM; and John Does 1-20,<br><br>    Defendants. | Case No.<br>1:15-cv-22134-UU |

**DEFENDANTS' MOTION TO BIFURCATE DISCOVERY AND TRIAL OR IN THE ALTERNATIVE TO ISSUE PROTECTIVE ORDER TEMPORARILY LIMITING DISCOVERY TO THRESHOLD DISPOSITIVE ISSUE**

Plaintiff is a copyright troll whose present business model revolves around the filing of baseless and frivolous lawsuits in the hopes of forcing defendants to settle in the face of incurring high defense costs.  Plaintiff's litigation strategy is plainly demonstrated by its numerous filings of unnecessary motions that were rejected by this Court, culminating with its latest failed Motion to Compel (D.E. 51).  Plaintiff intentionally ignores the threshold matter that Defendants are entitled to the safe-harbors under the Digital Millennium Copyright Act ("DMCA") and instead attempts to bully Defendants into submission and settlement through blunt, unnecessary and costly litigation tactics.  Given that Defendants are in fact protected by

1

the safe harbors of DMCA, Plaintiff's copyright infringement claims can be summarily and dispositively resolved without burdening Defendants and this Court with Plaintiff's vexatious litigation practices and unnecessary discovery and motion practice.

For these reasons and as set forth below, Defendants, by and through their undersigned counsel, move this honorable Court to bifurcate discovery and trial as to the issues on whether Defendants are entitled to the DMCA safe-harbor or, in the alternative, to issue a protective order temporarily limiting discovery to the DMCA safe-harbor issue. Without an order bifurcating the issues or limiting discovery, the intention of congress to provide a safe-harbor to internet service providers like Defendant Sun Social Media, Inc. would be eviscerated as Defendants and this honorable Court would be forced to expend unnecessary resources on litigation as if the DMCA safe-harbor did not exist.

## I.     Background

Plaintiff Hydentra HLP Int. Limited purports to be a producer of pornographic films. However, its practices over the past year demonstrate that Plaintiff's main business model has in fact been copyright trolling. Since February of 2015, Plaintiff has initiated at least 17 lawsuits around the country against websites operators like Defendant Sun Social Media, Inc. and their alleged principals with complaints that look almost identical to the complaint in the present case.[1] Plaintiff's strategy is clear: force targets to settle in the face of high litigation costs over a vexatious and baseless lawsuit.

---

[1] *See*, Hydentra HLP Int. Limited v. Kporno.com et al, Case No. 2:2015-cv-00238 (D. Arizona) (filed Feb. 10, 2015); Hydentra HLP Int. Limited v. Tubenn.com et al, Case No. 2:2015-cv-00239 (D. Arizona) (filed Feb. 10, 2015); Hydentra HLP Int. Limited v. Pornvideoxo.com et al, Case No. 2:2015-cv-00240 (D. Arizona) (filed Feb. 10, 2015); Hydentra HLP Int. Limited v. Spankbang.com et al, Case No. 2:2015-cv-00199 (W.D. Wash.) (filed Feb. 10, 2015); Hydentra HLP Int. Limited v. HDPorn1080.com et al, Case No. 2:2015-cv-00442 (D. Arizona) (filed March 11, 2015); Hydentra HLP Int. Limited v. Pornburst.xxx et al, Case No. 2:2015-cv-00443

This litigation is vexatious and baseless because Defendant Sun Social Media, Inc. ("SSM") and by extension, its alleged principals Defendants Constantin Luchian and Konstantin Bolotin, are granted a safe harbor for allegedly copyright infringing materials on the websites playvid.com, feedvid.com, playvids.com and peekvids.com (the "Websites") pursuant to the Digital Millennium Copyright Act ("DMCA"), codified as 17 U.S.C. § 512.  SSM is entitled to the safe harbor under the DMCA because, *inter alia*:

1. The allegedly infringing files were uploaded onto the websites by users and not by Defendants.  *See* 17 U.S.C. § 512(c)(1); Affidavit of Konstantin Bolotin filed concurrently herewith ["Bolotin Aff."], ¶ 2.

