UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 1:15-cv-22134-UU

HYDENTRA HLP INT. LIMITED,
a foreign corporation d/b/a METART,

      Plaintiff,

vs.

CONSTANTIN LUCHIAN, an individual,
KONSTANTIN BOLOTIN, an individual,
SUN SOCIAL MEDIA, INC., a corporation,
individually and d/b/a PLAYVID.COM,
FEEDVID.COM, PLAYVIDS.COM, and
PEEKVIDS. COM; PLAYVID.COM;
FEEDVID.COM; PLAYVIDS. COM;
PEEKVIDS.COM and;
and John Does 1-20,

      Defendants.

_____/

## PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

PLAINTIFF, HYDENTRA HLP INT. LIMITED d/b/a METART ("Hydentra" or "Plaintiff"), through its counsel, submits the following Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment, and states the following.[1]

1.     Hydentra is the producer, distributor, and exclusive licensor of its own motion pictures that explore and deliver sensuality and sexuality through artistic photography, video, and erotic stories. Hydentra is well known in the industry for producing high quality content. In fact, SexArt.com was just named 2016 XBiz Adult Site of the Year and 2016 AVN Best Director &

---

[1]   For purposes of this Statement of Facts, Exhibit 1 will be comprised of the Declaration of Jon Krogman and all exhibits thereto; and Exhibit 2 will be comprised of the Declaration of Jason Tucker and all exhibits thereto. The deposition of Konstantin Bolotin will be cited as [D.E. #74, date, page].

Film. Plaintiff prides itself on high quality movies, often spending six times more than industry standards in production costs. *Exhibit 1,* ¶3.

2.      Since 1999, Hydentra has grown its trademark brands into a globally recognized leader of sensual art garnering numerous industry awards through the use of studios around the globe, exotic locations, high budget productions, engaging storylines, famed photographers and directors coupled with the dedication from its artists and technicians. *Exhibit* 1, ¶4.

3.      Hydentra owns and/or operates a group of erotic web sites, commonly known as the MetArt Network of adult entertainment properties. These websites include MetArt.com, SexArt.com, Errotica-Archives.com, EroticBeauty.com, TheLifeErotic.com, RylskyArt.com, ALSScan.com, VivThomas.com, EternalDesire.com, Stunning18.com, HollyRandall.com, domai.com, goddessnudes.com, and bbfilms.com. Some of these web sites contain Hydentra produced content while others contain content for which Hydentra has obtained exclusive licensing rights. *Exhibit* 1, ¶5.

4.      The Hydentra websites are paid membership sites.[2] Hydentra's movies are intended to be available only through its paid membership sites. The Hydentra business model is simply that a user must be a paid member to a Hydentra site to view Hydentra's movies. *Exhibit 1,* ¶6.

5.      Hydentra registers the movies it produces with the United States Copyright Office. Hydentra produced all movies at issue here and owns the copyrights to each. *Exhibit* 1, ¶¶12-59. In addition, Hydentra filed trademark registrations for MetArt, used in commerce since May 2002, and SexArt, used in commerce since April 2011. *Exhibit 1,* ¶9.

---

[2] Hydentra engages in extremely limited licensing of its content to other entities or websites for viewing, in addition to the small sample of promotional materials provided to Hydentra affiliates for the sole purpose of the affiliates' promoting Hydentra's web sites. All licensing is done with the intent for brand exposure and is limited to a small subset of hand-selected content. *Decl. J. Krogman,* p 3, ¶ 8.

6.        Numerous web sites operate under the guise of Internet Service Providers ("ISP") while displaying free copyrighted adult content without license or authority. Commonly referred to as "tube sites," these sites often portray themselves as third party upload sites, analogous to Youtube.com. The existence of tube sites damages paid membership sites as users are less likely to pay a monthly membership fee when they can access a producer's movies for free. *Exhibit 1,* ¶10.

