# EXHIBIT "4"

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**

| | |
|---|---|
| HYDENTRA HLP INT. LIMITED, a foreign corporation d/b/a METART, <br><br>    Plaintiff, <br><br> v. <br><br> CONSTANTIN LUCHIAN, an individual, KONSTANTIN BOLOTIN, an individual, SUN SOCIAL MEDIA, INC., a corporation, individually and d/b/a PLAYVID.COM, FEEDVID.COM, PLAYVIDS.COM and PEEKVIDS.COM; PLAYVID.COM; FEEDVID.COM; PLAYVIDS.COM; PEEKVIDS.COM; and John Does 1-20, <br><br>    Defendants. | **Case No.** <br> **1:15-cv-22134-UU** |

**DEFENDANT SUN SOCIAL MEDIA, INC'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Sun Social Media, Inc. ("SSM") hereby objects and responds to Plaintiff Hydentra HLP Int. Limited's ("Hydentra") First Set of Interrogatories (the "Interrogatories"). SSM's failure to object to a particular Interrogatory or willingness to respond to an Interrogatory is not, and shall not be construed as an admission of the relevant or admissibility into evidence of any such response or that the purported factual premise for any Interrogatory is valid or accurate. The inadvertent production of any privileged information shall not be deemed to be a waiver of any applicable privilege with respect to such response or with respect to any other response.

1

**Objections and Responses to Interrogatories**

**Interrogatory No. 1.** Provide the name and contact information of the individual(s) answering these interrogatories, including the individual's position with the Defendant to whom these interrogatories are addressed.

Response:

Konstantin Bolotin, Director of Sun Social Media, Inc.
c/o Boston Law Group, PC
825 Beacon Street, Suite 20
Newton, Massachusetts 02459

**Interrogatory No. 2.** Please provide the name, address, telephone number, place of employment and job title of any person who has, claims to have or whom you believe may have knowledge or information pertaining to any fact alleged in the pleadings filed in this action, or any fact underlying the subject matter of this action.

Response:

a. Jason Tucker, Managing Director of Battleship Stance LLC
c/o The Freeman Law Firm, Inc.
1107 ½ Tacoma Avenue South, Tacoma, Washington 98405
(253) 383-4500

b. Jon Krogman, Co-Founder Hydentra HLP Int. Limited
c/o The Freeman Law Firm, Inc.
1107 ½ Tacoma Avenue South, Tacoma, Washington 98405
(253) 383-4500

c. Konstantin Bolotin, Director of Sun Social Media, Inc.
c/o Boston Law Group, PC
825 Beacon Street, Suite 20
Newton, Massachusetts 02459
(617) 928-1806

d. Constantin Luchian, Vice President of Incorporate Now Inc.
c/o Boston Law Group, PC
825 Beacon Street, Suite 20
Newton, Massachusetts 02459
(617) 928-1806

e. Joseph, SSM website user

SSM explicitly reserves the right to supplement its response to this Interrogatory as discovery proceeds.

**Interrogatory No. 3.** Please state the specific nature and substance of the knowledge that you believe the person(s) identified in your response to interrogatory No. 2 may have.

Response:

a. Jason Tucker: Copyright enforcement strategies and techniques of Hydentra, including information related to bad faith and copyright misuse. All topics listed for him in Hydentra's initial disclosure.

b. Jon Krogman: Copyright enforcement strategies of Hydentra, including information related to bad faith and copyright misuse. All topics listed for him in Hydentra's initial disclosure.

c. Konstantin Bolotin: Operation of SSM and SSM's websites. SSM's DMCA compliance. SSM lack of knowledge or intent regarding alleged infringements. Hydentra's bad faith and copyright misuse.

d. Constantin Luchian: SSM's DMCA compliance. Hydentra's bad faith and copyright misuse. SSM's accounting and financials.

e. Joseph: Third party user of SSM's websites.

SSM explicitly reserves the right to supplement its response to this Interrogatory as discovery proceeds.

