# EXHIBIT "B"

1

```
 1                 UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF FLORIDA
 2                        MIAMI DIVISION
                   CASE NO. 15-22134-CIVIL-UNGARO
 3

 4   HYDENTRA HLP INT., LIMITED,        Miami, Florida

 5              Plaintiff,              December 16, 2015

 6         vs.                          3:00 p.m.

 7   CONSTANTIN LUCHIAN, et al.,

 8              Defendants.        Pages 1 to 26

 9   ─────────────────────────────────────────────────

10                      MOTION HEARING
         BEFORE THE HONORABLE ALICIA M. OTAZO-REYES,
11             UNITED STATES MAGISTRATE JUDGE
         (TRANSCRIBED FROM THE DIGITAL AUDIO RECORDING)
12
     APPEARANCES:
13

14   FOR THE PLAINTIFF:        SPENCER D. FREEMAN, ESQ.
                               FREEMAN LAW FIRM, INC.
15                             1107 1/2 Tacoma Avenue South
                               Tacoma, Washington 98402
16
                               AARON BEHAR, ESQ.
17                             BEHAR BEHAR
                               1840 North Commerce Parkway
18                             Suite One
                               Weston, Florida 33326
19

20   FOR THE DEFENDANTS:       BRADY COBB, ESQ.
                               TRIPP SCOTT
21                             110 Southeast Sixth Street
                               Fifteenth Floor
22                             Fort Lauderdale, Florida 33302

23                             VAL GURVITS, ESQ.
                               BOSTON LAW GROUP, PC
24                             825 Beacon Street
                               Suite 20
25                             Newton Centre, Massachusetts 02459
```

```
 1   TRANSCRIBED BY:          LISA EDWARDS, RDR, CRR
                              Official Court Reporter
 2                            United States District Court
                              400 North Miami Avenue
 3                            Twelfth Floor
                              Miami, Florida 33128
 4                            (305) 523-5499

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

```
 1            THE COURT:  Good afternoon.

 2            MR. FREEMAN:  Good afternoon, your Honor.

 3            MR. COBB:  Good afternoon, your Honor.

 4            THE COURTROOM DEPUTY:  Hydentra HLP International,

 5    Limited, versus Constantin Luchian, et al., Case No.

 6    15-22134-Civil-Ungaro.

 7            Counsel, please state your appearances for the record.

 8            MR. FREEMAN:  Good afternoon, your Honor.  For the

 9    record, Spencer Freeman on behalf of the Plaintiff, Hydentra.

10            MR. BEHAR:  Aaron Behar for Plaintiff.

11            THE COURT:  All right.

12            MR. COBB:  Brady Cobb on behalf of the Defendants.

13            MR. GURVITS:  Val Gurvits on behalf of Defendants.

14            THE COURT:  All right.  Thank you.

15            You may be seated, except when addressing the Court.

16            All right.  I have the motion to compel.  I have

17    reviewed the response also.

18            Let me ask you -- I always ask this first -- have the

19    parties resolved any of the disputes or do I need to address

20    all of them?

21            MR. FREEMAN:  Your Honor, with regard to Request For

22    Production No. 4, the Plaintiff withdraws its motion --

23            THE COURT:  Okay.

24            MR. FREEMAN:  -- for reasons other than what the

25    Defendant has alleged in their opposition.  That stuff was
```

4

```
1    ultimately produced.

2            THE COURT:  All right.  So 4 has been resolved.

3            Anything else?

4            MR. COBB:  No, your Honor.

5            THE COURT:  All right.  I kind of grouped the requests.

6    6 through 8 and 10 through 16 seem to have to do with

7    information that Plaintiff is seeking regarding independent

8    contractors, programmers and advertisers, various types of

9    information, invoices, payments, contracts and so on.  It seems

10   to me that they all could be addressed together in terms of the

11   additional information that the Plaintiff is seeking.

12           And from what I read, the Defendant is basically saying

13   that Plaintiff doesn't really need all of that additional

14   information.

15           So let me hear from Plaintiffs, kind of like get sort

16   of like a reply.

17           MR. FREEMAN:  Sure.  Thank you, your Honor.

18           Your Honor, do you want me to come up to the podium or

19   here?

