# EXHIBIT "1"

1

```
 1                  UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
 2                         MIAMI DIVISION
                    CASE NO. 15-22134-CIVIL-UNGARO
 3

 4   HYDENTRA HLP INT., LIMITED,          Miami, Florida

 5              Plaintiff,               December 16, 2015

 6        vs.                            3:00 p.m.

 7   CONSTANTIN LUCHIAN, et al.,

 8              Defendants.        Pages 1 to 26

 9   _____

10                       MOTION HEARING
          BEFORE THE HONORABLE ALICIA M. OTAZO-REYES,
11              UNITED STATES MAGISTRATE JUDGE
          (TRANSCRIBED FROM THE DIGITAL AUDIO RECORDING)
12
     APPEARANCES:
13

14   FOR THE PLAINTIFF:       SPENCER D. FREEMAN, ESQ.
                              FREEMAN LAW FIRM, INC.
15                            1107 1/2 Tacoma Avenue South
                              Tacoma, Washington 98402
16
                              AARON BEHAR, ESQ.
17                            BEHAR BEHAR
                              1840 North Commerce Parkway
18                            Suite One
                              Weston, Florida 33326
19

20   FOR THE DEFENDANTS:      BRADY COBB, ESQ.
                              TRIPP SCOTT
21                            110 Southeast Sixth Street
                              Fifteenth Floor
22                            Fort Lauderdale, Florida 33302

23                            VAL GURVITS, ESQ.
                              BOSTON LAW GROUP, PC
24                            825 Beacon Street
                              Suite 20
25                            Newton Centre, Massachusetts 02459
```

