KeyCite Yellow Flag - Negative Treatment
**Declined to Follow by** DePrince v. Starboard Cruise Services, Inc., Fla.App. 3 Dist., April 8, 2015

126 So.3d 1224
District Court of Appeal of Florida,
Fourth District.

Joni M. GARVIN, Appellant,
v.
Connie TIDWELL, Appellee.

No. 4D11–2712.
|
Oct. 24, 2012.

**Synopsis**
**Background:** Horse rider brought negligence and negligent misrepresentation action against horse owner after she fell off horse. Following mediated settlement agreement, rider filed motion to rescind the agreement because owner's discovery responses failed to disclose potentially adverse information. The Circuit Court, Seventeenth Judicial Circuit, Broward County, Mily Rodriguez–Powell, J., denied the motion, and rider appealed.

**Holdings:** The District Court of Appeal, McManus, F. Shields, Associate Judge, held that:

[1] owner violated discovery obligations by failing to disclose advertisement involving horse and a calming supplement;

[2] rider was entitled to rescind agreement; and

[3] rider was not entitled to sanctions.

Reversed and remanded.

West Headnotes (10)

[1]     **Pretrial Procedure**
        🔑 Nature and Purpose
        One of the primary functions of discovery is to enable parties to enter settlement negotiations with an understanding of their chances of success at trial.

        Cases that cite this headnote

[2]     **Pretrial Procedure**
        🔑 Sufficiency of disclosure; supplementation of responses
        Lawyers, out of respect for the adversary system, should make good faith efforts to comply with one another's reasonable discovery requests.

        Cases that cite this headnote

[3]     **Pretrial Procedure**
        🔑 Failure to Disclose; Sanctions
        Evasive or incomplete discovery answers can amount to a failure to answer and may also warrant the imposition of sanctions.

        Cases that cite this headnote

[4]     **Pretrial Procedure**
        🔑 Failure to Appear or Testify; Sanctions
        Horse owner violated her discovery obligations, in horse rider's negligence action following fall from horse, by failing to disclose calming supplement advertisement and information known to her about horse's behavior which prompted the use of the supplement; information and advertisement, in which owner stated that horse could be "a little difficult at times," was relevant to rider's discovery requests and to some of the questions posed during the depositions and was likely to be an important exhibit at trial.

        Cases that cite this headnote

[5]     **Compromise and Settlement**
        🔑 Mistake or ignorance of law or facts
        The court considering a request, based on unilateral mistake, to rescind a settlement agreement reached through mediation will look at whether the unilateral mistake goes to the very substance of the agreement. West's F.S.A. RCP Rule 1.730(c).

1 Cases that cite this headnote

[6] **Appeal and Error**
 Allowance of remedy and matters of procedure in general

The appellate court reviews a trial court's order denying a motion to rescind an agreement for an abuse of discretion. West's F.S.A. RCP Rule 1.730(c).

1 Cases that cite this headnote

[7] **Compromise and Settlement**
 Mistake or ignorance of law or facts

Rider who was injured in fall from horse was entitled to rescind mediated settlement agreement based on horse owner's failure to disclose an advertisement for a calming supplement which indicated that horse could "be a little difficult at times," where rider's lack of knowledge about horse's use of a calming supplement did not result from her inexcusable neglect but rather from owner's discovery omissions, and there was no suggestion that horse owner already had detrimentally relied on the settlement agreement. West's F.S.A. RCP Rule 1.730(c).

Cases that cite this headnote

[8] **Appeal and Error**
 In general; asserting new or inconsistent grounds

Injured horse rider failed to claim that mediated settlement agreement should be rescinded because it was unconscionable in either her written motion to rescind or at hearing before the trial court, and thus claim was not preserved for appellate review.

Cases that cite this headnote

[9] **Pretrial Procedure**
 Failure to Disclose; Sanctions

Injured horse rider was not entitled to award of **sanctions** for horse owner's failure to comply with **discovery**, as rider did not file a motion to **compel discovery**, nor did the trial court issue an order compelling **discovery**.