2. SSM did not have actual knowledge that the allegedly infringing materials on the Websites were infringing, or, in the absence of such actual knowledge, was not aware of facts or circumstances from which the allegedly infringing activity was apparent, or, upon obtaining such knowledge or awareness, acted expeditiously to remove, or disable access to, the allegedly infringing material.  *See* 17 U.S.C. § 512(c)(1)(A); Bolotin Aff., ¶ 3.

---

(D. Arizona) (filed March 11, 2015); Hydentra HLP Int. Limited v. Pornowow.com et al, Case No. 2:2015-cv-00444 (D. Arizona) (filed March 11, 2015); Hydentra HLP Int. Limited v. Seesexvideo.net et al, Case No. 2:2015-cv-00371 (W.D. Wash.) (filed March 11, 2015); Hydentra HLP Int. Limited v. Sextvx.com, Case No. 2:2015-cv-00372 (W.D. Wash.) (filed March 11, 2015); Hydentra HLP Int. Limited v. Porn69.org et al, Case No. 2:2015-cv-00451 (D. Arizona) (filed March 12, 2015); Hydentra HLP Int. Limited v. Motherless, Inc. et al, Case No. 2:2015-cv-03834 (C.D. Cal.) (filed May 20, 2015); Hydentra HLP Int. Limited v. Jojobaa.net, Case No. 2:2015-cv-03904 (C.D. Cal.) (filed May 22, 2015); Hydentra HLP Int. Limited v. Adultpornvideoxx.com et al., Case No. 2:2015-cv-03950 (C.D. Cal.) (filed May 25, 2015); Hydentra HLP Int. Limited v. Luchian et al, Case No. 1:2015-cv-22134 (S.D. Fla.) (filed June 4, 2015); Hydentra HLP Int. Limited v. Maximum Apps Inc. et al, Case No. 1:2015-cv-22463 (S.D. Fla.) (filed June 30, 2015); Hydentra, L.P. HLP General Partner, Inc. et al v. Mindgeek USA Inc. et al, Case no. 1:2015-cv-23230 (S.D. Fla.) (filed August 27, 2015); Hydentra, L.P. HLP General Partner, Inc. et al v. Era Technologies, Ltd. et al, Case No. 1:2015-cv-24293 (S.D. Fla.) (filed November 18, 2015).

3. SSM does not receive a financial benefit directly attributable to any allegedly infringing activity. *See* 17 U.S.C. § 512(c)(1)(B); Bolotin Aff., ¶ 4.

4. Upon notification of claimed infringement, SSM acts expeditiously to remove, or disable access to, the material that is claimed to be infringing. *See* 17 U.S.C. § 512(c)(1)(C); Bolotin Aff., ¶ 5.

5. SSM has, at all relevant times, designated an agent to receive notifications of claimed infringement by making available through its Websites and by providing to the Copyright Office the information for its agent. *See* 17 U.S.C. § 512(c)(2); Bolotin Aff., ¶ 6.

6. SSM has adopted and reasonable implemented, and has informed users of the Website of, a policy that provides for the termination in appropriate circumstances of users who are repeat infringers. *See* 17 U.S.C. § 512(i)(1)(A); Bolotin Aff., ¶ 7.

7. SSM accommodates and does not interfere with standard technical measures that are used by copyright owners to identify or protect copyrighted works. *See* 17 U.S.C. §§ 512(i)(1)(B), (i)(2); Bolotin Aff., ¶ 8.

However, Plaintiff has chosen to ignore the foregoing and Defendants' safe harbors under the DMCA and has chosen to file suit against Defendants for infringement.

Plaintiff's 17 other nearly identical lawsuits, insistence on ignoring the plain facts and law and its litigation tactics in this suit clearly indicate that Plaintiff's only interest is to drive up Defendants' litigation costs so that they will pay out a settlement rather than pay the legal fees necessary to beat back the frivolous lawsuit. These vexatious litigation tactics have been present

since the start of litigation, but were brought into utmost focus with Plaintiff's most recent Motion to Compel (D.E. 51).