7.        Given the prevalence of tube sites and the damage such sites do to paid membership sites, Hydentra retained the services of several vendors to investigate copyright infringement, send take-down notices for detected infringement of Hydentra copyright, and document infringements when take-down notices are ignored and/or web sites do not qualify for DMCA safe harbor protections. *Exhibit 1,* ¶11; *Exhibit 2,* ¶3.

8.        In January 2015, one such vendor, Battleship Stance LLC, discovered a total of 37 of Hydentra's copyrighted movies displayed for free on web site Playvid.com.  The website contained Hydentra's trade name in the meta tags for the pages displaying the videos.  These copyrighted movies were: *Anna AJ in the Oriente, Approaching, At The Movies, Be My Slave, Book of Love, Concierge, Cybersex, Desire, Draw Me, Finish Me, First, Gypsy Fortune, Hielo Caliente, Hollywood Royale, Il Lungo Addio, Kamasutra, Le Café, Like Snow, Love Beats, Our Time, Right Now, Secret Love, Senora and Jorge, Siesta, Snow Fun XI, Spanglish, Tantra Imaginations, The Date, The Game VIII - Winner Takes All, The Writer, The Writer - Sex Therapy, Tone of Love, True Love, Under the Elle Tree, Upper West Side, Vintage Collection – Seduction,* and *Yes. Exhibit 2,* ¶¶4, 14-50.

9.        Hydentra produced each of these movies, Hydentra copyrighted each of these movies, *and* Hydentra currently owns the copyright to each of these movies. Some of these

movies were displayed on multiple URLs on Playvid.com, totaling 70 different URLs. *Exhibit 1, ¶¶12-59; Exhibit 2, ¶4.*

10.     Investigation established that Playvid.com was registered with the U.S. Copyright Office as an ISP, listing its owner to be Defendant, Sun Social Media, Inc. ("SSM"). *Exhibit 2, ¶5.*

11.     On January 20, 2015, DMCA compliant take-down notices were delivered through the United States Postal Service to Constantin Luchian, the agent registered with the U.S. Copyright Office, at the address listed with the United States Copyright Office. Each take-down notice included the following information: a signature of person authorized to act on behalf of Hydentra; identification of Hydentra's copyrighted movie infringed; identification of the material on playvid.com that is infringing Hydentra's copyright that is to be removed or disabled, along with the exact URL of the material; contact information for Hydentra's agent; a statement that Hydentra has a good faith belief that use of the material is not authorized; and a statement, under the penalty of perjury, that the information in the notification is accurate and the agent is authorized to act on behalf of Hydentra. *Exhibit 2, ¶¶6-9, 14-50.*

12.     The meta tags for the URLs displaying Hydentra's movies on Playvid.com included Hydentra's trademarks "MetArt" and "SexArt." The import of such inclusion of the trademarks in the meta tags is that an Internet user utilizing any search engine, such as Google, BING or Yahoo, searching for "MetArt" or "SexArt" videos would discover the videos posted for free on Playvid.com. *Exhibit 2, ¶10.*

13.     The meta tags for the SSM websites are controlled by SSM and Mr. Bolotin. Mr. Bolotin, the sole owner of SSM, is in charge of search engine optimization for the web sites. Mr. Bolotin also supervises the independent contractors that review the videos before they are

4

displayed on the SSM web sites. Mr. Bolotin and SSM have the technical and practical ability to modify the descriptions of the videos, which is then contained in the sites' metadata. [D.E.#74, 1/18/16, *Pgs. 134-135, 197-198; 1/19/16 Pgs. 40-41].*

14.    The DMCA take-down notices contained a cease and desist demand for the use of Hydentra's trademarks, "Metart" and "Sexart." *Exhibit 2,* ¶11.

15.    In February 2015, Battleship Stance discovered 2 of Hydentra's copyrighted movies displayed for free on the web site Feedvid.com. The website contained Hydentra's trade name in the meta tags for the pages displaying the videos.  These movies were: *Saturday Night* and *Sweet Morning. Exhibit 2,* ¶51-54.