**Interrogatory No. 4.** If you have filed Affirmative Defenses please state the name, address, and phone number of persons having knowledge of the facts upon which you base your Affirmative Defenses, and identify all documents or other tangible things that support your Affirmative Defenses.

Objection:

SSM objects to this request to the extent that it calls for information protected by the attorney-client or work-product privileges. SSM objects to this request to the extent that it seeks to impose on SSM obligations greater than those imposed by the Federal Rules of Civil Procedure or the Local Rules of this Court. Subject to these objections, SSM responds as follows.

Response:

SSM makes reference to the individuals referenced in SSM's response to Interrogatory No. 2. Pursuant to Fed. R. Civ. P. 33(d), SSM makes reference to the documents produced in response to Hydentra's first requests for production numbers 1, 2, 3, 4 and 5 and in response to Hydentra's second requests for production numbers 1 and 2.

**Interrogatory No. 5.** For each affirmative defense asserted in this matter, please state each specific fact that supports the affirmative defense, including every witness and/or document that supports the existence of the fact. For each witness listed please include their full name, address, email address, phone number and other contact information available to you. For each document identified, please provide the name and contact information for the record custodian of such document.

Objections:

SSM objects to this request to the extent that it calls for information protected by the attorney-client or work-product privileges. SSM objects to this request to the extent that it seeks to impose on SSM obligations greater than those imposed by the Federal Rules of Civil Procedure or the Local Rules of this Court. SSM objects to this Interrogatory to the extent that it requests responses to any of the previously marked affirmative defenses that the Court has deemed to be general denials, including affirmative defenses 6, 7, 11, 12, 14 and 15. SSM objects to this Interrogatory to the extent that it calls for a conclusion of law. SSM objects to this interrogatory to the extent that it purports to be a single interrogatory as it is instead 9 separate interrogatories (one for each affirmative defense). Subject to these objections, SSM responds as follows.

Responses:

*Affirmative Defense #1 – Copyright Misuse:*

Hydentra's putative strategies for protecting its copyrights, utilization of frivolous litigation, and intentional disregard of the Digital Millennium Copyright Act (including the rights and safeguards it afford to both copyright owners and internet services providers) evidence an intent by Hydentra to use copyrights for a purpose other than which they were intended.

Hydentra's enforcement and litigation practices demonstrate that Hydentra's business model intentionally includes copyright trolling. Since February of 2015, Hydentra has initiated at least 17 lawsuits around the country against websites operators like SSM and their alleged principals with complaints that look almost identical to the complaint in this case.

Those cases are as follows: Hydentra HLP Int. Limited v. Kporno.com et al, Case No. 2:2015-cv-00238 (D. Arizona) (filed Feb. 10, 2015); Hydentra HLP Int. Limited v. Tubenn.com et al, Case No. 2:2015-cv-00239 (D. Arizona) (filed Feb. 10, 2015); Hydentra HLP Int. Limited v. Pornvideoxo.com et al, Case No. 2:2015-cv-00240 (D. Arizona) (filed Feb. 10, 2015);