20           THE COURT:  Wherever you're comfortable.

21           MR. FREEMAN:  Your Honor, I agree that grouping those

22   requests for production is appropriate.  I think the arguments

23   go the same to all of them.

24           Your Honor, I would point out a couple of important

25   things:  First of all, looking at the claims that have been
```

1    alleged against the Defendant, the direct copyright

2    infringement, contributory copyright infringement, vicarious

3    copyright infringement, inducement of copyright, in addition,

4    those same claims with regard to trademark, all of those have

5    some element and we've alleged some element of knowledge,

6    willfulness or willful blindness or actual knowledge or

7    red-flag knowledge.  So one of -- a variation of one of those

8    things, or encouraging.

9        Therefore, the communications that the Defendants or

10   those representing the Defendants cites have with independent

11   contractors, programmers and advertisers establishes as it were

12   the state of mind of the Defendants, their knowledge, their

13   encouraging acts, if there are any.

14        The independent contractors -- and I would also point

15   out that according to the profit-and-loss statements, there are

16   no employees.  There's no employee costs.  Everybody's an

17   independent contractor.

18        So these independent contractors are doing all tasks

19   associated with the running and operation of these sites, which

20   includes videos that are maintained, videos that are up there,

21   possibly posting videos, and maintaining advertising.

22        The manner in which the site operates, both on the

23   front end, on the end user that's visually observing the

24   operation of those sites, as well as the back end, all of that

25   stuff inherently is done through software.  So the programmers

1   are -- will have been instructed to achieve certain tasks.

2   Again, those tasks and those instructions are going to be

3   indicative of the Defendants' knowledge.  Perhaps they're

4   indicative of the Defendants' lack of knowledge or lack of

5   encouraging, which is still relevant.  The fact that it's not

6   there is also relevant.

7       These are not tenuous issues.  They go directly to

8   allegations that we have in the complaint.

9       So it's not just that we're trying to string together

10   some theories.  It's that these are actual elements of our case

11   and are absolutely relevant to it.  So we'd ask the Court to

12   order them to be compelled.

13       THE COURT:  So if I understand you correctly, you're

14   trying to establish knowledge or lack of knowledge from

15   communications with programmers, independent contractors and

16   advertisers.  What about -- assuming I accept that, how does

17   that theory support getting invoices?  I thought I saw

18   payments, things of that -- and contracts, things outside of

19   the communications.

20       MR. FREEMAN:  Well, the contracts themselves are going

21   to dictate the scope of work.  Every programmer I've ever run

22   across or independent contractor that I run across, they're

23   dictated by a contract.  And there are tasks and what's

24   expected of them, and their rate of pay is going to be dictated

25   within that contract.

1          As far as the invoices and payments, it is our position

2     that the Defendants are involved in the posting and displaying

3     of these videos.  So we want to be able to look at the amounts

4     charged and the amounts paid to independent contractors and see

5     if they comport with the market value for what is purported to

6     have been done.

7          So if a task, let's say, market value is $100, but this

8     particular independent contractor is paid $1,000 for, well, now

9     we've got some suspect as to see what task was really

10    accomplished underneath that invoice.

11         So we think that it confirms or will contest what tasks

12    are actually being performed.

13         THE COURT:  All right.  Let me hear from Defendants on

14    those points.

15         MR. COBB:  Yes, your Honor.

16         It's our position, as is stated in our response that

17    was filed, this information that is sought is not relevant to

18    the facts of this case.  And I'm not saying relevance under the

19    context as it was formerly known; but looking at the recently

20    amended Rule 26, discovery has to be tailored to the issues in

21    the case.

22         And as counsel just said in his statements, we're

23    talking about three or four levels removed from what their

24    actual allegation is.  Our contracts with third-party providers

25    are not relevant.  They don't establish any willfulness.  And

1   this case is about whether infringing material was uploaded.

2   As it pertains to that point, we've already produced documents

3   that are relevant and show who uploaded videos, who has been

4   disciplined for improperly uploading videos.

5          Additionally, Plaintiff has served subpoenas to

6   third-party providers to obtain information.

7          So this request is overly broad.  It's not relevant to

8   the litigation of the claims that the Plaintiff has brought.

9   And it's unreasonably burdensome.  If you look at the context

10  in the language of the new Rule 26, the discovery has to be

11  proportional to the needs of the case.  Allowing Plaintiff to

12  go on this extended fishing expedition is not proportional to

13  the needs of this case.

14         THE COURT:  All right.  Well, let me ask you this

15  question:  Would there be any communications other than the

16  infringing notices that may be relevant to the posting of the

17  videos?

18         MR. COBB:  What types of communication?  Between who?

19         THE COURT:  Between Defendants and those parties that

20  we're considering, the independent contractors, the programmers

21  and the advertisers.

22         MR. COBB:  As it pertains to uploading infringing

23  material?

24         THE COURT:  Right.

25         MR. GURVITS:  Your Honor, the -- just by way of