2

```
1    TRANSCRIBED BY:          LISA EDWARDS, RDR, CRR
                              Official Court Reporter
2                             United States District Court
                              400 North Miami Avenue
3                             Twelfth Floor
                              Miami, Florida 33128
4                             (305) 523-5499

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1          THE COURT:  Good afternoon.

2          MR. FREEMAN:  Good afternoon, your Honor.

3          MR. COBB:  Good afternoon, your Honor.

4          THE COURTROOM DEPUTY:  Hydentra HLP International,

5    Limited, versus Constantin Luchian, et al., Case No.

6    15-22134-Civil-Ungaro.

7          Counsel, please state your appearances for the record.

8          MR. FREEMAN:  Good afternoon, your Honor.  For the

9    record, Spencer Freeman on behalf of the Plaintiff, Hydentra.

10          MR. BEHAR:  Aaron Behar for Plaintiff.

11          THE COURT:  All right.

12          MR. COBB:  Brady Cobb on behalf of the Defendants.

13          MR. GURVITS:  Val Gurvits on behalf of Defendants.

14          THE COURT:  All right.  Thank you.

15          You may be seated, except when addressing the Court.

16          All right.  I have the motion to compel.  I have

17    reviewed the response also.

18          Let me ask you -- I always ask this first -- have the

19    parties resolved any of the disputes or do I need to address

20    all of them?

21          MR. FREEMAN:  Your Honor, with regard to Request For

22    Production No. 4, the Plaintiff withdraws its motion --

23          THE COURT:  Okay.

24          MR. FREEMAN:  -- for reasons other than what the

25    Defendant has alleged in their opposition.  That stuff was

4

1    ultimately produced.

2           THE COURT:  All right.  So 4 has been resolved.

3           Anything else?

4           MR. COBB:  No, your Honor.

5           THE COURT:  All right.  I kind of grouped the requests.

6    6 through 8 and 10 through 16 seem to have to do with

7    information that Plaintiff is seeking regarding independent

8    contractors, programmers and advertisers, various types of

9    information, invoices, payments, contracts and so on.  It seems

10   to me that they all could be addressed together in terms of the

11   additional information that the Plaintiff is seeking.

12          And from what I read, the Defendant is basically saying

13   that Plaintiff doesn't really need all of that additional

14   information.

15          So let me hear from Plaintiffs, kind of like get sort

16   of like a reply.

17          MR. FREEMAN:  Sure.  Thank you, your Honor.

18          Your Honor, do you want me to come up to the podium or

19   here?

20          THE COURT:  Wherever you're comfortable.

21          MR. FREEMAN:  Your Honor, I agree that grouping those

22   requests for production is appropriate.  I think the arguments

23   go the same to all of them.

24          Your Honor, I would point out a couple of important

25   things:  First of all, looking at the claims that have been

1  alleged against the Defendant, the direct copyright

2  infringement, contributory copyright infringement, vicarious

3  copyright infringement, inducement of copyright, in addition,

4  those same claims with regard to trademark, all of those have

5  some element and we've alleged some element of knowledge,

6  willfulness or willful blindness or actual knowledge or

7  red-flag knowledge.  So one of -- a variation of one of those

8  things, or encouraging.

9       Therefore, the communications that the Defendants or

10 those representing the Defendants cites have with independent

11 contractors, programmers and advertisers establishes as it were

12 the state of mind of the Defendants, their knowledge, their

13 encouraging acts, if there are any.

14      The independent contractors -- and I would also point

15 out that according to the profit-and-loss statements, there are

16 no employees.  There's no employee costs.  Everybody's an

17 independent contractor.

18      So these independent contractors are doing all tasks

19 associated with the running and operation of these sites, which

20 includes videos that are maintained, videos that are up there,

21 possibly posting videos, and maintaining advertising.

22      The manner in which the site operates, both on the

23 front end, on the end user that's visually observing the

24 operation of those sites, as well as the back end, all of that

25 stuff inherently is done through software.  So the programmers

1    are -- will have been instructed to achieve certain tasks.

2    Again, those tasks and those instructions are going to be

3    indicative of the Defendants' knowledge.  Perhaps they're

4    indicative of the Defendants' lack of knowledge or lack of

5    encouraging, which is still relevant.  The fact that it's not

6    there is also relevant.

7         These are not tenuous issues.  They go directly to

8    allegations that we have in the complaint.

9         So it's not just that we're trying to string together

10   some theories.  It's that these are actual elements of our case

11   and are absolutely relevant to it.  So we'd ask the Court to

12   order them to be compelled.

13        THE COURT:  So if I understand you correctly, you're

14   trying to establish knowledge or lack of knowledge from

15   communications with programmers, independent contractors and

16   advertisers.  What about -- assuming I accept that, how does

17   that theory support getting invoices?  I thought I saw

18   payments, things of that -- and contracts, things outside of

19   the communications.

20        MR. FREEMAN:  Well, the contracts themselves are going

21   to dictate the scope of work.  Every programmer I've ever run

22   across or independent contractor that I run across, they're

23   dictated by a contract.  And there are tasks and what's

24   expected of them, and their rate of pay is going to be dictated

25   within that contract.

1          As far as the invoices and payments, it is our position

2    that the Defendants are involved in the posting and displaying

3    of these videos.  So we want to be able to look at the amounts

4    charged and the amounts paid to independent contractors and see

5    if they comport with the market value for what is purported to

6    have been done.

7          So if a task, let's say, market value is $100, but this

8    particular independent contractor is paid $1,000 for, well, now

9    we've got some suspect as to see what task was really

10   accomplished underneath that invoice.

11         So we think that it confirms or will contest what tasks

12   are actually being performed.

13         THE COURT:  All right.  Let me hear from Defendants on

14   those points.

15         MR. COBB:  Yes, your Honor.

16         It's our position, as is stated in our response that

17   was filed, this information that is sought is not relevant to

18   the facts of this case.  And I'm not saying relevance under the

19   context as it was formerly known; but looking at the recently

20   amended Rule 26, discovery has to be tailored to the issues in

21   the case.

22         And as counsel just said in his statements, we're

23   talking about three or four levels removed from what their

24   actual allegation is.  Our contracts with third-party providers

25   are not relevant.  They don't establish any willfulness.  And

```
 1   this case is about whether infringing material was uploaded.

 2   As it pertains to that point, we've already produced documents

 3   that are relevant and show who uploaded videos, who has been

 4   disciplined for improperly uploading videos.

 5          Additionally, Plaintiff has served subpoenas to

 6   third-party providers to obtain information.

 7          So this request is overly broad.  It's not relevant to

 8   the litigation of the claims that the Plaintiff has brought.