2 Cases that cite this headnote

[10] **Pretrial Procedure**
 Failure to Disclose; Sanctions

The purpose of sanctions is to promote compliance with discovery, rather than serve as a penalty.

Cases that cite this headnote

**Attorneys and Law Firms**

**\*1225** Daniel A. Bushell of Bushell Appellate Law, P.A., Fort Lauderdale, Marc A. Wites and Jonathan S. Burns of Wites & Kapetan, P.A., Lighthouse Point, for appellant.

Richard A. Sherman, Sr. and James W. Sherman of Law Offices of Richard A. Sherman, P.A., Fort Lauderdale, and Terry L. Watson of Law Offices of Patricia E. Garagozlo, Plantation, for appellee.

**Opinion**

McMANUS, F. SHIELDS, Associate Judge.

Appellant appeals an order denying her motion to rescind a mediated settlement agreement because the appellee's discovery responses failed to disclose an advertisement and other information potentially adverse to the defense. Because we find that appellee violated her discovery obligations, **\*1226** and the trial court abused its discretion in denying the motion, we reverse.

Appellee owned a ten-year-old quarter horse named "Buster," whom she boarded at a stable. In June, 2009, after observing appellant ride other horses at the stable, appellee asked appellant, an experienced equestrian, if she would ride Buster. Appellant had limited her riding to docile horses in recent years, so she asked appellee several times whether Buster had ever exhibited any dangerous behavior. Appellee replied, "No." During appellant's third ride on Buster, he reared up on his hind legs, bolted off at a fast gallop, then stopped suddenly and abruptly changed directions. As a result, appellant fell off the horse, hit a fence, and fell to the ground. She suffered injuries to her back which required surgery.

**Garvin v. Tidwell, 126 So.3d 1224 (2012)**
37 Fla. L. Weekly D2506

Appellant filed a complaint against appellee alleging negligence and negligent misrepresentation. Specifically, appellant alleged that Buster had a long and well-known history of bucking and running away with riders and appellee negligently failed to disclose Buster's dangerous propensities.

During discovery, appellant sent one set of interrogatories and requests to produce. The discovery was reasonably calculated to produce the names of persons with any knowledge of facts at issue, the subject matter of their knowledge, and any "model, plat, map, drawing, motion picture, videotape, or photograph pertaining to any fact or issue involved." One interrogatory asked for the names of persons and any documents concerning the care, maintenance, and training of the horse including feeding, medical issues, and riding. The request to produce sought statements and also documents identified in answers to interrogatories.

Appellee answered the discovery by giving twenty names and producing four photographs. Appellee objected to producing statements and documents identified in the answer to interrogatories on grounds of work product privilege. No privilege log was filed. No statements or documents were identified.

Appellant never filed a motion to compel in response to any of appellee's answers. Appellant did depose appellee and her daughter, who was Buster's primary caregiver. They testified of some incidences of Buster being "spooked" or "bucking," mostly as a young horse, but said that was not a "characteristic." Buster's personality was described as "a gentleman" who was "lazy, if anything." Appellee moved for summary judgment on the grounds that the only testimony was that Buster was a good horse.

The parties went to mediation and settled in the fall of 2010. Soon thereafter, appellant's counsel received an unmarked envelope containing a magazine advertisement for a dietary supplement for horses dated "Spring 2010." This advertisement featured a page about the horse calming successes of the supplement "Ex Stress," featuring a color picture of Buster. The advertisement identified Buster's owner as appellee. The advertisement quoted appellee as saying that she decided to give Ex Stress to her horse, Buster, because he "can be a little difficult at times." Appellee is quoted as saying, "What a difference it made in him. Ever since he's been on it, we've had nothing but great rides."