In the Motion to Compel, Plaintiff requested that this Court compel SSM to produce every single document relating to the advertisers on SSM's websites, SSM's independent contractors and programmers, SSM's owners and anyone to whom SSM owed any debt. When, at the hearing on the motion, Plaintiff was pressed to explain how any of this documentation was in any way relevant to the issues in this case, Plaintiff could only scrabble together the convoluted reason that Defendants may have told these individuals that there was infringing material on the Websites – which would somehow implicate their guilt. The Magistrate Judge recognized the baselessness of these allegations and summarily denied the motion on these issues.[2] *See* Docket Entry, 58. The entire exercise, including the written submissions and the in person hearing, was nothing more than an intentional drain on the Defendants' and the Court's resources.

But that was not the only time that Plaintiff burdened Defendant and this Court with unnecessary and vexatious motion practice. Almost immediately after Defendants filed an Amended Answer with narrowly tailored and expanded Affirmative Defenses, Plaintiff filed a motion to strike *every single one* of Defendants' affirmative defenses. Docket No. 41. Given the weak legal reasoning behind the motion to strike and that it would have no practical effect on the litigation even had Plaintiff been correct, the motion to strike was clearly intended to be an early attempt by Plaintiff to raise on Defendants' legal expenses through unnecessary and burdensome means. This honorable court recognized the baselessness of Plaintiff's Motion to Strike when it denied it in all respects except with regards to Defendants' 16th affirmative defense, which

---

[2] In fact, the only extent to which the Magistrate Judge allowed the motion was with respect to SSM's corporate filings with the relevant secretaries of state (which will be of no relevance to this case) and with respect to certain tax and profits documents not yet created, but were to be produced anyway once they were completed.

5

simply sought to reserve Defendants' rights to such other further and affirmative defenses as may be deemed applicable pursuant to further discovery and disclosure.  *See* Docket No. 53.

Plaintiff has currently scheduled three depositions in this case.  The first, currently scheduled for January 6, 2016, is the 30(b)(6) deposition of SSM on a wide range of topics, including the functionality of the backend software for the Websites, the identification of independent contractors and programmers used by SSM, the identification of the owners of SSM and the identification of all debt incurred by SSM.  *See* Notice of Taking Deposition of Corporate Representative Duced Tecum Pursuant to F.R.C.P. 30(b)(6), attached hereto as Exhibit 1.  Plaintiff has also scheduled individual depositions of the Defendants Constantin Luchian and Konstantin Bolotin for January 7, 2017, the only purpose of which could be to depose the individuals about issues irrelevant to SSM's DMCA safe-harbor.

On the basis of the foregoing, Plaintiff's strategy is clearly intended to run up Defendant's litigation costs and Defendants should be granted relief from the unnecessary costs and time it would need to expend with regards to any issues other than the Defendants' DMCA safe-harbor.

**II.     Argument**

Pursuant to Federal Rule of Civil Procedure 42(b), the court may order a separate trial of one or more separate issues or claims for convenience, to avoid prejudice or to expedite and economize.  "Only one of the criteria need be met to justify bifurcation."  In re Epixtar Corp., 2009 WL 2500463, at *2 (Bankr. S.D. Fla. Aug. 13, 2009) (citing Treece v. Hochstetler, 213 F.3d 360, 365 (7th Cir. 2000).  "The determination of whether bifurcation is appropriate is left to the sound discretion of the District Court."  Exemar v. Urban League of Greater Miami, Inc., 2008 WL 2645675, at *1-2 (S.D. Fla. June 26, 2008) (citing Griffin v. City of Opa-Locka, 261 F.3d 1295, 1301 (11th Cir. 2001)).  Moreover, the standard for bifurcation is low.  *See*

Harrington v. Cleburne County Bd. Of Educ., 251 F.3d 935, 938 (11th Cir. 2001) ("Fed.R.Civ.P. 42(b) confers broad discretion on the district court in this area, permitting bifurcation merely 'in furtherance of convenience.' That is not a high standard, and the district court's concern for clarifying the issues to be tried suffices to permit the court to separate the trials.").