16.    Hydentra produced, copyrighted and currently owns the copyright to each of these movies. Feedvid.com was not registered with the United States Copyright Office as an ISP. (It has now been so registered). Because Feedvid.com was not registered, take-down notices were not sent. SSM owns and operates Feedvid.com.  *Exhibit 2,* ¶52.

17.    In February 2015, Battleship Stance discovered 5 of Hydentra's copyrighted movies on the web site Peekvids.com. The website contained Hydentra's trade name in the meta tags for the pages displaying the videos. These movies were: *La Dolce Vita, Saturday Night, Snow Fun XI, Tantra Imaginations,* and *Waltz With Me – Spring.  Exhibit 2,* ¶¶55, 57-61.

18.    Hydentra produced, copyrighted and currently owns the copyright to each of these movies. Some of these movies were displayed on multiple URLs on Playvid.com, totaling 6 different URLs. Peekvids.com was not registered with the United States Copyright Office as an ISP. (It has now been so registered). Because Peekvids.com was not registered, take-down notices were not sent. SSM owns and operates Peekvids.com. *Exhibit 2,* ¶56.

19.     In May 2015, Battleship Stance discovered 28 of Hydentra's copyrighted movies displayed for free on the web site Playvids.com. The website contained Hydentra's trade name in the meta tags for the pages displaying the videos. These movies were: *At the Movies, Be My Slave II, Cellist, Concierge, Cybersex, Desire, Draw Me, Finish Me, Gypsy Fortune, Hielo Caliente, Hollywood Royale, Il Lungo Addio, Kamasutra, Lazy Sunday, Our Time, Right Now, Secret Love, Senora and Jorge, SexArt, Siesta, Snow Fun XI, Spanglish, Tantra Imaginations, Tone of Love, Turning Point, Upper West Side, Vintage Collection - Seduction,* and *White Room. Exhibit 2,* ¶¶62, 64-91.

20.     Hydentra produced, copyrighted and currently owns the copyright to each of these movies. Some of these movies were displayed on multiple URLs on Playvid.com, a total of 36 different URLs. Playvids.com was not registered with the United States Copyright Office as an ISP. (It has now been so registered). Because Playvids.com was not registered, take-down notices were not sent. SSM owns and operates Playvids.com. *Exhibit 2,* ¶63.

21.     In June 2015, *five months after* take-down notices were delivered to SSM, Hydentra's movies remained available for free public display on all SSM sites, including playvid.com – the site subject to the take-down notices. *Exhibit 2,* ¶93.

22.     Konstantin Bolotin initially created SSM for purposes of a dating site, findandtry.com. Mr. Bolotin is the President, Director of Operations, and sole owner of SSM. SSM has no other employees, operating solely with independent contractors controlled directly and solely by Mr. Bolotin. Mr. Bolotin earns the net profits of the company and has the final say regarding what is made live on the SSM web sites. [D.E.#74, *1/18/16, Pgs. 24, 27, 29, 33, 43].*

23.     In late 2012/early 2013, Mr. Bolotin initiated his concept for a tube site (user video/video hosting site), playvid.com. After creating playvid.com, Mr. Bolotin and SSM started

three other tube sites, feedvid.com, peekvid.com, and playvids.com. Playvids.com is an exact mirror of playvid.com. The subsequent web sites were started by SSM in order to circumvent Google algorithms and to increase traffic for SSM. [D.E.#74, *1/18/16, Pgs. 22-26, 128-129].*

24.     SSM generates traffic to its tubes sites organically through user search engines. Mr. Bolotin does all search engine optimization for the tube sites. The meta data for the web pages of the SSM tube sites effects the organic traffic coming to the sites. SSM uses the descriptions of videos posted on the tube sites in the meta data for the web pages. Each description is specifically reviewed before the video is made live on the sites. SSM could remove words from these descriptions, but chooses to only delete entire descriptions if they contain what is believed to be spam. [D.E.#74, *1/18/16, Pgs. 133-135, 197-198; 1/19/16, Pgs. 40-41].*