4

Hydentra HLP Int. Limited v. Spankbang.com et al, Case No. 2:2015-cv-00199 (W.D. Wash.) (filed Feb. 10, 2015); Hydentra HLP Int. Limited v. HDPorn1080.com et al, Case No. 2:2015-cv-00442 (D. Arizona) (filed March 11, 2015); Hydentra HLP Int. Limited v. Pornburst.xxx et al, Case No. 2:2015-cv-00443 (D. Arizona) (filed March 11, 2015); Hydentra HLP Int. Limited v. Pornowow.com et al, Case No. 2:2015-cv-00444 (D. Arizona) (filed March 11, 2015); Hydentra HLP Int. Limited v. Seesexvideo.net et al, Case No. 2:2015-cv-00371 (W.D. Wash.) (filed March 11, 2015); Hydentra HLP Int. Limited v. Sextvx.com, Case No. 2:2015-cv-00372 (W.D. Wash.) (filed March 11, 2015); Hydentra HLP Int. Limited v. Porn69.org et al, Case No. 2:2015-cv-00451 (D. Arizona) (filed March 12, 2015); Hydentra HLP Int. Limited v. Motherless, Inc. et al, Case No. 2:2015-cv-03834 (C.D. Cal.) (filed May 20, 2015); Hydentra HLP Int. Limited v. Jojobaa.net, Case No. 2:2015-cv-03904 (C.D. Cal.) (filed May 22, 2015); Hydentra HLP Int. Limited v. Adultpornvideoxx.com et al., Case No. 2:2015-cv-03950 (C.D. Cal.) (filed May 25, 2015); Hydentra HLP Int. Limited v. Luchian et al, Case No. 1:2015-cv-22134 (S.D. Fla.) (filed June 4, 2015); Hydentra HLP Int. Limited v. Maximum Apps Inc. et al, Case No. 1:2015-cv-22463 (S.D. Fla.) (filed June 30, 2015); Hydentra, L.P. HLP General Partner, Inc. et al v. Mindgeek USA Inc. et al, Case no. 1:2015-cv-23230 (S.D. Fla.) (filed August 27, 2015); Hydentra, L.P. HLP General Partner, Inc. et al v. Era Technologies, Ltd. et al, Case No. 1:2015-cv-24293 (S.D. Fla.) (filed November 18, 2015).

    SSM believes that Hydentra's strategy is not to actually protect its copyrights and trademarks. If Hydentra's interest was to protect its copyrights and trademarks, at least in the case of SSM, as has been shown by prior relations between the parties, they would have sent takedown noticed which would have resulted in prompt removal. Specifically, SSM has implemented a system whereby whenever it receives DMCA takedown notices it deletes or blacks access to the complained of material usually with 48 hours (more about this further below with regards to Affirmative Defense #10). On numerous occasions Hydentra has sent takedown notices and SSM has promptly removed the complained of content.

    Despite Hydentra knowing that it could have its works removed from SSM's websites promptly upon notice to SSM, and despite SSM being protected by the safe harbors provided by the Digital Millennium Copyright Act (more about this further below with regards to Affirmative Defense #10), Hydentra has chosen to file this lawsuit along with all the others listed above. The circumstances evidence that Hydentra is filing frivolous lawsuits in order to force settlements in the face of high litigation costs even where defendants (including the Defendants in this case) are not liable.

    Even when Hydentra has sent DMCA takedown notices, Hydentra has exhibited its bad faith and attempt to misuse its copyrights. First, SSM is unaware of any evidence that Hydentra undertakes any effort to determine whether the content for which it sends takedown notices has been uploaded to SSM's websites pursuant to fair use principles and thereby would not be infringing.

    Second, instead of sending DMCA takedown notices by email or other digital means by which SSM could respond to the notice by automated means and remove the complained of content faster, Hydentra has instead sent over a hundred notices by paper. *See* documents Bates Stamped SSM40223 through SSM40339. Given that it is an extra and likely costly step for

Hydentra to print each of those notices and send them physically, and given that it makes it much more difficult for SSM to process those notices once it receives them, the only reasonable explanation for this practice is to hope that SSM somehow misses, mishandles or loses a paper notice, which would give Hydentra a basis to file suit.  If Hydentra was legitimately interested in removing its content from SSM's websites promptly, it would send notices by email like almost every other copyright owner.

The only other copyright owner that has sent paper takedown notices to SSM has been AMA Multimedia, LLC and those notices were sent on behalf of its agent Jason Tucker, who is also the agent that sent Hydentra's paper notices.  Jason Tucker has stated previously in public statements that he intended to use legal process to "hurt" persons or entities that he believed to be engaged in copyright infringement.

*Affirmative Defense #2 – Unclean Hands:*

SSM makes reference to its response in connection with Affirmative Defense #1, the response of which is incorporated herein.

SSM also believes that it is possible that Hydentra or its agent(s) uploaded some of the complained of content onto SSM's website itself so as to manufacture a fraudulent basis to file suit against SSM.