```
 1    background, this case is about --
 2          MR. FREEMAN:  I actually have an objection.
 3    Mr. Gurvits is not a member of this district.  He has also not
 4    applied for or been granted pro hac vice into this case.  I
 5    think it's inappropriate for him to be involved in this
 6    hearing.
 7          THE COURT:  All right.  I allow Mr. Cobb to consult
 8    with Mr. Gurvits and then answer my question.
 9          (Pause in the proceedings.)
10          MR. COBB:  Your Honor, as pertains to those
11    communications, I can't answer that question for your Honor.
12    Those can be -- there's information about uploading of
13    infringing materials.
14          What I can say is that the case, if you read
15    Plaintiff's complaint and read their causes of action, it is a
16    case for uploading allegedly infringing material onto a
17    website.
18          THE COURT:  Right.
19          MR. COBB:  This information that is being sought is
20    about how the Defendants' website actually works, how it was
21    built, how it's been fine tuned --
22          THE COURT:  Well --
23          MR. COBB:  -- none of which is relevant to
24    infringement.
25          THE COURT:  I just limited the communications to
```

```
 1    uploading infringing materials to the websites.
 2           Now, you have said you have produced infringer notices.
 3    So my question is:  Would there be any other communications
 4    outside of what you have produced that would have to do with
 5    the uploading, such as guidelines, not necessarily after the
 6    fact, but guidelines on uploading, things of that nature,
 7    particularly for the independent contractors?  And I'm assuming
 8    independent contractors and programmers all perform the
 9    services for the website and the advertisers.
10           MR. COBB:  There would not be, your Honor.
11           THE COURT:  There is not?  There is nothing?  You can
12    assure me of that?
13           MR. COBB:  Yes, your Honor.
14           THE COURT:  All right.  So not -- so all you have is
15    after-the-fact communications?  You don't have anything that
16    gives people instructions before the fact of what can and
17    cannot be uploaded?
18           MR. COBB:  What you've just said is correct, your
19    Honor.
20           THE COURT:  All right.  That is the only thing that I
21    can think of that would be appropriate at this stage.
22    Mr. Freeman, I think that the contracts, the invoices, the
23    payments go too far afield.  I am very well familiar with the
24    new discovery rule and the concept of proportionality.  And I
25    have been applying it even before the rule came into effect,
```

1  because the concept was embedded into the rules before.  They

2  have just been put front and center now.

3        So I am going to deny the motion to compel as to

4  Requests 6 through 8 and 10 through 16 with the proviso, of

5  course, that this is based in part on the representations of

6  counsel that there's no other communications beyond the

7  infringing notices that would take -- that would address in any

8  fashion the uploading of materials to the website and also with

9  the proviso that this issue can be inquired of in deposition to

10  make sure that that is the case.

11        All right?

12        MR. FREEMAN:  Your Honor, if I could, the issue I have

13  is this:  The --

14        THE COURT:  Mr. Freeman, generally, when I rule, I

15  don't hear further argument.

16        MR. FREEMAN:  I appreciate that, your Honor.  Thank

17  you.

18        THE COURT:  All right.  I try to make it as flexible as

19  possible so that you are not curtailed from looking into it.

20  But as it stands right now and given the representation of

21  counsel, it does not seem to me that it is justified to go into

22  this much search of the relationship between the Defendant and

23  independent contractors, programmers and advertisers.

24        MR. FREEMAN:  And, your Honor, I heard you, but I --

25  there's a representation of counsel that you're relying on.

1   And I have a counter-fact to that that --

2          THE COURT:  Well, that's -- when I ask counsel to make

3   a representation, I count on counsel to make a representation

4   as an officer of the Court.

5          Now, on purpose, I said my ruling is without prejudice

6   to you inquiring of these matters at depositions, because then

7   you will have the opportunity to confirm it.

8          MR. FREEMAN:  Thank you, your Honor.

9          THE COURT:  And I take it at their face value.

10  Otherwise, our courts could not operate if we couldn't trust

11  the word of our attorneys.  All right?

12         So that's my ruling on that.

13         Now, the other ones, except for 4 -- so we're talking