 9   And it's unreasonably burdensome.  If you look at the context

10   in the language of the new Rule 26, the discovery has to be

11   proportional to the needs of the case.  Allowing Plaintiff to

12   go on this extended fishing expedition is not proportional to

13   the needs of this case.

14          THE COURT:  All right.  Well, let me ask you this

15   question:  Would there be any communications other than the

16   infringing notices that may be relevant to the posting of the

17   videos?

18          MR. COBB:  What types of communication?  Between who?

19          THE COURT:  Between Defendants and those parties that

20   we're considering, the independent contractors, the programmers

21   and the advertisers.

22          MR. COBB:  As it pertains to uploading infringing

23   material?

24          THE COURT:  Right.

25          MR. GURVITS:  Your Honor, the -- just by way of
```

1   background, this case is about --

2        MR. FREEMAN:  I actually have an objection.

3   Mr. Gurvits is not a member of this district.  He has also not

4   applied for or been granted *pro hac vice* into this case.  I

5   think it's inappropriate for him to be involved in this

6   hearing.

7        THE COURT:  All right.  I allow Mr. Cobb to consult

8   with Mr. Gurvits and then answer my question.

9        (Pause in the proceedings.)

10       MR. COBB:  Your Honor, as pertains to those

11  communications, I can't answer that question for your Honor.

12  Those can be -- there's information about uploading of

13  infringing materials.

14       What I can say is that the case, if you read

15  Plaintiff's complaint and read their causes of action, it is a

16  case for uploading allegedly infringing material onto a

17  website.

18       THE COURT:  Right.

19       MR. COBB:  This information that is being sought is

20  about how the Defendants' website actually works, how it was

21  built, how it's been fine tuned --

22       THE COURT:  Well --

23       MR. COBB:  -- none of which is relevant to

24  infringement.

25       THE COURT:  I just limited the communications to

1    uploading infringing materials to the websites.

2         Now, you have said you have produced infringer notices.

3    So my question is:  Would there be any other communications

4    outside of what you have produced that would have to do with

5    the uploading, such as guidelines, not necessarily after the

6    fact, but guidelines on uploading, things of that nature,

7    particularly for the independent contractors?  And I'm assuming

8    independent contractors and programmers all perform the

9    services for the website and the advertisers.

10        MR. COBB:  There would not be, your Honor.

11        THE COURT:  There is not?  There is nothing?  You can

12   assure me of that?

13        MR. COBB:  Yes, your Honor.

14        THE COURT:  All right.  So not -- so all you have is

15   after-the-fact communications?  You don't have anything that

16   gives people instructions before the fact of what can and

17   cannot be uploaded?

18        MR. COBB:  What you've just said is correct, your

19   Honor.

20        THE COURT:  All right.  That is the only thing that I

21   can think of that would be appropriate at this stage.

22   Mr. Freeman, I think that the contracts, the invoices, the

23   payments go too far afield.  I am very well familiar with the

24   new discovery rule and the concept of proportionality.  And I

25   have been applying it even before the rule came into effect,

```
 1   because the concept was embedded into the rules before.  They

 2   have just been put front and center now.

 3          So I am going to deny the motion to compel as to

 4   Requests 6 through 8 and 10 through 16 with the proviso, of

 5   course, that this is based in part on the representations of

 6   counsel that there's no other communications beyond the

 7   infringing notices that would take -- that would address in any

 8   fashion the uploading of materials to the website and also with

 9   the proviso that this issue can be inquired of in deposition to

10   make sure that that is the case.

11          All right?

12          MR. FREEMAN:  Your Honor, if I could, the issue I have

13   is this:  The --

14          THE COURT:  Mr. Freeman, generally, when I rule, I

15   don't hear further argument.

16          MR. FREEMAN:  I appreciate that, your Honor.  Thank

17   you.

18          THE COURT:  All right.  I try to make it as flexible as

19   possible so that you are not curtailed from looking into it.

20   But as it stands right now and given the representation of

21   counsel, it does not seem to me that it is justified to go into

22   this much search of the relationship between the Defendant and

23   independent contractors, programmers and advertisers.