Appellee had not produced this advertisement in response to appellant's discovery requests or mentioned use of any calming supplements. Neither appellee nor her daughter mentioned Buster's use of calming supplements or "difficult" behavior during their depositions.

When asked by appellant's counsel, appellee's counsel admitted that he and his client were in possession of the Ex Stress advertisement at the time of the depositions **\*1227** and when they responded to the interrogatories and requests for production.

Appellant moved to reopen discovery and rescind the mediation agreement and for sanctions. She supported the motion with a verified memorandum. Appellee filed a response in which she contended the Ex Stress advertisement was not responsive to the discovery requests and was not inconsistent with the depositions. The trial court denied appellant's motion to rescind the mediation agreement and for sanctions, and granted appellee's motion to enforce the settlement. [1]

### *Requirement of Good Faith Discovery*

**[1]** Florida courts have long recognized that one of the primary functions of discovery is to enable parties to enter settlement negotiations with an understanding of their chances of success at trial.

> A primary purpose in the adoption of the Florida Rules of Civil Procedure is to prevent the use of surprise, trickery, bluff and legal gymnastics. Revelation through discovery procedures of the strength and weaknesses of each side before trial encourages settlement of cases and avoids costly litigation. Each side can make an intelligent evaluation of the entire case and may better anticipate the ultimate results.

*Surf Drugs, Inc. v. Vermette,* 236 So.2d 108, 111 (Fla.1970).

**[2]** **[3]** "[L]awyers, out of respect for the adversary system, should make good faith efforts to comply with one another's reasonable discovery requests." *Summit Chase Condo. Ass'n, Inc. v. Protean Investors, Inc.,* 421 So.2d 562, 564 (Fla. 3d DCA 1982). "Evasive or incomplete" answers

can amount to a failure to answer and may also warrant the imposition of sanctions. *Herold v. Computer Components Int'l, Inc.,* 252 So.2d 576, 579 (Fla. 4th DCA 1971). In *Smith v. University Medical Center, Inc.,* 559 So.2d 393, 395 (Fla. 1st DCA 1990), the court found that the appellee had "disregarded his obligation to comply with discovery" by failing to "disclose the housekeeping map at issue after several discovery requests."

In *Schlapper v. Maurer,* 687 So.2d 982 (Fla. 5th DCA 1997), the Fifth District concluded that counsel for a co-defendant had violated his "obligation not to lie about or misrepresent facts critical to the case" when he untruthfully represented to plaintiff's counsel that "[the co-defendant] had nothing to do with the treatment of [the plaintiff]." *Schlapper,* 687 So.2d at 984. Based on this representation, "the attorney for [the plaintiff] did not oppose the summary judgment which dismissed [the co-defendant] from the case." *Id.*

In *Leo's Gulf Liquors v. Lakhani,* 802 So.2d 337 (Fla. 3d DCA 2001), the Third District discussed the importance of honesty in discovery. Although this case is procedurally distinguishable from the case at bar, the court's discussion of discovery obligations is still relevant. The court explained that,

> [w]itnesses who give sworn testimony by way of interrogatories, at depositions, pretrial hearings and trial, swear or affirm to tell the truth, the whole truth, and nothing but the truth. We expect and will settle for nothing less. Lawyers who advise their clients and/or witnesses to mince words, hold back on necessary clarifications, or otherwise obstruct the truth-finding process, do so at their own, and the clients' peril.

**\*1228** *Leo's Gulf Liquors,* 802 So.2d at 343. The Third District also made clear that a witness's oath to tell the truth is equally demanding at depositions, and noted that "[t]he overwhelming number of law suits filed in Florida are resolved by way of settlement[,]" and that "[c]ases are regularly settled on the basis of the discovery taken during pretrial preparation." *Id.* "Accordingly, sworn answers to interrogatories and at depositions are extremely important to a lawsuit, since the likelihood of any given case actually going to trial is remote." *Id.*

**[4]** We find that appellee violated her discovery obligations by failing to disclose the Ex Stress advertisement and information known to her about Buster's behavior which prompted the use of Ex Stress. This information was relevant to appellant's discovery requests and to some of the questions posed during the depositions. It is likely to be an important exhibit at trial. The appellant has referred to the advertisement in her brief and oral argument as a "smoking gun."