As an alternative to bifurcation pursuant to Rule 42(b), Rule 26(c)(1)(D) permits the issuance of a protective order, upon showing of good cause and reasonableness, which "forbid[s] inquiry into certain matters, or limit[s] the scope of disclosure or discovery to certain matters." Rule 26(c)(1)(D) may be used to grant a stay of discovery where the resolution of a pending motion (in this case, a forthcoming motion for summary judgment on the issue of the DMCA safe-harbor) will dispose of the entire case. See, Exemar, supra at *2 (citing McCabe v. Foley, 233 F.R.D. 683, 685 (M.D. Fla. 2006)). When discovery is sought to be limited pending the resolution of a dispositive issue, the Court "must take a preliminary peek at the merits of a dispositive motion to see if it appears to be clearly dispose of the entire case." McCabe, 233 F.R.D. at 685.

In a case such as this, where there is a threshold issue of whether the Defendants qualify for a statutory safe-harbor, bifurcation (or at least a temporary limited stay of irrelevant discovery) is not only convenient, but bifurcation will expedite and economize this litigation because it will more than likely be dismissed once the DMCA safe-harbor is confirmed. This is exactly one of the purposes of bifurcation. See In re Epixtar Corp., supra at *2 (one of the purposes of bifurcation "is to defer costly discovery and trial preparation costs pending the resolution of preliminary liability issues" (quoting Novopharm Ltd. v. TorPharm, Inc., 181 F.R.D. 308, 312 (E.D.N.C. 1998))). Moreover, given that Plaintiff has been engaged in a clear and continuing litigation strategy of forcing Defendants into a settlement by unnecessarily and

frivolously driving up legal expenses, bifurcation (or at least a temporary protective order) would avoid undue prejudice to Defendants.

Given SSM's compliance with the DMCA, as detailed above, it is highly likely (if not certain) that this court will find that Defendants are entitled to the safe harbor under the DMCA, thereby precluding the necessity of any further discovery or litigation. Not only is this the purpose of bifurcation, but courts have regularly granted bifurcation or temporary protective orders in cases where further issues hinged on a threshold issue of liability or where tangential allegations would muddle the substantive issue. *See*, *e.g.*, Harrington v. Cleburne Cty. Bd. of Educ., 251 F.3d 935, 938 (11th Cir. 2001) (affirming bifurcation where complaint was muddled in discrimination suit and urging "district courts to 'take a firm hand' in ensuring efficient and clear proceedings on claims deserving trial" (quoting Chapman v. Al Transport, 229 F.3d 1012, 1027 (11th Cir. 2000))); Leschinsky v. Inter-Cont'l Hotels Corp., 2015 WL 6150888, at *2 (M.D. Fla. Oct. 15, 2015) (granting motion to bifurcate discovery on resolution of threshold matter of law); In re Epixtar Corp., *supra* at *2 ("Damages are often bifurcated from the determination of liability.").

This is often the case where a court must first determine a police officer's qualified immunity from litigation before it considers (and the parties consider discovery) of further claims against the officer and the government unit which employed the officer. *See*, *e.g.*, Baker v. Colonial Life & Acc. Ins. Co., 2014 WL 3850848, at *2 (W.D. Wash. Aug. 5, 2014) (granting motion to bifurcate and holding that "[i]f a single issue could be dispositive of the case or is likely to lead the parties to negotiate a settlement, and resolution of it might make it unnecessary to try the other issues in the litigation, separate trial of that issue may be desireable to save the time of the court and reduce the expenses of the parties."); Carr v. City of N. Chicago, 908 F.

Supp. 2d 926, 934 (N.D. Ill. 2012) (granting motion to bifurcate and stay discovery on claims against municipal defendants pending resolution of claims against police officers); Tabor v. New York City, 2012 WL 603561, at *11 (E.D.N.Y. Feb. 23, 2012) (granting defendants' motion to bifurcate discovery against city until after motion for summary judgment is decided); Beasley v. Kelly, 2010 WL 3221848  (D. Md. Aug. 13, 2010) (granting motion to bifurcate and stay discovery against county until after claims against police offers resolved first).