25.     SSM earns its money through advertisements on the web sites. SSM utilizes three ad brokers, ExoClick, Grand Slam Media, and Repro. Money earned is based upon traffic sent to the advertisers. Generally speaking, SSM is compensated for every 1,000 users sent to the advertisers. ExoClick pays monthly in advance for a certain amount of directed traffic while the other brokers pay once the traffic is received. [D.E.#74, 1/18/16, *Pgs. 130-133].* Each video on the sites includes a "view count" of the number of times it was viewed. *Exhibit 2,* ¶¶4, 51, 55, 62.

26.     In order to post videos on any of the SSM web sites, a user must sign up to be a member. The user is only required to submit very little information to become a member, including *only* a user name and an email address. Importantly, however, the email address does not need to be real. The SSM sites do not require email verification to activate a membership with the SSM sites. [D.E.#74, 1/18/16, *Pgs. 47-48, 50, 63*]. In fact, nearly 90% of the email addresses has been determined to be fake. *Exhibit 2,* ¶¶ 94-97.

27.     SSM claims that email verification is not done because of concerns with penalties from Google for large volume email, porn filters, and member privacy. SSM is under the belief that email address verification would result in the loss of members. [D.E.#74, 1/18/16, *Pg. 63*].

28.     Membership to the SSM sites provides a user with the ability to upload video, conduct later playback of videos, and organize videos. A moderator reviews every video uploaded to the SSM sites before being displayed live on the sites. The moderator is an independent contractor under the supervision of Mr. Bolotin. The videos are reviewed for child pornography, animal pornography, spam, and to ensure that the video constitutes adult entertainment. [D.E.#74, 1/18/16, *Pgs. 63, 184-185, 188, 190-191, 193-194*].

29.     SSM makes no attempt to communicate with its members, citing technical issues with its mail server. As a result, SSM does not and cannot notify its users of receipt of any take-down notices, and does not and cannot notify its users that they have been terminated pursuant to a repeat infringer policy.[3] [D.E.#74, 1/18/16, *Pgs. 54-55, 215*].

30.     For each of its sites, SSM retains a DMCA Agent, Constantin Lucian of Incorporate Now, Inc., for the receipt of take-down notices sent through the mail. These take-down notices are then sent from Mr. Luchian to Mr. Bolotin via email. Mr. Bolotin addresses these take-down notices personally. Upon receipt of any take-down notices, SSM does not notify or advise any user of the alleged infringement. [D.E.#74, 1/18/16, *Pgs. 117, 212-213, 215*].

31.     SSM purports to implement a repeat infringer policy: a member is automatically terminated upon receipt of a *third* take-down notice received within in a period of *six months*. SSM never informs its members of the first two take-down notices or of the actual termination.

---

[3] SSM testified it is in the process of developing systems to resolve these issues. [D.E.#74, 1/18/16, Pg. 216].

The aggregate of the notices is site specific, meaning that three notices must be received on one specific site. If there is a termination, the member is prohibited from posting on that particular site. However, the member's status does not change for the other SSM sites. Given the ease of creating new membership accounts with fake email addresses, the effectiveness of such a policy is questionable at best. [D.E.#74, 1/18/16, *Pgs. 174-177*].

32.     Plaintiff filed its Complaint on June 4, 2015. [D.E. #1]. On October 15, 2015, Defendants filed their Amended Answer and sixteen Affirmative Defenses. [D.E. #38, 39].

33.     On December 4, 2015, the Court struck the 16th Affirmative Defense; treated Affirmative Defenses numbers 6, 7, 11, 12, 14 and 15 as specific denials; and determined the only true Affirmative Defenses were numbers 1-5, 8-10, and 13, which are the subject of Plaintiff's Motion for Summary Judgment.[4] [D.E. #53].