*Affirmative Defense #3 – Fair Use:*

To the extent that any of Hydentra's trademarks, trade names, service marks or other identifiers of origin were used in connection with Hydentra's actual products and/or services, or which linked to or pointed to Hydentra's websites, then that use of the marks would be fair use because the marks are being used in conjunction with the Hydentra's actual product.

When users upload content onto SSM's websites, they have an option to give a title to the content and to apply certain tags to the content.  These titles and tags are ultimately determined solely by the user and not by SSM.  These titles and tags are the automatically incorporated into the source code for the websites, including in its meta tags.  SSM takes no active part in the determination of the titles and tags or the creation of the meta tags – they are all done by an automated process based on the inputs from the users.

At most, based on the name of the file that the user uploads, SSM's automated system will translate that file name into a suggested title for the video – but this suggested title is based solely on the name of the file which is uploaded and which is in the sole discretion of the user.  When a user uploads a video, the automated system reads the file name and does the following: (1) replaced special characters with spaces; (2) removes the file extension; (3) capitalizes the first letters of each word; and (4) takes each word from the suggested title and presents it as a potential tag.  However, the user has the ability to change the title and tags to whatever they desire.

6

Therefore, to the extent that any user uploaded any of Hydentra's works onto SSM's websites and such user used Hydentra's marks in the title or tags for such work, then such use of the marks would be fair use.

SSM is unaware of any evidence that Hydentra undertakes any effort to determine whether the content for which it sends takedown notices has been uploaded to SSM's websites pursuant to fair use principles and thereby would not be infringing.

*Affirmative Defense #4 – Lack of Scienter/Innocent Infringement:*

To the extent that Defendants engaged in the infringement of Hydentra's intellectual property rights (whether directly or indirectly), which Defendants deny, such infringement was unintentional and without knowledge because Defendants did not upload the allegedly infringing material – users of SSM's websites uploaded the materials.

Unless and until SSM received takedown notices from Hydentra or the Complaint (as the case may be with respect to each allegedly infringing material), SSM had no knowledge that the particular works on SSM's website were allegedly infringing Hydentra's intellectual property rights.

SSM reasonably relies upon the representations and warranties of non-infringement of the users who upload the material onto SSM's websites. These representations and warranties of non-infringement are contained in the Terms of Use for SSM's websites, which have been produced. These representations and warranties are confirmed by users when they create an account on SSM's websites and when they upload new material to SSM's websites.

SSM has no reasonable way to verify that material is non-infringing until and unless it receives a notice of claimed infringement or other notification from copyright owners or their agents.

SSM takes all reasonable measures to limit infringement on its websites by complying with the terms of the Digital Millennium Copyright Act. The details and extent to which SSM goes to comply with the Digital Millennium Copyright Act is detailed below.

To the extent that it does not fully comply with the Digital Millennium Copyright Act (which SSM denies), SSM's intends to comply with the Digital Millennium Copyright Act and its actions as set forth herein evidence the same.

SSM's implementation of many systems and policies to combat alleged infringement on its websites, as set forth below, further evidence SSM's lack of intent and scienter in engaging in infringement to the extent that it does so (which SSM denies).

SSM's intention to have only authorized content on its websites is further evidence by SSM's relationship with world-class content producers to put their content directly on to SSM's

7

websites. For example, SSM is currently working with Brazzers (a content production company which SSM believes to be much larger and more popular than Hydentra) to create a page of curated content on SSM's website. That content can be found at Brazzers's dedicated user page at https://www.playvids.com/u/Brazzers.

*Affirmative Defense #5 – Damage Not Proximate Result:*

Although SSM disputes that Hydentra has suffered any of the damages it alleges in its Complaint, to the extent that Hydentra has suffered any such damages, those damages are not the natural, direct, or uninterrupted consequences of the actions and omissions of Defendants.

SSM operates websites which are used by many people for many legitimate and non-infringing purposes. It is a classic user general content website where the users may upload their own materials and share them with other users. SSM does not upload any of the videos or other substantive content on its websites, nor do any of SSM's personnel, nor do Constantin Luchian or Konstantin Bolotin.