14  about 5, 9, 17 through 20:  They kind of go into information

15  about the Defendants.

16         Now, No. 5, Defendants are saying that they have no

17  further documents to produce, that they have produced all of

18  the notices.

19         So let me hear from you, Mr. Freeman, on that one.

20         MR. FREEMAN:  Your Honor, we requested all the

21  termination letters.  And they gave us a sample from

22  (inaudible).  We requested all documents that have information

23  in regard to uploaders that have been terminated, which

24  includes dates of termination as well as IP addresses.  We were

25  not given that information.

1        The Defendants' reply, in all due respect, is not
2   credible.  If they send out an electronic termination notice,
3   there is a record of that action, inherently.  They've kept,
4   apparently, a bunch, 16,000 pages, all of the termination
5   notices or take-down notices that were sent to them.  There
6   inherently has to be a record, unless they're intentionally
7   purging every time -- a record of these actual terminations, a
8   record of a date of termination, as well as a termination order
9   itself.
10        They also in their briefing talk about the
11   documentation that they did give us of the uploaders that were
12   terminated.  And our issue with that and the reason we have a
13   problem with his credibility is that the facts contained in
14   those documents are not real.  Nine out of -- so far, we have
15   determined that nine out of ten e-mails that were represented
16   to us as being an uploader e-mail are fake.  And we know this
17   because we created the e-mail over the last couple weeks.  We
18   know this because we ran a program that dinged -- that pinged
19   these e-mails and then come back as to whether or not valid.
20   So the information we have been provided isn't real.
21        There's other information out there that -- it's
22   automatically recorded.  Computers record everything.  We want
23   copies of that as we've requested.
24        That sample termination order is not sufficient to show
25   us all of the information that we requested.

14

```
 1          THE COURT:  It sounds to me like you want a forensic
 2   examination of their servers.
 3          MR. FREEMAN:  We may need to request that at this
 4   point, yes, based off the information that we're finding.
 5          THE COURT:  Let me hear from the Defendant.  And we're
 6   talking about Request No. 5 --
 7          MR. COBB:  Request No. 5.
 8          THE COURT:  -- where they're saying you just gave them
 9   the pattern for termination, one document, but you didn't
10   provide the termination notices that you actually sent out.
11          MR. COBB:  Well, we did provide -- let's see.  We
12   provided 944 pages of information about every user who has been
13   disciplined pursuant to the repeat infringer program.
14          THE COURT:  All right.  Which documents -- which Bates
15   numbers are those?
16          MR. COBB:  Those are Bates Nos. --
17          THE COURT:  Because you didn't reference that one in
18   your --
19          MR. COBB:  In our response.  I saw that it.  It's SSM
20   50628 through SSM 51571.
21          THE COURT:  All right.  So those you consider would be
22   responsive to Request for Production No. 5?
23          MR. COBB:  Yes, your Honor.
24          THE COURT:  All right.  Do you have anything else?
25          MR. COBB:  Aside from what was produced, to my
```

1  knowledge, no.  The only thing that I would add is that this

2  is -- a defense has been asserted under the DMCA safe harbor.

3  And if it is determined that there was compliance with DMCA,

4  there'd be immunity.  So I think we're a little cart in front

5  of the horse as far as a server forensic examination at this

6  point.

7          THE COURT:  Well --

8          MR. COBB:  I provided these discovery requests to my

9  client.  These are the documents that were provided.  The items

10  I just noted that were Bates stamped as referenced in response

11  to Request For Production No. 6 should have also been included

12  in response to Request For Production No. 5.  My apologies to

13  the Court and the Plaintiff for that oversight.

14          THE COURT:  Well, did those documents contain the

15  technical information such as the uploaders' IP address, their

16  profile, their e-mail address and so on?

17          MR. COBB:  Not that I'm aware of, your Honor.

18          THE COURT:  So those documents don't contain that?

19          MR. COBB:  No.  Not that I'm aware of.

20          THE COURT:  All right.  So that's where I was coming

21  from --

22          MR. COBB:  Okay.

23          THE COURT:  -- when I was talking about it sounds to me

24  like they want --

25          MR. COBB:  Yeah.