24          MR. FREEMAN:  And, your Honor, I heard you, but I --

25   there's a representation of counsel that you're relying on.
```

1    And I have a counter-fact to that that --

2         THE COURT:  Well, that's -- when I ask counsel to make

3    a representation, I count on counsel to make a representation

4    as an officer of the Court.

5         Now, on purpose, I said my ruling is without prejudice

6    to you inquiring of these matters at depositions, because then

7    you will have the opportunity to confirm it.

8         MR. FREEMAN:  Thank you, your Honor.

9         THE COURT:  And I take it at their face value.

10   Otherwise, our courts could not operate if we couldn't trust

11   the word of our attorneys.  All right?

12        So that's my ruling on that.

13        Now, the other ones, except for 4 -- so we're talking

14   about 5, 9, 17 through 20:  They kind of go into information

15   about the Defendants.

16        Now, No. 5, Defendants are saying that they have no

17   further documents to produce, that they have produced all of

18   the notices.

19        So let me hear from you, Mr. Freeman, on that one.

20        MR. FREEMAN:  Your Honor, we requested all the

21   termination letters.  And they gave us a sample from

22   (inaudible).  We requested all documents that have information

23   in regard to uploaders that have been terminated, which

24   includes dates of termination as well as IP addresses.  We were

25   not given that information.

1          The Defendants' reply, in all due respect, is not

2     credible.  If they send out an electronic termination notice,

3     there is a record of that action, inherently.  They've kept,

4     apparently, a bunch, 16,000 pages, all of the termination

5     notices or take-down notices that were sent to them.  There

6     inherently has to be a record, unless they're intentionally

7     purging every time -- a record of these actual terminations, a

8     record of a date of termination, as well as a termination order

9     itself.

10          They also in their briefing talk about the

11     documentation that they did give us of the uploaders that were

12     terminated.  And our issue with that and the reason we have a

13     problem with his credibility is that the facts contained in

14     those documents are not real.  Nine out of -- so far, we have

15     determined that nine out of ten e-mails that were represented

16     to us as being an uploader e-mail are fake.  And we know this

17     because we created the e-mail over the last couple weeks.  We

18     know this because we ran a program that dinged -- that pinged

19     these e-mails and then come back as to whether or not valid.

20     So the information we have been provided isn't real.

21          There's other information out there that -- it's

22     automatically recorded.  Computers record everything.  We want

23     copies of that as we've requested.

24          That sample termination order is not sufficient to show

25     us all of the information that we requested.

1          THE COURT:  It sounds to me like you want a forensic

2    examination of their servers.

3          MR. FREEMAN:  We may need to request that at this

4    point, yes, based off the information that we're finding.

5          THE COURT:  Let me hear from the Defendant.  And we're

6    talking about Request No. 5 --

7          MR. COBB:  Request No. 5.

8          THE COURT:  -- where they're saying you just gave them

9    the pattern for termination, one document, but you didn't

10   provide the termination notices that you actually sent out.

11         MR. COBB:  Well, we did provide -- let's see.  We

12   provided 944 pages of information about every user who has been

13   disciplined pursuant to the repeat infringer program.

14         THE COURT:  All right.  Which documents -- which Bates

15   numbers are those?

16         MR. COBB:  Those are Bates Nos. --

17         THE COURT:  Because you didn't reference that one in

18   your --

19         MR. COBB:  In our response.  I saw that it.  It's SSM

20   50628 through SSM 51571.

21         THE COURT:  All right.  So those you consider would be

22   responsive to Request for Production No. 5?

23         MR. COBB:  Yes, your Honor.

24         THE COURT:  All right.  Do you have anything else?

25         MR. COBB:  Aside from what was produced, to my