### *Rescission of an Agreement for Unilateral Mistake*

**[5]** Florida Rule of Civil Procedure 1.730(c) affords trial courts "broad powers to grant relief as to settlement agreements reached through mediation." *Stamato v. Stamato,* 818 So.2d 662, 664 (Fla. 4th DCA 2002). In *Stamato,* we explained that a trial court may rescind an agreement based on unilateral mistake if "(1) the mistake did not result from an inexcusable lack of due care, and (2) defendant's position did not so change in reliance that it would be unconscionable to set aside the agreement." *Id.* Additionally, we will look at whether the unilateral mistake goes to the "very substance of the agreement." *Rock Springs Land Co. v. West,* 281 So.2d 555, 556 (Fla. 4th DCA 1973); *Langbein v. Comerford,* 215 So.2d 630, 631 (Fla. 4th DCA 1968).

**[6]** **[7]** We review a trial court's order denying a motion to rescind an agreement for an abuse of discretion. *See Billian v. Mobil Corp.,* 710 So.2d 984, 990 (Fla. 4th DCA 1998). Here, under the two-part test set forth in *Stamato,* the trial court abused its discretion by not allowing appellant to rescind the mediated settlement agreement. Appellant's lack of knowledge about Buster's use of a calming supplement did not result from her inexcusable neglect. Despite various interrogatories and requests for production that would have required appellee to disclose the Ex Stress advertisement, she failed to do so. Appellant did not learn of Buster's use of calming supplements due to appellee's omissions.

The cases primarily relied upon by appellee do not support her position on this issue.

In *Stamato,* appellant sought rescission of a settlement agreement on the basis of unilateral mistake, arguing that she did not know that, before she settled, the trial court had already ruled on her motion to seek punitive damages. *Stamato,* 818 So.2d at 663–64. We held that the appellant was not entitled to rescission, because she had committed inexcusable neglect by entering into a settlement agreement

"without bothering to find out if the court had ruled" on her motion. *Id.* at 665.

In *BMW of North America, Inc. v. Krathen,* 471 So.2d 585 (Fla. 4th DCA 1985), the appellants sought to rescind a settlement agreement based on unilateral mistake. *Krathen,* 471 So.2d at 588. We upheld the trial court's finding that appellants were not entitled to rescind the agreement due to their inexcusable neglect. *Id.* In support of its holding, we noted that "[t]he offer of judgment did not involve a complex transaction" and that "[t]he terms were few and easily understood." *Id.* As such, we did not consider **\*1229** appellants' omission of what they characterized as an "essential term" to be such an inadvertent error as to justify rescission of the agreement. *Id.* In other words, with such a basic agreement, the appellant's legal team really had no excuse for leaving out something they considered to be so important.

In *Rachid v. Perez,* 26 So.3d 70 (Fla. 3d DCA 2010), appellant sought rescission of a settlement agreement based on unilateral mistake. *Rachid,* 26 So.3d at 71. The Third District found that the appellant failed to preserve her argument for appellate review, but even if she had, it would have failed on the merits. *Id.* at 72. Appellant failed to present any evidence that "any party misled or induced her to enter into the settlement agreement." *Id.* Instead, appellant claimed that her attorney induced her to enter into the agreement, and this caused her claim to fail as a matter of law. *Id.*