Because Defendants (and this honorable Court) should not be forced to expend resources on an extensive (and expensive) trial and pre-trial litigation when they are entitled to immunity under the DMCA, Defendants hereby move to bifurcate discovery and trial so as to be initially limited only to the question of whether SSM is entitled to the safe harbor under the DMCA.  In the alternative, Defendants hereby move for a temporary protective order against discovery into any issues not relevant to whether SSM is entitled to the safe harbor under the DMCA until such issue is decided on by this Court.

**Certification of 7.1 Conference**

Counsel for Defendants has conferred with counsel for Plaintiff, Spencer Freeman, and represents that Mr. Freeman did not consent the relief requested herein.

/s/ Brady J. Cobb
Brady J. Cobb, Esquire

**Respectfully submitted:**

| | |
|---|---|
| /s/ Valentin Gurvits | /s/ Brady J. Cobb |
| Valentin D. Gurvits (*pro hac vice* application forthcoming) | Brady J. Cobb, Esquire |
| Matthew Shayefar (*pro hac vice* application forthcoming) | Florida Bar No. 031018 |
| BOSTON LAW GROUP, PC | COBB EDDY, PLLC |
| 825 Beacon Street, Suite 20 | 642 Northeast Third Avenue |
| Newton Centre, MA 02459 | Fort Lauderdale, Florida 33304 |
| Telephone: (617) 928-1804 | Telephone (954) 527-4111 |
| Facsimile: (617) 928-1802 | Facsimile (954) 900-5507 |
| vgurvits@bostonlawgroup.com | bcobb@cobbeddy.com |
| matt@bostonlawgroup.com | |

*Attorneys for Defendants*
*Constantin Luchian,*
*Konstatin Bolotin and*
*Sun Social Media Inc.*

Dated: December 30, 2015

## **CERTIFICATE OF SERVICE**

**I hereby certify** that a true and correct copy of the foregoing was served electronically via the CM/ECF electronic filing system on all counsel or parties of record on the service list below this 30th day of December, 2015.

/s/ Brady J. Cobb
Brady J. Cobb

## **SERVICE LIST**

Aaron Behar, Esquire
Jaclyn Behar, Esquire
BEHARBEHAR
1840 North Commerce Parkway
Suite One
Weston, Florida 33326
Telephone: (954) 688-7642
Facsimile: (954) 332-9260
AB@BeharBehar.com
JB@BeharBehar.com

Spencer D. Freeman
Freeman Law Firm, Inc.
1107 1/2 Tacoma Avenue South
Tacoma, Washington 98402
Telephone: (206) 516-3800
Facsimile: (206) 516-3888
sfreeman@freemanlawfirm.org

# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 1:15-cv-22134-UU

HYDENTRA HLP INT. LIMITED,
a foreign corporation d/b/a METART,

    Plaintiff,

vs.

CONSTANTIN LUCHIAN, an individual,
KONSTANTIN BOLOTIN, an individual,
SUN SOCIAL MEDIA, INC., a corporation,
individually and d/b/a PLAYVID.COM,
FEEDVID.COM, PLAYVIDS.COM, and
PEEKVIDS. COM; PLAYVID.COM;
FEEDVID.COM; PLAYVIDS. COM;
PEEKVIDS.COM and;
*and John Does 1-20,*

    Defendants.
_____/

## NOTICE OF TAKING DEPOSITION
## OF CORPORATE REPRESENTATIVE DUCES TECUM
## PURSUANT TO F.R.C.P. 30(b)(6)

**PLEASE TAKE NOTICE** that the undersigned will take the video deposition of:

| | |
|---|---|
| **DEPONENT:** | **Corporate Representative of:** <br>**Sun Social Media, Inc. to be deposed on the issues contained within the attached Exhibit "A".** |
| **DATE:** | **Wednesday, January 6, 2016** |
| **TIME:** | **10:00am** |
| **PLACE:** | **Universal Court Reporting** <br>**44 West Flagler, Suite 2000** <br>**Miami, Florida 33130** |

BeharBehar ♦ 1840 North Commerce Parkway ♦ Suite One ♦ Weston, Florida 33326
T: 954-688-7642    F: 954-332-9260    W: BeharBehar.com

1 of 5

Upon oral examination before **UNIVERSAL COURT REPORTING**, or any other Notary Public or officer authorized by law to take depositions in the State of Florida. The oral examination will continue from day to day until completed.