34.     On December 5, 2015, Plaintiff served Interrogatories on SSM, requiring it to provide specific facts to support each Affirmative Defense. *See Exhibit 3.* SSM responded with respect to each of its Affirmative Defenses.[5] *See Exhibit 4.*

35.     On January 18, 2016, Plaintiff took the Rule 30(b)(6) deposition of SSM's corporate representative, Mr. Bolotin. *See Exhibit 5.* Mr. Bolotin testified that he indeed was appointed by SSM as to each topic noticed in the Notice. [D.E.#74, 1/18/16, *Pgs. 16-17*].

36.     At the deposition, SSM's corporate representative testified as to the factual basis underlying each Affirmative Defense, and stated simply that he "do[es] not agree with any of [Plaintiff's] allegations . . . anything from [Plaintiff's] complaint, [he] disagree[s] with everything". [D.E.#74, 1/18/16, *Pg. 234*].

---

[4]  Rather than re-state each Affirmative Defense here, Plaintiff incorporates the operative Affirmative Defenses into this Statement of Facts.
[5]  Again, rather than re-state each of SSM's answers to Interrogatories, Plaintiff incorporates the Answers into this Statement of Facts.

37.     With respect to SSM's first Affirmative Defense of "copyright misuse," its corporate representative testified only that he never received the take-down notices and that Plaintiff should have sent a second set of take-down notices before filing suit. [D.E.#74, 1/18/16, *Pgs. 236-237; 1/19/16, pg. 18*]. SSM's corporate representative also relied upon his Interrogatory answer with respect to the issue of "copyright misuse." [D.E.#74, 1/18/16, *Pg.* 17].

38.     With respect to SSM's second Affirmative Defense of "unclean hands," its corporate representative alleges Plaintiff must have uploaded its own content on Defendant's websites, but admits that he has no personal knowledge of any facts that would substantiate this "defense", and rather simply "believes" this to be the case only because Plaintiff filed the current lawsuit. [D.E.#74, 1/19/16, *Pgs. 21-22*].

39.     With respect to SSM's tenth Affirmative Defense of Plaintiff's "failure to mitigate damages," its corporate representative acknowledges that he "can't answer" and generally refers Plaintiff to its discovery responses. [D.E.#74, 1/19/16, *Pg. 42*].

40.     Upon becoming readily apparent that SSM's own corporate representative could not answer any deposition questions concerning its Affirmative Defenses, counsel for SSM stipulated that all subsequent questions concerning the Affirmative Defenses would be answered with a general reference to the interrogatory answers and documents produced, and acknowledged he expected a "very strongly worded . . . motion for summary judgment based on those answers. . . ." [D.E.#74, 1/19/16, *Pg. 43*].

41.     Ultimately, SSM's corporate representative testified to the predominant issue in this case -- ***he admitted that SSM failed to disable the videos listed in Exhibit A to Plaintiff's Complaint until after he was served with the Complaint.*** [D.E.#74, 1/18/16, *Pg. 231*].

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of February, 2016 we served the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:  Brady J. Cobb, Esq.

Respectfully submitted,

By:  /s/Aaron Behar, Esq.
Aaron Behar, Esq.
Florida Bar No.: 166286
E-mail: AB@BeharBehar.com
/s/Jaclyn Behar, Esq.
Jaclyn Behar, Esq.
Florida Bar No.: 63833
E-mail: JB@BeharBehar.com
BeharBehar
1840 North Commerce Parkway
Suite 1
Weston, Florida 33326
Telephone:  (954) 688-7642
Facsimile: (954) 332-9260
E-mail: ab@beharbehar.com
*Counsel for Plaintiff*

/s/Spencer D. Freeman, Esq.
Spencer D. Freeman, Esq.
Freeman Law Firm, Inc.
1107 ½ Tacoma Avenue South
Tacoma, WA 98402
Telephone:  (253) 383-4500
Facsimile:  (253) 383-4501
E-mail: sfreeman@freemanlawfirm.org
*Counsel forPlaintiff (Pro Hac Vice)*