As detailed above, there are legitimate non-infringing uses for SSM's websites, including, for example, the upload of official Brazzers materials onto the websites.

Because the websites that SSM operates have significant legitimate and non-infringing uses and because Defendants do not upload the allegedly infringing videos onto the websites, any damages to Hydentra arising from the allegedly infringing content on SSM's websites are not the natural, direct, or uninterrupted consequence of Defendants' actions and omissions. To the extent that Hydentra has suffered any damage as a result of the allegedly infringing content on SSM's websites, such damages were as a result of the actions and omissions of those third party users who uploaded the allegedly infringing works onto SSM's websites.

However, SSM also disputes that Hydentra could or would have suffered any damages whatsoever from the allegedly infringing videos on SSM's websites. There is no evidence to suggest that any user who uploaded infringing videos on SSM's websites or any user who viewed such infringing videos on SSM's websites would have purchased such content or access to such content from Hydentra or otherwise would have accessed the content in such a manner as to profit Hydentra.

*Affirmative Defense #8 – Failure to Mitigate:*

Upon information and belief, Hydentra knew about allegedly infringing materials on SSM's websites but failed to promptly take action to request SSM to remove such material from SSM's websites. Therefore, to the extent that Hydentra suffered any damage as a result of the allegedly infringing materials on SSM's websites (which SSM denies) Hydentra failed to mitigate its damages by removing that material sooner and thereby limiting the number of users who accessed that allegedly infringing material.

As a specific example of Hydentra's failure to mitigate its damages, SSM makes reference to its response to the interrogatory regarding Affirmative Defense #1 as it regards Hydentra's practice of sending takedown notices by paper rather than by email or other digital means, which slows down the process for having the complained of materials removed and potential introduces situations in which notices can be unintentionally mishandled.

*Affirmative Defense #9 – Hydentra's Failure to Comply with DMCA:*

Because, as detailed below, SSM is entitled to the safe harbors of the Digital Millennium Copyright Act, Defendants are not liable for monetary relief or injunctive relief (except as explicitly provided for therein) unless the conditions of the Digital Millennium Copyright Act have been met, including, without limitation, that Hydentra first notify SSM of a claimed infringement and afford the proper time for SSM to respond to such notification.

For each of the works Hydentra has alleged that Defendants have infringed (as listed in Exhibit A to the Complaint), Defendants **never** received any notice of claimed infringement pursuant to the Digital Millennium Copyright Act or any other form of notice that the works were alleged to be infringing until such time as they received copies of the Complaint.

Because Hydentra did not properly notice SSM about the alleged infringements that it has now filed suit on, SSM was not afforded a possibility or ability to remove the infringing materials in accordance with the Digital Millennium Copyright Act and therefore cannot be liable for not removing them because it has no knowledge that they were infringing until such time as it received a copy of the complaint (see response regarding Affirmative Defense #4 above).

Furthermore, SSM is unaware of any evidence that Hydentra undertakes any effort to determine whether the content for which it sends takedown notices has been uploaded to SSM's websites pursuant to fair use principles and thereby would not be infringing.

*Affirmative Defense #10 – DMCA Safe-harbor:*

SSM is entitled to the safe harbor of the Digital Millennium Copyright Act because it has complied with the requirements thereunder, including, without limitation, the following:

- Defendants did not upload any of the allegedly infringing files onto SSM's websites.

SSM makes reference to its response regarding Affirmative Defense # 4 above.

- Registered Agent for the Receipt of Copyright Notices.

On or about September 2, 2010, SSM filed its first Interim Designation of Agent to Receive Notification of Claimed Infringement with the United States Copyright Office. Since

9

such time, SSM has continued to timely update its registered agent with the United States Copyright Office, filing multiple amendments. Copies of all designations filed with the United States Copyright Office are being produced concurrently with the responses to these Interrogatories.

At all relevant times, SSM has listed the name and contact information for its registered agent on its websites.