```
 1          THE COURT:  -- an image of the drive, because it seems
 2   to me that that's how you would get that.
 3          All right.  With that correction, Mr. Freeman, that
 4   those other documents are responsive and that they have nothing
 5   else short of an examination of their drive, what more can I do
 6   for you at this time?
 7          MR. FREEMAN:  Well --
 8          THE COURT:  And I agree that examination might be a
 9   little premature.
10          MR. FREEMAN:  Well, at this point, your Honor, I've got
11   e-mail addresses that I know to be fake that have been
12   represented by the Defendant as being uploader e-mails.
13          I have a statement from Defendant that they don't have
14   termination dates or termination notices that were actually
15   sent and they don't have the IP addresses.
16          THE COURT:  Well, he just told me that termination
17   notices that were actually sent are SSM 50628 through 51571.
18          MR. FREEMAN:  No.  No.  That's not true.  That's not
19   what's on those pages.
20          What's on those pages is a printout of an uploader ID,
21   an uploader e-mail address, a list of videos that were
22   associated with that uploader, a date of third notice -- and
23   they made very clear that that's what it was -- and the
24   discipline action, termination.  It doesn't tell us when they
25   were terminated.  And it does not tell us -- give us a copy of
```

```
 1   the termination notice sent to the uploader.

 2        THE COURT:  But they told you that their termination

 3   notice is SSM 30001.

 4        MR. FREEMAN:  No.  That's sample.

 5        THE COURT:  So that's what they sent.  Right?

 6        MR. FREEMAN:  I don't know.  I --

 7        THE COURT:  They've given you what they sent, sort of

 8   like the form letter.  They've given you the form letter and

 9   the people who got it.

10        MR. FREEMAN:  Right.  But they don't -- okay.  So they

11   didn't keep a copy of it.  But there's a record somewhere of

12   when the termination notice should have been sent to each

13   uploader.

14        THE COURT:  Well --

15        MR. FREEMAN:  So here's -- the direction that this is

16   going is that the Defendant, it appears to me, has made up

17   uploaders and uploader information.  And I need to be able to

18   establish proof of that at this point.

19        THE COURT:  Well, if they don't have anything else to

20   give you right now, then you're just going to have to inquire

21   of this at depositions and try to prove them to be lying.

22   Right?

23        MR. FREEMAN:  That's correct.  But then at the same

24   time, you said it's probably premature for an image of the

25   drive.
```

18

```
 1          THE COURT:  Right.

 2          MR. FREEMAN:  But there's no other way at this point

 3    for me to prove that that's what's going on.

 4          THE COURT:  I think after depositions, then I think it

 5    would be a good time to do the image of the drive.  I think it

 6    is too soon.

 7          MR. FREEMAN:  All right.  Thank you, your Honor.

 8          THE COURT:  I think you have materials to work with

 9    right now.  And then you provide proof of what you're saying.

10    Because that's a very invasive thing to do.

11          MR. FREEMAN:  I understand.  And I'm just trying to be

12    able to get documentation of what they say happened.

13          THE COURT:  All right.  You have some by way of

14    these -- this log and this form.  And then you can go from

15    there and then build your case, that you're saying that they're

16    making all this up.  All right?

17          MR. FREEMAN:  Yes, your Honor.

18          THE COURT:  All right.  So that's on No. 5.  So I'm

19    going to deny that one without prejudice.

20          Then we have 6 -- no.  I'm sorry.  Back up.  9.  9,

21    again, they're saying they have nothing else.  Profit-and-loss

22    statements.