```
1   knowledge, no.  The only thing that I would add is that this
2   is -- a defense has been asserted under the DMCA safe harbor.
3   And if it is determined that there was compliance with DMCA,
4   there'd be immunity.  So I think we're a little cart in front
5   of the horse as far as a server forensic examination at this
6   point.
7            THE COURT:  Well --
8            MR. COBB:  I provided these discovery requests to my
9   client.  These are the documents that were provided.  The items
10  I just noted that were Bates stamped as referenced in response
11  to Request For Production No. 6 should have also been included
12  in response to Request For Production No. 5.  My apologies to
13  the Court and the Plaintiff for that oversight.
14           THE COURT:  Well, did those documents contain the
15  technical information such as the uploaders' IP address, their
16  profile, their e-mail address and so on?
17           MR. COBB:  Not that I'm aware of, your Honor.
18           THE COURT:  So those documents don't contain that?
19           MR. COBB:  No.  Not that I'm aware of.
20           THE COURT:  All right.  So that's where I was coming
21  from --
22           MR. COBB:  Okay.
23           THE COURT:  -- when I was talking about it sounds to me
24  like they want --
25           MR. COBB:  Yeah.
```

1      THE COURT:  -- an image of the drive, because it seems

2  to me that that's how you would get that.

3      All right.  With that correction, Mr. Freeman, that

4  those other documents are responsive and that they have nothing

5  else short of an examination of their drive, what more can I do

6  for you at this time?

7      MR. FREEMAN:  Well --

8      THE COURT:  And I agree that examination might be a

9  little premature.

10      MR. FREEMAN:  Well, at this point, your Honor, I've got

11  e-mail addresses that I know to be fake that have been

12  represented by the Defendant as being uploader e-mails.

13      I have a statement from Defendant that they don't have

14  termination dates or termination notices that were actually

15  sent and they don't have the IP addresses.

16      THE COURT:  Well, he just told me that termination

17  notices that were actually sent are SSM 50628 through 51571.

18      MR. FREEMAN:  No.  No.  That's not true.  That's not

19  what's on those pages.

20      What's on those pages is a printout of an uploader ID,

21  an uploader e-mail address, a list of videos that were

22  associated with that uploader, a date of third notice -- and

23  they made very clear that that's what it was -- and the

24  discipline action, termination.  It doesn't tell us when they

25  were terminated.  And it does not tell us -- give us a copy of

1   the termination notice sent to the uploader.

2        THE COURT:  But they told you that their termination

3   notice is SSM 30001.

4        MR. FREEMAN:  No.  That's sample.

5        THE COURT:  So that's what they sent.  Right?

6        MR. FREEMAN:  I don't know.  I --

7        THE COURT:  They've given you what they sent, sort of

8   like the form letter.  They've given you the form letter and

9   the people who got it.

10        MR. FREEMAN:  Right.  But they don't -- okay.  So they

11   didn't keep a copy of it.  But there's a record somewhere of

12   when the termination notice should have been sent to each

13   uploader.

14        THE COURT:  Well --

15        MR. FREEMAN:  So here's -- the direction that this is

16   going is that the Defendant, it appears to me, has made up

17   uploaders and uploader information.  And I need to be able to

18   establish proof of that at this point.

19        THE COURT:  Well, if they don't have anything else to

20   give you right now, then you're just going to have to inquire

21   of this at depositions and try to prove them to be lying.

22   Right?

23        MR. FREEMAN:  That's correct.  But then at the same

24   time, you said it's probably premature for an image of the

25   drive.

```
1          THE COURT:  Right.

2          MR. FREEMAN:  But there's no other way at this point

3    for me to prove that that's what's going on.

4          THE COURT:  I think after depositions, then I think it

5    would be a good time to do the image of the drive.  I think it

6    is too soon.

7          MR. FREEMAN:  All right.  Thank you, your Honor.

8          THE COURT:  I think you have materials to work with

9    right now.  And then you provide proof of what you're saying.

10   Because that's a very invasive thing to do.

11         MR. FREEMAN:  I understand.  And I'm just trying to be

12   able to get documentation of what they say happened.

13         THE COURT:  All right.  You have some by way of

14   these -- this log and this form.  And then you can go from

15   there and then build your case, that you're saying that they're

16   making all this up.  All right?

17         MR. FREEMAN:  Yes, your Honor.

18         THE COURT:  All right.  So that's on No. 5.  So I'm

19   going to deny that one without prejudice.

20         Then we have 6 -- no.  I'm sorry.  Back up.  9.  9,

21   again, they're saying they have nothing else.  Profit-and-loss

22   statements.