In *Sponga v. Warro,* 698 So.2d 621 (Fla. 5th DCA 1997), the appellant sought reversal of the trial court's order setting aside a "final order of dismissal based on a settlement agreement executed by the parties after mediation." *Sponga,* 698 So.2d at 622. In the trial court, appellee moved to set aside the settlement agreement she had entered into with a physician because, in entering the agreement, she relied on a report that the physician had prepared "in error," which she interpreted as stating "that her shoulder injury was not connected with the [subject] accident." *Id.* at 623–24. The Fifth District reversed, finding that the facts of the case could "not scale the barrier of lack of due care." *Id.* at 625. In support of this conclusion, the court explained that, based on the facts appellant knew before the physician drafted his report which allegedly induced her to settle, she would have known that the report was erroneous. Despite this, appellant never made an effort to specifically ask the physician whether he "would relate her injury to the accident." *Id.*

These four cases do not support an affirmance because they are factually inapposite to the case at bar. This case does not involve a plaintiff who failed to inquire about certain facts, as in *Sponga,* or a plaintiff who decided to enter into a settlement agreement that lacked an essential term, as in *Krathen.* Furthermore, in this case, appellant did not agree to settle the case before checking on the status of other motions pending in the court, as in *Stamato.* In contrast, this case involves a plaintiff who entered into a settlement agreement believing that, after conducting discovery, she had all of the material facts in front of her, when in fact she did not. There does not appear to have been any reasonable way for appellant to find out about the advertisement or Buster's "difficult" behavior other than through the methods she had already employed. Thus, appellant's mistake lacks inexcusable neglect.

As to the second prong of the test in *Stamato,* there is no evidence in the record to suggest that it would have been inequitable to rescind the settlement agreement due to appellee's reliance upon it. During the hearing, appellee never argued that that she had already detrimentally relied upon the agreement, and she did not raise this argument in either one of her written motions to enforce the settlement agreement.

Appellant has filed as supplemental authority *Jones v. Publix Super Markets, Inc.,* 114 So.3d 998 (Fla. 5th DCA 2012), in which the appellee failed to reveal the known address of the customer who witnessed appellant's fall in a puddle of water. The court stated:

> Although we do not find an order disposing of the motion in the record, we note that the Joneses also asked the trial **\*1230** judge to strike Publix's offers of settlement on the seemingly unassailable reasoning that, in the face of a wrongful failure to disclose the address of a key witness, such an offer could not meet the test of "good faith" and the factors set forth in section 768.79(7), Florida Statutes.

*Jones,* 114 So.3d 998 at 1002.

We find that the same principle applies when a party withholds material information in discovery. Since our system of justice depends on truthful discovery, misconduct in discovery must be discouraged by disallowing the settlement which is the fruit of such misconduct.

 **[8]**  Appellant's additional claim that the agreement should be rescinded because it was unconscionable is denied. This claim is not preserved because it was not presented in her written motion or during the hearing before the trial court.

 **[9]**  **[10]**  Appellant's appeal of the trial court's failure to order sanctions is denied because the appellant did not file a motion to compel discovery, and the trial court did not issue an order compelling discovery. The purpose of sanctions is to promote compliance with discovery, rather than serve as a penalty. *See Winn Dixie v. Teneyck,* 656 So.2d 1348, 1351 (Fla. 1st DCA 1995). Sanctions for a discovery violation are not an appropriate remedy in this case. The trial court has not abused its discretion by failing to issue sanctions without first receiving a motion to compel from appellant and issuing an order to comply with the discovery request. *See id.*

The orders denying appellant's motion to rescind the settlement agreement and granting appellee's motion to enforce the settlement agreement are reversed and the cause is remanded for further proceedings consistent with this opinion.

POLEN and CONNER, JJ., concur.

**All Citations**

126 So.3d 1224, 37 Fla. L. Weekly D2506

Footnotes

1   Because the motion to reopen discovery was not granted, the record is silent on when Buster was given Ex Stress, when he was "difficult," and whether this was before or after appellant's injuries. There was no claim made by appellee, however, that Ex Stress was given as a remedial measure taken after the injury to the appellant.

**End of Document**                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.