The deposition is being taken for the purpose of discovery, for use at trial, or for such other purposes as are permitted under the Rules of Court, Rules 1.280, 1.310, 1.350, 1.360, 1.380 and 1.410.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of December, 2015 we electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Brady J. Cobb, Esq.; Valentin Gurvits, Esq.; and Matthew Shayefar, Esq.

\

        Respectfully submitted,

        BeharBehar
        1840 North Commerce Parkway
        Suite One
        Weston, Florida 33326
        Telephone: (954) 688-7642
        Facsimile: (954) 332-9260
        E-mail: AB@BeharBehar.com

By:   */s/Aaron Behar, Esq.*
       Aaron Behar, Esq.
       Florida Bar No.: 166286
       */s/Jaclyn Behar, Esq.*
       Jaclyn Behar, Esq.
       Florida Bar No.: 63833
       ***Counsel for Plaintiff***

BeharBehar ♦ 1840 North Commerce Parkway ♦ Suite One ♦ Weston, Florida 33326
T: 954-688-7642    F: 954-332-9260    W: BeharBehar.com

2 of 5

3 of 5

And:   */s/Spencer D. Freeman, Esq.*
       Spencer D. Freeman, Esq.
       Freeman Law Firm, Inc.
       1107 ½ Tacoma Avenue South
       Tacoma, WA 98402
       Telephone: (253) 383-4500
       Facsimile: (253) 383-4501
       E-mail: sfreeman@freemanlawfirm.org
       ***Counsel forPlaintiff (Pro Hac Vice)***

BeharBehar • 1840 North Commerce Parkway • Suite One • Weston, Florida 33326
T: 954-688-7642    F: 954-332-9260    W: BeharBehar.com

3 of 5

# EXHBIIT "A"

1. Pertaining to videos uploaded on Playvid.com, feedvid.com, playvids.com and peekvids.com, the specific information collected from the uploader and the manner, location, and parameters that the information is stored and maintained.

2. Pertaining to videos uploaded on Playvid.com, feedvid.com, playvids.com and peekvids.com, the entire process that a potential uploader must go through in order to upload a video on the web site(s).

3. Pertaining to videos uploaded on Playvid.com, feedvid.com, playvids.com and peekvids.com, all software used to complete the process of receiving the upload through public display on the web sites.

4. Pertaining to videos uploaded on Playvid.com, feedvid.com, playvids.com and peekvids.com, the process for a video to be reviewed by Sun Social Media, or any agent therefore, before being displayed on the web site(s).

5. Pertaining to videos uploaded on Playvid.com, feedvid.com, playvids.com and peekvids.com, all software used to keep track of videos posted by each user, the full functionality of the software, who authored the software, when the software was first utilized by Sun Social Media on the web sites.

6. All persons and processes involved in implementing repeat infringer policy, including but not limited to who reviews take down notices to determine whether discipline necessary, who determines discipline, who implements discipline, the procedure for implementing discipline, and if the discipline is implemented electronically the software used to implement the discipline and all data associated with the implementation of the discipline.

7. Identification of independent contractors used by Sun Social Media, Inc. for any tasks on Playvid.com, feedvid.com, playvids.com and peekvids.com.

8. Identification of programmers utilized by Sun Social Media, Inc. for any aspect of Playvid.com, feedvid.com, playvids.com and peekvids.com.

9. All persons and processes involved in receipt of take down notices and responding to take down notices.

10. Identification of all owners and/or shareholders of Sun Social Media, Inc. both current and from inception of the company, including names, roles, and current contact information.

BeharBehar • 1840 North Commerce Parkway • Suite One • Weston, Florida 33326
T: 954-688-7642     F: 954-332-9260     W: BeharBehar.com

4 of 5

11. Identification of all debt incurred by Sun Social Media, Inc., both current and from the inception of the company, including to whom the debt is owed, for what the debt was incurred, and the terms of the debt.

BeharBehar • 1840 North Commerce Parkway • Suite One • Weston, Florida 33326
T: 954-688-7642    F: 954-332-9260    W: BeharBehar.com

5 of 5