- Defendants do not have actual knowledge that any allegedly infringing materials on SSM's websites are infringing, or, in the absence of such actual knowledge, are not aware of facts or circumstances from which the allegedly infringing. activity is apparent, or, upon obtaining such knowledge or awareness, acted expeditiously to remove, or disable access to, the allegedly infringing material.

With regard to knowledge and facts or circumstances from which such activity is apparent, SSM makes reference to its responses regarding Affirmative Defense # 4 and Affirmative Defense # 5 above.

With regard to acting upon receipt of notifications or knowledge of infringement, to submit a claim of copyright infringement any copyright owner or its agent can send a notification as follows: (a) by sending an email to legal@sunsocialmedia.com, legal@playvids.com, legal@playvid.com, legal@peekvids.com and legal@feedvid.com; (b) by sending physical copies of a notification to SSM's designated copyright agent at the address registered with the United States Copyright Office or at the address listed on SSM's websites (which at the current time is Copyright Agent, ███████████████████████████████████████████ ███████████████); (c) by sending a fax of a notification to SSM's designated copyright agent at the fax number registered with the United States Copyright office or at the fax number listed on SSM's websites (which at the current time is ███████████████); or (d) by using the "Contact Us" form on any of SSM's websites, which may be found at www.peekvids.com/contact, www.playvid.com/contact-us, www.playvids.com/contact-us, www.peekvids.com/contact, or sunsocialmedia.com/index.php?contact.

SSM utilizes two back-end systems to process copyright requests: its custom Ticket System and its custom Blocking Tools System. If a notice is delivered to any of the email addresses above or is sent using any of the Contact Us forms on the websites, a ticket is created in the Ticket System. Generally, within 48 business hours every ticket is reviewed by SSM's staff and is assigned a status.

If a ticket is regarding a notice of claimed copyright infringement, it is assigned a "DMCA" status and is automatically forwarded to the Blocking Tools System ("BTS") and a request is created in the BTS for resolution which contains a link back to the original ticket in the Ticket System. A ticket that is automatically forwarded to the BTS will be automatically resolved pursuant to the steps further below in cases where the complained of URL can be read by automated means (i.e., the BTS will block the complained of content without further manual action by SSM), all in an attempt to promptly and accurately process takedown requests.

Notices that are sent to SSM's copyright agent are generally scanned within 48 business hours and emailed to ███████████████. SSM then manually processes all notices sent to that email address and manually inserts them into the BTS system.

Once a request reaches the BTS, it is processed as follows (the process can be followed by viewing screenshots of the BTS system in use on a test file, the screenshots of which are being produced concurrently with the responses to these Interrogatories and referred herein as the "BTS Screenshots"):

1. When a claim is received it is logged in SSM's backend and a request is created in the BTS. Page 1 of the BTS Screenshots shows the dashboard for the BTS with recent tickets and requests, including statistical data on takedown requests. Page 2 of the BTS Screenshots shows what an individual request looks like, the menu of options for processing an individual request and the information that is collected with an individual request.

2. Pages 3 through 7 of the BTS Screenshots shows the process of inputting the information from a takedown notice into a request in the BTS. This process is only available to SSM personnel and not users. When SSM receives a digital request for removal, each of the fields in the BTS are prefilled by an automated script, which then only requires manual review for accuracy, making it easier and faster for SSM to process the notice. However, when SSM receives a physical copyright notice or a copyright notice in PDF format where the text (including the link to the allegedly infringing content) cannot be read automatically, SSM personnel must insert the necessary information manually. Because those types of requests must be input manually, it takes considerably more time and manpower to process these requests. Notices that are sent digitally (i.e., via email as text or through the Contact Us page) are generally processed within 48 business hours. SSM makes all efforts to process paper and non-scannable pdf claims within 48 business hours, but sometimes it takes longer depending on the volume.

3. Once a request is input into the BTS with the proper information (whether manually or through an automated system that reads an email or a submission to a Contact Us request), the BTS automatically processes the request by removing the complained of content on SSM's websites and replacing it with a message that "This video is no longer available due to a copyright claim."