23          MR. FREEMAN:  Right.  They're going to say they have

24    nothing else.  And that obviously is indicative of where the

25    Court's going.  But there had to have been documentation to
```

```
 1   establish the numbers on the profit-and-loss statement that

 2   they gave to us.

 3        They say that two of the websites -- one of them didn't

 4   make any income.  Another one's income was counted within

 5   the -- one of the other websites.  But the website that didn't

 6   have any income, it wasn't operated for free.  The website

 7   that -- and the same with the one whose income was absorbed

 8   into the other numbers.  We asked -- we just didn't ask for a

 9   profit-and-loss statement; we asked for documents regarding

10   profit-and-loss statements.

11        And so we'd like to see the documents that support the

12   numbers on these profit-and-loss statements and even the

13   numbers on -- that are saying that one of them didn't make any

14   money and the numbers that are saying one of them -- one of

15   theirs income went into the other's.

16        I mean, the actual damage apportioned underneath the

17   statute --

18        THE COURT:  All right.  Do you have any other financial

19   documents for the years 2009 through 2015, Mr. Cobb, that have

20   not been produced for the Defendant?

21        MR. COBB:  Aside from bank statements, which, if

22   that's to be construed as being responsive to stuff relating to

23   profit-and-loss statements, bank statements are what the

24   Defendant would have.  Those would have to be certainly either

25   redacted and/or a confidentiality order would have to be agreed
```

1   to between the parties.

2          But again, respectfully, I think the cart's in front of

3   the horse on this issue, given the DMCA immunity and --

4          THE COURT:  Well, but you have produced some financial

5   statements.  Right?

6          MR. COBB:  Yes, we have, your Honor.  Financial

7   statements have been produced.

8          THE COURT:  So the question is:  You're saying you

9   don't have anything else.  And then Mr. Freeman is saying, Oh,

10  I didn't really mean just profit-and-loss statements.  I meant

11  financial statements.

12         So my question to you is:  Are there any additional

13  financial statements?  You're telling me there's bank

14  statements.  But I'm thinking more along the lines of -- and I

15  think this kind of ties in with the tax returns that come a

16  little bit later -- anything else that you have, like -- what

17  is that called?  Not the profit and loss, but the other

18  statement that's a statement of account or something along

19  those lines.

20         MR. COBB:  Accounts receivable financial statement?

21         THE COURT:  Financial statement.  Yes.

22         MR. COBB:  Year-end financials.

23         THE COURT:  Right.  That's what I'm thinking of.

24         MR. COBB:  Okay.

25         THE COURT:  All right.  So why don't you produce any

```
 1   year-end financials that you have for the years 2009 through
 2   2015, Defendants.
 3            MR. COBB:  Yes, your Honor.
 4            THE COURT:  And I'm assuming that that will encompass
 5   all three websites, not just the feedvids and playvids, but
 6   peekvid.
 7            MR. COBB:  Yes, your Honor.
 8            THE COURT:  All of them.  All right?
 9            So I will grant 9 to supplement with year-end financial
10   statements.
11            And then we have -- oh, 17 through 20.  And those, I
12   think, have to do with the corporate formation, the ownership.
13   The tax returns -- you said you only had tax returns through
14   2010.  And the others have not been prepared?
15            MR. COBB:  Correct.
16            THE COURT:  All right.  So you produce them when they
17   get prepared.
18            MR. COBB:  Yes, your Honor.
19            THE COURT:  All right.  And I'm not sure that this long
20   document is really standing alone, but I would imagine that it
21   would show up in year-end financials in terms of assets and
22   liabilities.  So you would in a way get No. 20 by getting the
23   supplement to No. 9.
24            So the question is -- I think the only other question
25   is this business about the ownership and the corporate
```

1   formation of the corporation.  I'm assuming -- is it a Florida

2   corporation?

3        MR. COBB:  Yes, your Honor.

4        THE COURT:  All right.  So Sunbiz has been pulled?

5        MR. FREEMAN:  I have pulled what I've been able to

6   pull.

7        THE COURT:  All right.  So is there anything else?

8   There's something about a reference to bylaws, but there were

9   no bylaws written in the corporation?

10        MR. COBB:  My client has informed us they do not have

11   copies of their bylaws.

12        THE COURT:  All right.

13        MR. COBB:  Everything that's on Sunbiz, which is the

14   articles of incorporation and the yearly annual reports, is

15   simple.  Click and download.

16        THE COURT:  All right.  So those are available.  And

17   defense counsel is saying that there's nothing else.

18        MR. COBB:  Nothing else, I mean, aside from what's been

19   produced or what can be readily ascertained from government

20   websites.

21        THE COURT:  Would you like them to produce the stuff of

22   Sunbiz or are you happy with what you've downloaded,

23   Mr. Freeman?

24        MR. FREEMAN:  I would ask that they produce it.

25        THE COURT:  So please produce the Sunbiz stuff so --