23         MR. FREEMAN:  Right.  They're going to say they have

24   nothing else.  And that obviously is indicative of where the

25   Court's going.  But there had to have been documentation to
```

1  establish the numbers on the profit-and-loss statement that

2  they gave to us.

3         They say that two of the websites -- one of them didn't

4  make any income.  Another one's income was counted within

5  the -- one of the other websites.  But the website that didn't

6  have any income, it wasn't operated for free.  The website

7  that -- and the same with the one whose income was absorbed

8  into the other numbers.  We asked -- we just didn't ask for a

9  profit-and-loss statement; we asked for documents regarding

10  profit-and-loss statements.

11         And so we'd like to see the documents that support the

12  numbers on these profit-and-loss statements and even the

13  numbers on -- that are saying that one of them didn't make any

14  money and the numbers that are saying one of them -- one of

15  theirs income went into the other's.

16         I mean, the actual damage apportioned underneath the

17  statute --

18         THE COURT:  All right.  Do you have any other financial

19  documents for the years 2009 through 2015, Mr. Cobb, that have

20  not been produced for the Defendant?

21         MR. COBB:  Aside from bank statements, which, if

22  that's to be construed as being responsive to stuff relating to

23  profit-and-loss statements, bank statements are what the

24  Defendant would have.  Those would have to be certainly either

25  redacted and/or a confidentiality order would have to be agreed

```
 1    to between the parties.

 2          But again, respectfully, I think the cart's in front of

 3    the horse on this issue, given the DMCA immunity and --

 4          THE COURT:  Well, but you have produced some financial

 5    statements.  Right?

 6          MR. COBB:  Yes, we have, your Honor.  Financial

 7    statements have been produced.

 8          THE COURT:  So the question is:  You're saying you

 9    don't have anything else.  And then Mr. Freeman is saying, Oh,

10    I didn't really mean just profit-and-loss statements.  I meant

11    financial statements.

12          So my question to you is:  Are there any additional

13    financial statements?  You're telling me there's bank

14    statements.  But I'm thinking more along the lines of -- and I

15    think this kind of ties in with the tax returns that come a

16    little bit later -- anything else that you have, like -- what

17    is that called?  Not the profit and loss, but the other

18    statement that's a statement of account or something along

19    those lines.