4. A processed request is then added to the database of all requests ever received by SSM.

5. The BTS then automatically runs its repeat infringer policy code to determine whether the request triggers the termination of the user that uploaded the complained of content pursuant to SSM's repeat infringer policy. A user that is terminated pursuant to this policy will not be permitted to log into SSM's websites and instead will get a notification message (a copy of which has already been produced), thereby preventing that account from uploading any further videos onto SSM's websites.

11

SSM has expended considerable man power in order to develop its Ticket System and its Blocking Tools System, both of which have been a part of the backend of SSM's websites' backend since their conception (at least in one form or another). While the user interface for the BTS was updated in the middle of 2015, its functionality (and use) has been present since the beginning of SSM's websites.

Relevant excerpts from the source-code for SSM's BTS (including its automated repeat infringer policy test and implementation) are being produced concurrently with these responses to the Interrogatories.

- SSM does not receive a financial benefit directly attributable to any allegedly infringing activity.

SSM's revenues from its websites comes solely from advertisements on its websites. SSM does not charge users to upload any content onto its websites (including any allegedly infringing content) nor does it charge users to view any content on its websites (including any allegedly infringing content).

Other than with the exception of content partners who may place their own advertisements on pages containing their own content, advertisers do not get to select which content on the websites their advertisements appear alongside.

SSM does not solicit any advertisers with any statements that the content on the its websites are infringing. In fact, SSM does not directly solicit advertisers at all – all of the advertisements on its websites are through advertising brokers or by advertisers who approach SSM on their own. SSM does not solicit those advertising brokers with any statements that the content on its websites are infringing.

SSM has not solicited any investments or loans with any statements that the content on its websites are infringing.

- SSM has adopted and reasonably implemented, and has informed users of its websites of, a policy that provides for the termination in appropriate circumstances of users who are repeat infringers.

At all relevant times, SSM has adopted the following repeat infringer policy: "Any user for whose User Submissions or Third Party Content we receive three good-faith and effective complaints within a six-month period will be barred from using the Website."

The foregoing quote comes from the Terms of Use for each of SSM's websites, a link to which is available at the bottom of every page of SSM's websites (and which has already been produced in this litigation). Moreover, each user who creates an account on SSM's websites must affirmatively agree to SSM's Terms of Use before their account can be created.

SSM has implemented its repeat infringer policy by building it directly into the back-end of its websites, including by building it into its BTS (as detailed above) which automatically runs

the repeat infringer test on every single takedown notice received by SSM and terminates any user who has violated the repeat infringer policy.

SSM has terminated many users pursuant to the repeat infringer policy, the details of which have already been produced in response to Hydentra's requests for documents.

- SSM accommodates and does not interfere with standard technical measures that are used by copyright owners to identify or protect copyrighted works

SSM accommodates and undertakes no action that interferes with any standard technical measure it knows of that are used by copyright owners to identify or protect copyrighted works. Specifically, and without limitation, SSM does not alter any of the content uploaded by users onto SSM's websites other than to format it for proper playback on the Internet.  This means that SSM does not remove or otherwise interfere with any watermarks or logos that may be utilized in any content that is uploaded to SSM's websites.  Any removing or other interference with any watermarks or logos in videos or other content on SSM's websites were performed before they were uploaded onto SSM's websites.

However, only in cases where a user embeds a video from SSM's websites onto a third party website, a very light and see-through watermark for SSM's website is added on the bottom right of the video player (but not edited into the video itself).  Any watermarks or logos that were already on a video when it was uploaded to SSM's website is still be visible behind the SSM website watermark.  This is similar to how other video streaming websites deal with embedded video players on third party websites.

*Affirmative Defense #13 – Lack of Volition:*

SSM makes reference to its responses regarding Affirmative Defense # 4 and Affirmative Defense # 5 above.

*SSM explicitly reserves the right to supplement its responses to these Interrogatories as discovery proceeds.*

**Interrogatory No. 6.**        Do you intend to call any expert witnesses at the trial of this case? If so, state as to each such witness the name and business address of the witness, the witness's qualifications as an expert, the subject matter upon which the witness is expected to testify, the substance of the facts and opinions to which the witness is expected to testify, and a summary of the grounds for each opinion.