```
 1   sometimes it has an evidentiary value that you all produce it.
 2   And also, all that you produce, then, would sort of like say
 3   this is all you have; and if that's not true, then there would
 4   be consequences later.
 5         So that brings us to ownership.  And let me hear --
 6   Mr. Freeman, it wasn't quite clear to me.  There's two
 7   individuals being named in their individual capacity.  It's not
 8   quite clear whether those individuals who -- it sounds like
 9   they operate the business -- would be personally liable under
10   the copyright and trademark laws.  And so answer that question.
11   And also why you want to know the names of the owners of the
12   corporation, which obviously you will get -- you get some
13   information off Sunbiz in terms of the officers and so on.  But
14   what more do you want?
15         MR. FREEMAN:  Your Honor, under the law, anybody that
16   has control or decision-making over items that are up on a
17   website can be held personally liable for copyright
18   infringement.
19         The two individual that were listed here are listed
20   as -- off the top of my head, a director or vice president.
21   They're listed in executive roles with Sun Social.  And that's
22   why they were named.
23         It is our position that there's -- it's at least
24   reasonably calculated that one of the owners could be involved
25   in control and decision-making over what's going on in the
```

1    website and could also then be held personally liable.  It's

2    also another reason why the communications between people are

3    important.

4          But we can't even assess that without knowing who the

5    owners are.  It seems pretty clear that a simple request like

6    that is relevant.

7          THE COURT:  Well, the way you requested it is all

8    documents relating to ownership.  It seems to me that if you

9    had served an interrogatory asking for the names of the owners

10   of the corporation, that would be a little bit more tailored to

11   what you're looking for, not necessarily that it's relevant,

12   but at least if you're saying that all individuals with control

13   would be liable and you've named some John Does, that would be

14   a little bit more reasonable to go about it as opposed to all

15   documents relating to ownership.  All right?  So I will deny

16   that one without prejudice to your seeking the same

17   information --

18         MR. FREEMAN:  Thank you.

19         THE COURT:  -- with an interrogatory.

20         All right.  So let me just recap to make sure we're all

21   on the same page.

22         I made the ruling on 6 through 8 and 10 to 16 without

23   prejudice to further inquiry by the Plaintiffs.

24         The Defendants are to supplement their responses, too.

25         4 was withdrawn.

1          5 is denied without prejudice.

2          9 is the one that they need to supplement.  And they

3    also need to supplement 17.

4          And 18 is denied without prejudice to request the

5    information by way of interrogatory.

6          19 is to be supplemented as additional tax returns are

7    prepared.

8          And the supplementation for 9 will include the

9    production of Defendants' year-end financials for the years

10   2009 through 2015.

11         Did I miss anything?

12         MR. FREEMAN:  No, your Honor.

13         MR. COBB:  No, your Honor.

14         THE COURT:  All right.  You'll receive a written order.

15         Thank you very much.  Happy holidays.

16         MR. FREEMAN:  Happy holidays, your Honor.  Thank you.

17         MR. COBB:  Thank you.

18         (Proceedings concluded.)

19

20

21

22

23

24

25

26

1

C E R T I F I C A T E

2

3       I hereby certify that the foregoing is an

4   accurate transcription of the proceedings in the

5   above-entitled matter.

6

7
                             /s/Lisa Edwards
8   _____        LISA EDWARDS, RDR, CRR
        DATE            Official Court Reporter
9                       United States District Court
                        400 North Miami Avenue, Twelfth Floor
10                      Miami, Florida 33128
                        (305) 523-5499
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25