20          MR. COBB:  Accounts receivable financial statement?

21          THE COURT:  Financial statement.  Yes.

22          MR. COBB:  Year-end financials.

23          THE COURT:  Right.  That's what I'm thinking of.

24          MR. COBB:  Okay.

25          THE COURT:  All right.  So why don't you produce any
```

1    year-end financials that you have for the years 2009 through

2    2015, Defendants.

3          MR. COBB:  Yes, your Honor.

4          THE COURT:  And I'm assuming that that will encompass

5    all three websites, not just the feedvids and playvids, but

6    peekvid.

7          MR. COBB:  Yes, your Honor.

8          THE COURT:  All of them.  All right?

9          So I will grant 9 to supplement with year-end financial

10    statements.

11          And then we have -- oh, 17 through 20.  And those, I

12    think, have to do with the corporate formation, the ownership.

13    The tax returns -- you said you only had tax returns through

14    2010.  And the others have not been prepared?

15          MR. COBB:  Correct.

16          THE COURT:  All right.  So you produce them when they

17    get prepared.

18          MR. COBB:  Yes, your Honor.

19          THE COURT:  All right.  And I'm not sure that this long

20    document is really standing alone, but I would imagine that it

21    would show up in year-end financials in terms of assets and

22    liabilities.  So you would in a way get No. 20 by getting the

23    supplement to No. 9.

24          So the question is -- I think the only other question

25    is this business about the ownership and the corporate

1  formation of the corporation.  I'm assuming -- is it a Florida

2  corporation?

3          MR. COBB:  Yes, your Honor.

4          THE COURT:  All right.  So Sunbiz has been pulled?

5          MR. FREEMAN:  I have pulled what I've been able to

6  pull.

7          THE COURT:  All right.  So is there anything else?

8  There's something about a reference to bylaws, but there were

9  no bylaws written in the corporation?

10         MR. COBB:  My client has informed us they do not have

11  copies of their bylaws.

12         THE COURT:  All right.

13         MR. COBB:  Everything that's on Sunbiz, which is the

14  articles of incorporation and the yearly annual reports, is

15  simple.  Click and download.

16         THE COURT:  All right.  So those are available.  And

17  defense counsel is saying that there's nothing else.

18         MR. COBB:  Nothing else, I mean, aside from what's been

19  produced or what can be readily ascertained from government

20  websites.

21         THE COURT:  Would you like them to produce the stuff of

22  Sunbiz or are you happy with what you've downloaded,

23  Mr. Freeman?

24         MR. FREEMAN:  I would ask that they produce it.

25         THE COURT:  So please produce the Sunbiz stuff so --

1    sometimes it has an evidentiary value that you all produce it.

2    And also, all that you produce, then, would sort of like say

3    this is all you have; and if that's not true, then there would

4    be consequences later.

5         So that brings us to ownership.  And let me hear --

6    Mr. Freeman, it wasn't quite clear to me.  There's two

7    individuals being named in their individual capacity.  It's not

8    quite clear whether those individuals who -- it sounds like

9    they operate the business -- would be personally liable under

10   the copyright and trademark laws.  And so answer that question.

11   And also why you want to know the names of the owners of the

12   corporation, which obviously you will get -- you get some

13   information off Sunbiz in terms of the officers and so on.  But

14   what more do you want?

15        MR. FREEMAN:  Your Honor, under the law, anybody that

16   has control or decision-making over items that are up on a

17   website can be held personally liable for copyright

18   infringement.

19        The two individual that were listed here are listed

20   as -- off the top of my head, a director or vice president.

21   They're listed in executive roles with Sun Social.  And that's

22   why they were named.

23        It is our position that there's -- it's at least

24   reasonably calculated that one of the owners could be involved

25   in control and decision-making over what's going on in the

24

```
 1   website and could also then be held personally liable.  It's

 2   also another reason why the communications between people are

 3   important.

 4          But we can't even assess that without knowing who the

 5   owners are.  It seems pretty clear that a simple request like

 6   that is relevant.

 7          THE COURT:  Well, the way you requested it is all

 8   documents relating to ownership.  It seems to me that if you

 9   had served an interrogatory asking for the names of the owners

10   of the corporation, that would be a little bit more tailored to

11   what you're looking for, not necessarily that it's relevant,

12   but at least if you're saying that all individuals with control

13   would be liable and you've named some John Does, that would be

14   a little bit more reasonable to go about it as opposed to all

15   documents relating to ownership.  All right?  So I will deny

16   that one without prejudice to your seeking the same

17   information --

18          MR. FREEMAN:  Thank you.

19          THE COURT:  -- with an interrogatory.

20          All right.  So let me just recap to make sure we're all

21   on the same page.

22          I made the ruling on 6 through 8 and 10 to 16 without

23   prejudice to further inquiry by the Plaintiffs.

24          The Defendants are to supplement their responses, too.

25          4 was withdrawn.
```

1          5 is denied without prejudice.

2          9 is the one that they need to supplement.  And they

3    also need to supplement 17.

4          And 18 is denied without prejudice to request the

5    information by way of interrogatory.

6          19 is to be supplemented as additional tax returns are

7    prepared.

8          And the supplementation for 9 will include the

9    production of Defendants' year-end financials for the years

10   2009 through 2015.

11         Did I miss anything?

12         MR. FREEMAN:  No, your Honor.

13         MR. COBB:  No, your Honor.

14         THE COURT:  All right.  You'll receive a written order.

15         Thank you very much.  Happy holidays.

16         MR. FREEMAN:  Happy holidays, your Honor.  Thank you.

17         MR. COBB:  Thank you.

18         (Proceedings concluded.)

19

20

21

22

23

24

25

1                          C E R T I F I C A T E

2

3          I hereby certify that the foregoing is an

4    accurate transcription of the proceedings in the

5    above-entitled matter.

6

7
     _____          /s/Lisa Edwards
8        DATE              LISA EDWARDS, RDR, CRR
                           Official Court Reporter
9                          United States District Court
                           400 North Miami Avenue, Twelfth Floor
10                         Miami, Florida 33128
                           (305) 523-5499
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25