<u>Objections:</u>

SSM objects to this Interrogatory to the extent that it has not yet decided if it will call expert witnesses in this case.  SSM objects further to this Interrogatory to the extent that it seeks

13

to impose obligations or deadlines different from those set by the Federal Rules of Civil Procedure, this Court's Local Rules, or this Court's scheduling order.  Subject to this objection, SSM responds as follows.

Response:

SSM has not yet decided if it will call expert witnesses in this case.

SSM explicitly reserves the right to supplement its response to this Interrogatory as discovery proceeds.

**Interrogatory No. 7.**  Have you heard or do you know about any statement or remark made by or on behalf of any party to this lawsuit, other than yourself, concerning any issue in this lawsuit? If so, state the name and address of each person who made the statement or statements, the name and address of each person who heard it, and the date, time, place, and substance of each statement.

Objection:

SSM objects to this Interrogatory as being overly broad, unduly burdensome, and not likely to lead to the discovery of admissible evidence.

Response:

Jason Tucker contacted Constantin Luchian by Skype.  Copies of that correspondence are being produced in response to Hydentra's Second Set of Request for Production, Number 2.

A purported user of SSM's websites emailed SSM on or about December 22, 2015 about a subpoena he received from Google.  Copies from that correspondence are being produced in response to Hydentra's Second Set of Request for Production, Number 2.

In at least one television documentary, Jason Tucker stated: "… we're going to go hurt some people with the legal system, and it's going to be costly for them.   And we've got the money to go fight them and fight them to the death."

**Interrogatory No. 8.**  Have you made an agreement with anyone that would limit that party's liability to anyone for any of the damages sued upon in this case? If so, state the terms of the agreement and the parties to it.

Objection:

SSM objects to this Interrogatory as being overly broad, unduly burdensome, and not likely to lead to the discovery of admissible evidence.

Response:

No.


**Interrogatory No. 9.** Please state if you have ever been a party, either plaintiff or defendant, in a lawsuit other than the present matter, and, if so, state whether you were plaintiff or defendant, the nature of the action, and the date and court in which such suit was filed.

Response:

No.


As to all objections:

_____   January 6, 2016
Matthew Shayefar, Esq.                    Date

## VERIFICATION

I, Konstantin Bolotin, being first duly sworn in accordance with law, do hereby depose and state that I have read the answers to Plaintiff's First Set of Interrogatories and that the answers are true and correct to the best of my knowledge and information.

_____
Konstantin Bolotin
(Printed name)

STATE OF FLORIDA
COUNTY OF _MIAMI DADE_

    I hereby certify that on January 6, 2016, personally appeared before me, an officer duly authorized to administer oaths and take acknowledgments, Konstantin Bolotin, to me well known to be the person described or who has produced DL B435 500 85 298 0 as identification and who did take an oath and who executed the foregoing Interrogatories, acknowledging before me that he executed the same freely and voluntarily for the purposes therein expressed. EXP 08/20

RUBEN CUBAS
Notary Public - State of Florida
My Comm. Expires Feb 27, 2018
Commission # FF 096902

_____
Notary Public

RUBEN CUBAS
Notary Public Printed Name

16

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served electronically via email on all counsel or parties of record on the service list below this 6th day of January, 2016.

/s/ Matthew Shayefar
Matthew Shayefar

## SERVICE LIST

Aaron Behar, Esquire
Jaclyn Behar, Esquire
BEHARBEHAR
1840 North Commerce Parkway
Suite One
Weston, Florida 33326
Telephone: (954) 688-7642
Facsimile: (954) 332-9260
AB@BeharBehar.com
JB@BeharBehar.com

Spencer D. Freeman
Freeman Law Firm, Inc.
1107 1/2 Tacoma Avenue South
Tacoma, Washington 98402
Telephone: (206) 516-3800
Facsimile: (206) 516-3888
sfreeman@freemanlawfirm.org