UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 1:15-cv-22134-UU

HYDENTRA HLP INT. LIMITED,
a foreign corporation d/b/a METART,

        Plaintiff,

vs.

CONSTANTIN LUCHIAN, an individual,
KONSTANTIN BOLOTIN, an individual,
SUN SOCIAL MEDIA, INC., a corporation,
individually and d/b/a PLAYVID.COM,
FEEDVID.COM, PLAYVIDS.COM, and
PEEKVIDS. COM; PLAYVID.COM;
FEEDVID.COM; PLAYVIDS. COM;
PEEKVIDS.COM and;
*and John Does 1-20,*

        Defendants.

_____/

### NOTICE OF FILING *PLAINTIFF'S* PROPOSED JURY INSTRUCTIONS

    COMES NOW, the Plaintiff, HYDENTRA HLP INT. LIMITED, by and through

the undersigned counsel in compliance with the Court Trial Order (DE33) hereby gives

Notice to the Court of Filing the following:

### *PLAINTIFF'S* PROPOSED JURY INSTRUCTIONS

1

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 26TH day of February, 2016 we served the foregoing via e-mail / with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:  Brady J. Cobb, Esq.

Respectfully submitted,

By:     */s/Aaron Behar, Esq.*
        Aaron Behar, Esq.
        Florida Bar No.: 166286
        E-mail: AB@BeharBehar.com
        */s/Jaclyn Behar, Esq.*
        Jaclyn Behar, Esq.
        Florida Bar No.: 63833
        E-mail: JB@BeharBehar.com
        BeharBehar
        1840 North Commerce Parkway
        Suite 1
        Weston, Florida 33326
        Telephone:  (954) 688-7642
        Facsimile: (954) 332-9260
        E-mail: ab@beharbehar.com
        ***Counsel for Plaintiff***


        */s/Spencer D. Freeman, Esq.*
        Spencer D. Freeman, Esq.
        Freeman Law Firm, Inc.
        1107 ½ Tacoma Avenue South
        Tacoma, WA 98402
        Telephone:  (253) 383-4500
        Facsimile:  (253) 383-4501
        E-mail:
        sfreeman@freemanlawfirm.org
        ***Counsel forPlaintiff (Pro Hac Vice)***

Instruction No. ____


Service providers that purposefully fail to keep adequate records of the identity

and activities of their users and fail to terminate users despite their persistent and flagrant

infringement are not eligible for protection under the safe harbor.


*Capitol Records, LLC v. Escape Media Grp., Inc.*, No. 12-CV-06646 (AJN)(SN), 2014
U.S. Dist. LEXIS 183098, at *85 (S.D.N.Y. May 28, 2014); *Capitol Records, Inc. v.
MP3tunes, LLC*, 821 F. Supp. 2d 627, 637 (S.D.N.Y. 2011)

Instruction No. ____

Even if you find that Defendants infringe Plaintiff's copyrights, Defendants may be entitled to rely on the "safe harbor" provisions of the Digital Millennium Act ("DMCA"), Title II, entitled Online Copyright Infringement Liability Limitation Act ("OCILLA") as a defense. This provision enables qualifying service providers to limit their liability for claimed copyright infringement. These safe harbors provide protection from liability for:

(1)     transitory digital network communications;

(2)     system caching;

(3)     information residing on systems or networks at the direction of users; and

(4)     information location tools.

To avail itself of any of the four safe harbors provision, Defendants must prove by preponderance of the evidence that:

(1)     they are "service providers;"

(2)     they adopted, "reasonably implemented" and informed subscribers of a policy providing that they may, in appropriate circumstances, terminate the accounts of repeat infringers;

(3)     they accommodated and did not interfere with "standard technical measures" used by copyright owners to identify or protect copyrighted works;

(4)     they designated an agent to receive notifications of claimed infringement by making available through its service, including on its website in a location accessible to the public, and by providing to the Copyright Office, substantially the following information:

(a) the name, address, phone number, and electronic mail address of the agent; contact information which the Register of Copyrights may deem appropriate;

(5) upon notification of claimed infringement, they responded expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity.

"Service provider" means a provider of online services or network access, or the operator of facilities therefor, and includes an entity offering the transmission, routing, or providing of connections for digital online communications, between or among points specified by a user, of material of the user's choosing, without modification to the content of the material as sent or received.

"Reasonably implemented" policy means that the service provider has a working notification system, a procedure for dealing with DMCA-compliant notifications, and if it does not actively prevent copyright owners from collecting information needed to issue such notifications. An implementation is reasonable if, under appropriate circumstances, the service provider terminates users who repeatedly or blatantly infringe copyright.

"Standard technical measures" are defined as "technical measures that are used by copyright owners to identify or protect copyrighted works" and which:

(1)    have been developed pursuant to a broad consensus of copyright owners and service providers in an open, fair, voluntary, multi-industry standards process;

(2)    are available to any person on reasonable and nondiscriminatory terms; and not impose substantial costs on service providers or substantial burdens on their systems or networks.

The safe harbor defense is an affirmative defense.

17 U.S.C. §§ 512(a)—(d), (i).

Instruction No. ____


It is a violation of Florida state statutes for a person to publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use given by:

    (a)  Such person; or

    (b)  Any other person, firm or corporation authorized in writing by such person to license the commercial use of her or his name or likeness; or

    (c)  If such person is deceased, any person, firm or corporation authorized in writing to license the commercial use of her or his name or likeness, or if no person, firm or corporation is so authorized, then by any one from among a class composed of her or his surviving spouse and surviving children.

In the event the consent is not obtained, the person whose name, portrait, photograph, or other likeness is so used, or any person, firm, or corporation authorized by such person in writing to license the commercial use of her or his name or likeness, or, if the person whose likeness is used is deceased, any person, firm, or corporation having the right to give such consent may recover damages for any loss or injury sustained by reason thereof, including an amount which would have been a reasonable royalty, and punitive or exemplary damages.


Fla. Stat. § 540.08

Instruction No. ____

A presumption of receipt arises when a party has demonstrated:

1. The document was properly addressed.
2. The document was stamped.
3. The document was mailed.

Once this presumption is established the burden shifts to the other party to rebut the presumption.

Attempts to rebut the presumption may be made through testimony of lack of receipt. However, a party's failure to locate an item, which it was presumed to have been received, does not rebut the presumption of delivery.

*Barnett v. Okeechobee Hospital*, 283 F.3d 1232 , 1250 (11th Cir. 2002)

Instruction No. ____


In this case, Hydentra HLP International Ltd. claims ownership of a copyright in multiple motion pictures and/or audiovisual works, and claims Sun Social Media, Inc., Konstantin Bolotin, and Constantin Luchian has infringed the asserted copyright by [reproducing or copying, distributing copies of, preparing derivative works based on, performing and displaying] the work without authorization. Sun Social Media, Inc., Konstantin Bolotin, and Constantin Luchian denies infringing the asserted copyright, and asserts other defenses which I will describe later.


11th Cir. Pattern Instruction 1.6 alt – Copyright Preliminary Instruction

Instruction No. _____

In this case, the Defendants assert the affirmative defenses of DMCA safe harbor protections, copyright misuse, unclean hands, fair use, and failure to mitigate. Even if the Plaintiff proves its claims by a preponderance of the evidence, the Defendants can prevail in this case if they prove an affirmative defense by a preponderance of the evidence.

When more than one affirmative defense is involved, you should consider each one separately.

I caution you that the Defendants do not have to disprove the Plaintiff's claims, but if the Defendants raise an affirmative defense, the only way they can prevail on that specific defense is if they proves that defense by a preponderance of the evidence.

11th Cir. Pattern Jury Inst. 3.7.2 – Responsibility for Proof Affirmative Defenses

Instruction No. ___

If you're persuaded that Hydentra HLP Int. Ltd. owns a valid copyright, you can consider whether Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian improperly copied Hydentra HLP Int. Ltd.'s copyrighted material. It is the burden of Hydentra HLP Int. Ltd. to show that Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian infringed on his/ her/its valid copyright. This is called "infringement" of a copyright. Hydentra HLP Int. Ltd. must show that Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian infringed on its valid copyright.

In this case, Hydentra HLP Int. Ltd.  claims that Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian infringed its copyright in Hydentra HLP Int. Ltd.'s copyrighted work by copying part[s] of it and including the copied material in Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian's work. To succeed on this claim, Hydentra HLP Int. Ltd.  must prove that Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian copied the part[s] of Hydentra HLP Int. Ltd.'s copyrighted work that the law protects.

There are two ways in which Hydentra HLP Int. Ltd.  can prove a claim of copyright infringement.

First, Hydentra HLP Int. Ltd.  can show direct evidence that Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian actually copied the copyrighted material. For example, Hydentra HLP Int. Ltd.  could introduce believable eyewitness testimony or an

admission by Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian. Such direct evidence is rare.

Or second, Hydentra HLP Int. Ltd. can show indirect or circumstantial evidence that Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian copied its work. For example, indirect evidence of infringement may be proof that Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian tried to get a copy of Hydentra HLP Int. Ltd.'s work and then published a work that is substantially similar to Hydentra HLP Int. Ltd.'s work. In general, the two elements of infringement are (1) access and (2) substantial similarity.

11th Cir. Pattern Jury Inst. 9.17 – Copyright Infringement Introduction to Elements

substantial similarity.

Instruction No. ____

Remember, I described the two general elements of infringement as (1) access and (2) substantial similarity. I'll now discuss access in more detail.

Hydentra HLP Int. Ltd. can show that Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian had "access" to its work by showing that Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian had a reasonable opportunity to see the work. It isn't necessary to show that Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian actually saw Hydentra HLP Int. Ltd.'s work before creating Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian's own work if the evidence reasonably establishes that Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian could have seen/heard it and could have copied it.

But you can't base a finding that Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian had access to Hydentra HLP Int. Ltd.'s work on mere speculation, conjecture, or a guess. To support a finding of access, there must be more than just a slight possibility of access. There must be a reasonable possibility of access.

Sometimes Hydentra HLP Int. Ltd.  can't show that Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian had access to its] work before Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian created an alleged copy. In these cases, Hydentra HLP Int. Ltd.  can still establish a rebuttable presumption of copying by showing that the material Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian allegedly

copied is so strikingly similar to its copyrighted material that the similarity is unlikely to have occurred unless there was copying.

Put another way, if Hydentra HLP Int. Ltd.'s work and Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian's work are so strikingly similar that a reasonable person would assume Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian copied from Hydentra HLP Int. Ltd.'s work and that there is no possibility of independent creation, coinci-dence, or prior common source, then Hydentra HLP Int. Ltd. is entitled to a rebuttable presumption that copying occurred. "Strikingly similar" is a greater degree of similarity than "substantially similar." An accused work is substantially similar to an original piece if an ordinary observer would conclude that the accused work's creator unlawfully took protectable material of substance and value from the original piece. Even if there is little similarity between the pieces, the accused work can still be substantially similar if the copied parts from the original piece are the important quality. A "rebuttable presumption" means that you assume that copying occurred unless Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian proves that it didn't happen.

If Hydentra HLP Int. Ltd. shows (1) that Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian had access to the copyrighted material and that there is substantial similarity between the two works, or (2) that the works are strikingly similar, then the burden of proof shifts to Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian to prove that its work is an independent creation—not a copy. Proof that a work is an independent

creation overcomes a presumption of copying.

11th Cir Pattern Jury Inst. 9.18 – Copyright Infringement Access

Instruction No. _____

Having discussed access, I'll now discuss the issue of substantial similarity. Hydentra HLP Int. Ltd. must prove that Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian's accused work is substantially similar to its copyrightable expression in the copyrighted work. Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian's accused work is substantially similar in expression to Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian 's if an ordinary [observer/listener] would conclude that Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian unlawfully took Hydentra HLP Int. Ltd.'s protectable expression by taking material of substance and value.

Even if the degree of similarity between Hydentra HLP Int. Ltd.'s copyrighted work and Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian's accused work is small in quantity, you can still find that there's substantial similarity if the copied portions of Hydentra HLP Int. Ltd.'s copyrighted work are important in quality.

But if Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian's copying is minimal or trivial, you shouldn't find infringement.

11th Cir. Pattern Jury Inst. 9.19 – Copyright Infringement Substantial Similarity

Instruction No. ___

If you find that Hydentra HLP Int. Ltd. owns a valid trademark, that Sun Social Media, Inc. and Konstantin Bolotin has infringed it, and Sun Social Media, Inc. and Konstantin Bolotin do not have a defense you must consider whether, and to what extent, monetary relief should be awarded.

You may award actual damages that Hydentra HLP Int. Ltd. has sustained. Hydentra HLP Int. Ltd. may recover the economic injury to its business proximately resulting from Sun Social Media, Inc. and Konstantin Bolotin's wrongful acts. You are not required to calculate actual damages with absolute exactness—you may make reasonable approximations. But an award of actual damages to Hydentra HLP Int. Ltd. must be just and reasonable, based on facts, and proved by Hydentra HLP Int. Ltd. by a preponderance of the evidence.

In addition to Hydentra HLP Int. Ltd. 's actual damages, you may also make an award based on an accounting of Sun Social Media, Inc. and Konstantin Bolotin's profits if you find that:

- Sun Social Media, Inc. and Konstantin Bolotin 's conduct was willful and deliberate;

- Sun Social Media, Inc. and Konstantin Bolotin were unjustly enriched; or

- An award of Sun Social Media, Inc. and Konstantin Bolotin 's profits is necessary to deter Sun Social Media, Inc. and Konstantin Bolotin 's future conduct.

A defendant commits a "willful violation" of a trademark when that defendant knowingly and purposefully capitalizes on and appropriates the goodwill of a plaintiff.

"Unjust enrichment" occurs if Sun Social Media, Inc. and Konstantin Bolotin receives a benefit to which he/it is not entitled.

In determining Sun Social Media, Inc. and Konstantin Bolotin's profits, Hydentra HLP Int. Ltd. only is required to prove Sun Social Media, Inc. and Konstantin Bolotin's gross sales. Sun Social Media, Inc. and Konstantin Bolotin may then prove the amount of sales made for reasons other than the infringement. Sun Social Media, Inc. and Konstantin Bolotin also may prove its costs or other deductions which he/it claims should be subtracted from the amount of his/its sales to determine his/its profits on such sales. Any costs or deductions that Sun Social Media, Inc. and Konstantin Bolotin proves by a preponderance of the evidence are required to be subtracted from the sales attributable to the infringement and the difference is the amount that may be awarded to Hydentra HLP Int. Ltd.

If you find that Sun Social Media, Inc. and Konstantin Bolotin infringed Hydentra HLP Int. Ltd. 's trademark, but you do not find that Hydentra HLP Int. Ltd. sustained any actual damages or damages based on Sun Social Media, Inc. and Konstantin Bolotin's profits, you may return a verdict for Hydentra HLP Int. Ltd. and award what are called "nominal" damages. By "nominal" I mean a small amount of damages that you, in your discretion, determine.

11th Cir. Pattern Jury Instructions 10.1 – Trademark Damages

Instruction No.  ___

Hydentra HLP Int. Ltd. claims that Sun Social Media, Inc. and Konstantin Bolotin have has infringed its registered trademark. To prove its claim, Hydentra HLP Int. Ltd. must prove the following facts by a preponderance of the evidence:

1. Hydentra HLP Int. Ltd. owns a trademark that is entitled to protection; and

2. That Sun Social Media, Inc. and Konstantin Bolotin are using or used a mark that infringes upon Hydentra HLP Int. Ltd.'s trademark.

You are instructed and must accept as a fact that Hydentra HLP Int. Ltd. owns a federal registration of the trademark it seeks to protect in this action. It is Sun Social Media, Inc. and Konstantin Bolotin's burden to prove that Hydentra HLP Int. Ltd.'s trademark is invalid.

Because Hydentra HLP Int. Ltd. owns a federal registration of the trademark, Sun Social Media, Inc. and Konstantin Bolotin are deemed to have knowledge of the registration and of the rights claimed in the registration. This is known as "constructive notice," and Sun Social Media, Inc. and Konstantin Bolotin cannot claim that they adopted the trademark without knowledge of Hydentra HLP Int. Ltd.'s trademark. In this case, Hydentra HLP Int. Ltd.enjoys nationwide constructive notice of rights dating back to the filing date of the application.

If you have determined that Hydentra HLP Int. Ltd.owns a trademark that is entitled to protection, you must next consider whether Sun Social Media, Inc. and

Konstantin Bolotin infringed Hydentra HLP Int. Ltd.'s trademark. The test for infringement is whether Sun Social Media, Inc. and Konstantin Bolotin's use trademark is "likely to cause confusion" with Hydentra HLP Int. Ltd.'s trademark.

That is, you must determine if Sun Social Media, Inc. and Konstantin Bolotin without Hydentra HLP Int. Ltd.'s consent, used the same or a similar trademark in connection with the sale of, or the offer to sell, goods in a manner that is likely to cause confusion among consumers as to the source, affiliation, approval, or sponsorship of the goods. "Source," "origin," "affiliation," "approval," or "sponsorship" means that the public believes that Sun Social Media, Inc. and Konstantin Bolotin's goods come from, are affiliated with, are approved by, or sponsored by Hydentra HLP Int. Ltd.

It is not necessary that the trademark used by Sun Social Media, Inc. and Konstantin Bolotin be an exact copy of Hydentra HLP Int. Ltd.'s trademark. Instead, Hydentra HLP Int. Ltd. must demonstrate, by a preponderance of the evidence, that Sun Social Media, Inc. and Konstantin Bolotin's use of the trademark is, when viewed in its entirety, likely to cause confusion as to the source, origin, affiliation, approval, or sponsorship of the goods in question.

Infringement: Likelihood of Confusion (Seven-Factor Test)

There are seven factors you can use to determine whether a likelihood of confusion exists. No single factor or consideration controls, and Hydentra HLP Int. Ltd. is not required to prove all, or even most, of the factors are present in any particular case. You may also use factors other than these seven. You should weigh all of the relevant evidence in determining whether a likelihood of confusion exists.

1.  Type and Strength of Hydentra HLP Int. Ltd.'s Trademark

The first factor is the "type and strength" of the trademark. Trademarks come in different "types" or categories, namely, "generic," "descriptive," "suggestive," "arbitrary," and "fanciful" or "coined." The type of a claimed trademark is relevant to the trademark's strength.

Some trademarks are stronger than others. The "stronger" the trademark, the more protection should be given to it. I will now describe each type of trademark in the order of their general relative strength.

a.  Generic

A claimed trademark is generic if it is the word, name, symbol, device, or any combination thereof, by which the good commonly is known. An example of a generic trademark is "escalator" for moving stairs.

Whether a claimed trademark is generic does not depend on the term itself, but on use of the term. A word may be generic of some things but not of others. For example, "ivory" is generic for elephant tusks, but it is not generic for soap.

Whether a claimed trademark is a generic term is viewed from the perspective of a member of the public evaluating the trademark.

Generic trademarks are not protected. They cannot be registered with the U.S. Patent and Trademark Office.

b.  Descriptive:

A "descriptive" trademark only describes an ingredient, quality, characteristic, function, feature, purpose, or use of the good provided under it. An example of a descriptive trademark would be Vision Center for an eyeglasses store. Descriptive

trademarks are eligible for registration with the U.S. Patent and Trademark Office if the trademark has acquired "secondary meaning." A trademark has acquired secondary meaning if the primary significance of the trademark in the minds of the consuming public is not the associated good itself, but instead the source or producer of the good.

There are four factors you may use in determining whether secondary meaning exists:

- The length and nature of the trademark's use;

- The nature and extent of advertising and promotion of the trademark;

- The efforts of the trademark owner to promote a conscious connection between the trademark and its business; and

- The degree to which the public recognizes Hydentra HLP Int. Ltd.  good by the trademark.

c.    Suggestive:

A "suggestive" trademark suggests, rather than describes, qualities of the underlying good. If a consumer's imagination is necessary to make the connection between the trademark and the goods then the trademark suggests the features of the good. An example of a suggestive trademark is Iceberg for a refrigerator. Suggestive trademarks are eligible to be registered in the U.S. Patent and Trademark Office without proof of secondary meaning.

d.    Arbitrary and Fanciful or Coined:

An "arbitrary" trademark is a real word but has no logical relationship to the underlying goods. An example of an arbitrary trademark is Domino for sugar.

A "fanciful" or "coined" trademark is a trademark created solely to function as a trademark but which has no meaning beyond the trademark itself. An example of a fanciful or coined trademark is Exxon for gasoline.

Arbitrary and fanciful or coined trademarks are eligible to be registered in the U.S. Patent and Trademark Office without proof of secondary meaning.

e.      Additional Considerations Relating To Trademark Strength:

When evaluating the strength of Hydentra HLP Int. Ltd.'s trademark, you may also consider the extent of any use by third parties of similar trademarks, Hydentra HLP Int. Ltd.'s promotional expenditures, the volume of Hydentra HLP Int. Ltd.'s sales under its trademark, and whether Hydentra HLP Int. Ltd.'s registration has achieved incontestable status.

2.      Similarity of the Parties' Trademarks

In evaluating whether trademarks are similar, you may consider the "overall impression" that Hydentra HLP Int. Ltd.'s and Sun Social Media, Inc. and Konstantin Bolotin trademarks create, including the sound, appearance, and manner in which they are used. You may look at the trademarks as a whole rather than simply comparing their individual features.

3.      Similarity of the Parties' Goods

This factor considers not only whether the consuming public can readily distinguish between the parties' goods, but also whether the goods at issue are of a kind that the public attributes to a single source.

4.      Similarity of the Parties' Sales Channels, Distribution, and Customers

This factor considers where, how, and to whom the parties' goods are sold.

Similarities increase the possibility of consumer confusion, mistake, or deception.

5.     Similarity of the Parties' Advertising Media

This factor looks to each party's method of advertising. It is not a requirement that Hydentra HLP Int. Ltd. and Sun Social Media, Inc. and Konstantin Bolotin advertise in the same magazines, publications, or other advertising outlets. The issue is whether the parties use the same forums and media outlets to advertise, leading to possible confusion.

6.     Sun Social Media, Inc. and Konstantin Bolotin's Intent

You may also consider whether Sun Social Media, Inc. and Konstantin Bolotin intended to infringe on Hydentra HLP Int. Ltd.'s trademark. That is, did Sun Social Media, Inc. and Konstantin Bolotin adopt [his/her/its] trademark with the intention of deriving a benefit from Hydentra HLP Int. Ltd.'s reputation? If you determine that Sun Social Media, Inc. and Konstantin Bolotin intentionally ignored the potential for infringement, you may impute to Sun Social Media, Inc. and Konstantin Bolotin an intent to infringe.

7.     Actual Confusion

Because the presence of actual confusion usually is difficult to show, a finding of actual confusion is not required to find trademark infringement. Alternatively, the absence of actual confusion does not necessarily mean Sun Social Media, Inc. and Konstantin Bolotin is not liable for trademark infringement.

The evidence of actual confusion of trademarks should be reasonably significant. You should weigh the alleged actual confusion using the following factors:

- The amount and duration of the confusion;

- The degree of familiarity the confused party has with the goods;

- The type of person complaining of the alleged actual confusion (for example, whether that person is a customer or a noncustomer); and

- The alleged Sun Social Media, Inc. and Konstantin Bolotin number of people who are actually confused (for example, whether the confused person is an actual customer or someone else).

If you find that Sun Social Media, Inc. and Konstantin Bolotin has infringed Hydentra HLP Int. Ltd.'s trademark, you must next consider Sun Social Media, Inc. and Konstantin Bolotin's affirmative defenses.

Hydentra HLP Int. Ltd. claims that Sun Social Media, Inc. and Konstantin Bolotin are liable for the "contributory infringement" of Hydentra HLP Int. Ltd.'s trademark. "Contributory infringement" occurs when a defendant intentionally induces or causes another party to infringe a plaintiff's trademark. If this occurs, Sun Social Media, Inc. and Konstantin Bolotin can be held liable for other party's infringement.

11th Cir. Pattern Jury Instructions 10.1 – Trademark Infringement

Instruction No. ___

Hydentra HLP Int. Ltd. claims that Sun Social Media, Inc. and Konstantin Bolotin have committed counterfeiting by unlawfully using Hydentra HLP Int. Ltd.'s trademark in the sale, offer to sell, distribution, or advertising of goods without Hydentra HLP Int. Ltd.'s authorization. To prove a claim for counterfeiting, Hydentra HLP Int. Ltd. must prove the following facts by a preponderance of the evidence:

1.      The trademark used by Sun Social Media, Inc. and Konstantin Bolotin is a copy that is identical or substantially indistinguishable from Hydentra HLP Int. Ltd.'s trademark that is registered on the Principal Register of the United States Patent and Trademark Office;

2.      Sun Social Media, Inc. and Konstantin Bolotin trademark was affixed without Hydentra HLP Int. Ltd.'s permission; and

3.      Sun Social Media, Inc. and Konstantin Bolotin used Hydentra HLP Int. Ltd.'s trademark in the sale, offering for sale, distribution, or advertising of goods that are covered by Hydentra HLP Int. Ltd.'s trademark registration.

If you find that Hydentra HLP Int. Ltd. proved that Sun Social Media, Inc. and Konstantin Bolotin violated Hydentra HLP Int. Ltd.'s trademark by counterfeiting, you must consider whether, and to what extent, money damages should be awarded.

Hydentra HLP Int. Ltd. seeks what is known as an award of "statutory damage." Statutory damages are damages established by Congress in the Lanham Act. The purpose of statutory damages is to: compensate the trademark owner, penalize

the counterfeiter, and deter future trademark counterfeiting. You may award statutory damages between $1,000 and $200,000 for each trademark that Hydentra HLP Int. Ltd. proves Sun Social Media, Inc. and Konstantin Bolotin used, for each type of goods sold, offered for sale, or distributed.

If you find that Hydentra HLP Int. Ltd. proved that Sun Social Media, Inc. and Konstantin Bolotin knew that the trademark he/ it used was a counterfeit, you may award additional statutory damages. It is not necessary that Sun Social Media, Inc. and Konstantin Bolotin knew that the mark was registered by Hydentra HLP Int. Ltd., only that Sun Social Media, Inc. and Konstantin Bolotin knew that the trademark was the same or substantially indistinguishable from Hydentra HLP Int. Ltd.'s trademark.

If Hydentra HLP Int. Ltd. proves that Sun Social Media, Inc. and Konstantin Bolotin use of the counterfeit trademark was willful, then you may, but are not required to, increase the statutory damage award to a maximum of $2,000,000 per type of goods sold, offered for sale, or distributed.

11th Cir. Pattern Jury Instructions 10.6 – Trademark Counterfeiting

| Claimed Work | Registered (Y / N) | Date (M/D/Y) | Public Display (Y / N) | Direct Infrgmt (Y / N) | Innocent (Y / N) | Willful (Y / N) | Amount ( $ ) |
|---|---|---|---|---|---|---|---|
| Anna AJ in Oriente on playvid.com | | | | | | | |
| Approaching on playvid.com | | | | | | | |
| At The Movies on plavid.com | | | | | | | |
| Be My Slave on playvid.com | | | | | | | |
| Book of Love on playvid.com | | | | | | | |
| Concierge on playvid.com | | | | | | | |
| Desire on playvid.com | | | | | | | |
| Draw Me on playvid.com | | | | | | | |
| Finish Me on playvid.com | | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| First on playvid.com | | | | | | | |
| Gypsy Fortune on playvid.com | | | | | | | |
| Hielo Caliente on playvid.com | | | | | | | |
| Hollywood Royale on playvid.com | | | | | | | |
| Il Lungo Addio on playvid.com | | | | | | | |
| Kamasutra on playvid.com | | | | | | | |
| Le Café on playvid.com | | | | | | | |
| Like Snow on playvid.com | | | | | | | |
| Love Beats on playvid.com | | | | | | | |
| Our Time on playvid.com | | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Right Now on playvid.com | | | | | | | |
| Secret Love on playvid.com | | | | | | | |
| Senora and Jorge on playvid.com | | | | | | | |
| Siesta on playvid.com | | | | | | | |
| Snow Fun XI on playvid.com | | | | | | | |
| Spanglish on playvid.com | | | | | | | |
| Tantra Imaginations on playvid.com | | | | | | | |
| The Date on playvid.com | | | | | | | |
| The Game VIII – Winner Takes All on playvid.com | | | | | | | |
| The Writer on playvid.com | | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| The Writer – Sex Therapy on playvid.com | | | | | | | |
| Tone of Love on playvid.com | | | | | | | |
| True Love on playvid.com | | | | | | | |
| Under the Elle Tree on playvid.com | | | | | | | |
| Upper West Side on playvid.com | | | | | | | |
| Vintage Collection – Seduction on playvid.com | | | | | | | |
| Yes on playvid.com | | | | | | | |
| MetArt Channel on playvid.com | | | | | | | |
| Search MetArt on playvid.com | | | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| SexArt Channel on playvid.com | | | | | | |
| Saturday Night on feedvid.com | | | | | | |
| Sweet Morning on feedvid.com | | | | | | |
| La Dolce Vita on peekvids.com | | | | | | |
| Saturday Night on peekvids.com | | | | | | |
| Snow Fun XI on peekvids.com | | | | | | |
| Tantra Imaginations on peekvids.com | | | | | | |
| Waltz With Me – Spring on peekvids.com | | | | | | |
| At the Movies on playvids.com | | | | | | |
| Be My Slave II on playvids.com | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Cellist on playvids.com | | | | | | | |
| Concierge on playvids.com | | | | | | | |
| Cybersex on playvids.com | | | | | | | |
| Desire on playvids.com | | | | | | | |
| Draw Me on playvids.com | | | | | | | |
| Finish Me on playvids.com | | | | | | | |
| Gypsy Fortune on playvids.com | | | | | | | |
| Hielo Caliente on playvids.com | | | | | | | |
| Hollywood Royale on playvids.com | | | | | | | |
| Il Lungo Addio on playvids.com | | | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Kamasutra on playvids.com | | | | | | |
| Lazy Sunday on playvids.com | | | | | | |
| Our Time on playvids.com | | | | | | |
| Right Now on playvids.com | | | | | | |
| Secret Love on playvids.com | | | | | | |
| Senora and Jorge on playvids.com | | | | | | |
| SexArt on playvids.com | | | | | | |
| Snow Fun XI on playvids.com | | | | | | |
| Spanglish on playvids.com | | | | | | |
| Tantra Imaginations on playvids.com | | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Tone of Love on playvids.com | | | | | | |
| Turning Point on playvids.com | | | | | | |
| Upper West Side on playvids.com | | | | | | |
| Vintage Collection – Seduction on playvids.com | | | | | | |
| White Room on playvids.com | | | | | | |

8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 1:15-cv-22134-UU

HYDENTRA HLP INT. LIMITED,
a foreign corporation d/b/a METART,

        Plaintiff,

vs.

CONSTANTIN LUCHIAN, an individual,
KONSTANTIN BOLOTIN, an individual,
SUN SOCIAL MEDIA, INC., a corporation,
individually and d/b/a PLAYVID.COM,
FEEDVID.COM, PLAYVIDS.COM, and
PEEKVIDS. COM; PLAYVID.COM;
FEEDVID.COM; PLAYVIDS. COM;
PEEKVIDS.COM and;
and John Does 1-20,

        Defendants.

_____/

**VERDICT FORM**
**SPECIAL INTERROGATORIES TO THE JURY**

        Attached to this Verdict Form is a Schedule listing claimed copyright infringements, with space for answers to specific interrogatories.  The interrogatories requesting answers on this Schedule will instruct you to do so.

**COPYRIGHT CLAIMS**

***Copyright Infringement***

1.      Do you find the claimed works was original to its author?

      Answer Yes or No

2.      Do you find the claimed works possess at least a minimal degree of creativity?

      Answer Yes or No

If your answer to either of these questions is "No," do not continue with your analysis of Hydentra HLP Int. Ltd.'s claim for copyright infringement, and go to question 53.

3.     Do you find that Hydentra HLP Int. Ltd. registered the claimed works with the United States Copyright Office?

Answer Yes or No on the attached Schedule for each claimed work.

If your answer to this question is "Yes," answer the next question.

4.     If so, when do you find that the registration occurred?  State answers on attached Schedule for each claimed work.

5.     Do you find that Hydentra HLP Int. Ltd. is the person who actually created the works?

Answer Yes or No

6.     Do you find that Hydentra HLP Int. Ltd.'s employee created the asserted works within the scope of his or her employment?

Answer Yes or No

7.     If you answered "Yes" to Question No. 6, did you find that Hydentra HLP Int. Ltd. signed a written document giving the copyright to the employee?

Answer Yes or No

8.      If the creator of the work was **not** Hydentra HLP Int. Ltd.'s employee, do you find that the asserted works was a work specially ordered or commissioned for use as a contribution to a collective work/as a part of a motion picture or other audiovisual work/as a translation/as a supplementary work/as a compilation/as an instructional text/as a test/as answer material for a test/as an atlas?

Answer Yes or No

9.      Did Hydentra HLP Int. Ltd. and the author of the asserted works expressly agree in a signed, written document that the work was to be considered a work made for hire?

Answer Yes or No

10.      Did Sun Social Media, Inc. publically display Hydentra HLP Int. Ltd.'s works?

Answer Yes or No on the attached Schedule for each claimed work.

### *Secondary Infringement*

11.      Was there a direct infringement by someone or some entity other than Sun Social Media, Inc., Konstantin Bolotin, and Constantin Luchian (i.e., a third party)?

Answer Yes or No on the attached Schedule for each claimed work.

If you answered "No," you don't need to answer the remaining questions regarding copyright infringement, go to question 53.

### *Contributory Copyright Infringement*

12.     Do you find that Sun Social Media, Inc. induced, caused, or materially contributed to the infringing conduct of another party?

> Answer Yes or No

13.     Do you find that Konstantin Bolotin induced, caused, or materially contributed to the infringing conduct of another party?

> Answer Yes or No

14.     Do you find that Constantin Luchian induced, caused, or materially contributed to the infringing conduct of another party?

> Answer Yes or No

> If you answered "No" to all of questions 12, 13, and 14 you don't need to answer the remaining questions regarding contributory infringement, go to question 21.

15.     Do you find that Sun Social Media, Inc. engaged in this contributory infringement with actual knowledge, or with reason to know, of the infringing activity relating to Hydentra HLP Int. Ltd's copyright?

> Answer Yes or No

16.     Do you find that Konstantin Bolotin engaged in this contributory infringement with actual knowledge, or with reason to know, of the infringing activity relating to Hydentra HLP Int. Ltd's copyright?

        Answer Yes or No


17.     Do you find that Constantin Luchian engaged in this contributory infringement with actual knowledge, or with reason to know, of the infringing activity relating to Hydentra HLP Int. Ltd's copyright?

        Answer Yes or No


18.     Do you find that Sun Social Media, Inc. contributorily infringed Hydentra HLP Int. Ltd's copyright(s)?

        Answer Yes or No


19.     Do you find that Konstantin Bolotin contributorily infringed Hydentra HLP Int. Ltd's copyright(s)?

        Answer Yes or No


20.     Do you find that Constantin Luchian contributorily infringed Hydentra HLP Int. Ltd's copyright(s)?

        Answer Yes or No

### *Vicarious Copyright Infringement*

21.     Did Sun Social Media, Inc. directly profit from the third party's direct infringement?

Answer Yes or No


22.     Did Konstantin Bolotin directly profit from the third party's direct infringement?

Answer Yes or No


23.     Did Constantin Luchian directly profit from the third party's direct infringement?

Answer Yes or No


24.     Did Sun Social Media, Inc. have the right to stop or limit the direct infringement?

Answer Yes or No


25.     Did Konstantin Bolotin have the right to stop or limit the direct infringement?

Answer Yes or No


26.     Did Constantin Luchian have the right to stop or limit the direct infringement?

Answer Yes or No


27.     Do you find that Sun Social Media, Inc. vicariously infringed Hydentra HLP Int. Ltd.'s copyright either by controlling or supervising the direct infringement, or by failing to exercise its right to stop or limit the infringement?

Answer Yes or No

28.     Do you find that Konstantin Bolotin vicariously infringed Hydentra HLP Int. Ltd.'s copyright either by controlling or supervising the direct infringement, or by failing to exercise his right to stop or limit the infringement?

Answer Yes or No

29.     Do you find that Constantin Luchian vicariously infringed Hydentra HLP Int. Ltd.'s copyright either by controlling or supervising the direct infringement, or by failing to exercise his right to stop or limit the infringement?

Answer Yes or No

### Copyright Infringement Defenses

30.     Do you find that Sun Social Media, Inc., Konstantin Bolotin, and Constantin Luchian's use of Hydentra HLP Int. Ltd.'s works was for the purpose of criticism, comment, news reporting, teaching, scholarship, or research?

Answer Yes or No

31.     Do you find that Sun Social Media, Inc., Konstantin Bolotin, and Constantin Luchian's use adds new meaning or expression to Hydentra HLP Int. Ltd.'s copyrighted work or otherwise uses Hydentra HLP Int. Ltd.'s work for a different purpose?

Answer Yes or No

32.     Do you find that Sun Social Media, Inc., Konstantin Bolotin, and Constantin Luchian's use of Hydentra HLP Int. Ltd.'s copyrighted work is noncommercial?

　　　　Answer Yes or No


33.     Do you find that Hydentra HLP Int. Ltd.'s copyrighted work is factual—***not creative***—in nature?

　　　　Answer Yes or No


34.     Do you find that the amount and importance of the portion taken by Sun Social Media, Inc., Konstantin Bolotin, and Constantin Luchian is reasonable in light of the purpose of his/its use?

　　　　Answer Yes or No


35.     Do you find thathat Sun Social Media, Inc., Konstantin Bolotin, and Constantin Luchian's use doesn't affect a protected (nontransformative) market, or potential market, for Hydentra HLP Int. Ltd.'s copyrighted work?

　　　　Answer Yes or No


36.     Balancing the factors and your responses to above questions, do you find that Sun Social Media, Inc., Konstantin Bolotin, and Constantin Luchian have proved fair use by a preponderance of the evidence?

　　　　Answer Yes or No

If you answer Yes to this question, go to question 53.

37.    Do you find that playvid.com was an Internet Service Provider at the time of the claimed infringements?

Answer Yes or No


38.    Do you find that Hydentra HLP Int. Ltd.'s claimed works were placed on Sun Social Media, Inc.'s servers by independent third parties?

Answer Yes or No

39.    Do you find that a reasonable repeat infringer policy was implemented on playvid.com?

Answer Yes or No


40.    Do you find that compliant takedown notices were received by Sun Social Media, Inc. for claimed infringements on playvid.com?

Answer Yes or No


If you answered Yes to Questions 37, 38, and 39, but No to Question 40, you are **not** to award monetary damages for any of the claimed works on playvid.com and should indicate so on attached Schedule.  If you answered No to any of  Questions 38, 39, or 40 *or* answered Yes to Question 41, you may award monetary damages for claimed works on playvid.com in response to questions below.


41.    Do you find that feedvid.com was an Internet Service Provider at the time of the

claimed infringements?

      Answer Yes or No

42.     Do you find that Hydentra HLP Int. Ltd.'s claimed works were placed on Sun Social Media, Inc.'s servers by independent third parties?

      Answer Yes or No

43.     Do you find that a reasonable repeat infringer policy was implemented on feedvid.com?

      Answer Yes or No

      If you answered Yes to each of Questions 41, 42, and 43, you are **not** to award monetary damages for any of the claimed works on feedvid.com and should indicate so on attached Schedule.  If you answered No to any of Questions 41, 42, or 43, you may award monetary damages for claimed works on feedvid.com in response to questions below..

44.     Do you find that peekvids.com was an Internet Service Provider at the time of the claimed infringements?

      Answer Yes or No

45.     Do you find that Hydentra HLP Int. Ltd.'s claimed works were placed on Sun Social Media, Inc.'s servers by independent third parties?

Answer Yes or No

46.     Do you find that a reasonable repeat infringer policy was implemented on peekvids.com?

Answer Yes or No

If you answered Yes to each of Questions 44, 45, and 46, you are **not** to award monetary damages for any of the claimed works on peekvids.com and should indicate so on attached Schedule.  If you answered No to any of Questions 44, 45, or 46, you may award monetary damages for claimed works on peekvids.com in response to questions below..

47.     Do you find that playvids.com was an Internet Service Provider at the time of the claimed infringements?

Answer Yes or No

48.     Do you find that Hydentra HLP Int. Ltd.'s claimed works were placed on Sun Social Media, Inc.'s servers by independent third parties?

Answer Yes or No

49.     Do you find that a reasonable repeat infringer policy was implemented on playvids.com?

Answer Yes or No

If you answered Yes to each of Questions 47, 48, and 49, you are **not** to award monetary damages for any of the claimed works on playvids.com and should indicate so on attached Schedule.  If you answered No to any of Questions 47, 48, or 49, you may award monetary damages for claimed works on playvids.com as explained below.

### *Copyright Infringement Damages*

50.     Do you find that the Sun Social Media, Inc., Konstantin Bolotin, and Constantin Luchian's infringement was innocent?

Answer Yes or No on the attached Schedule for each claimed work.

If your answer to this question is "No," then proceed to Question No. 50.  If your answer to this question is "Yes," then you may award statutory damages between $200 and $30,000 per work.

What is the amount of statutory damages you award for this work? State for each claimed infringed work on attached Schedule

51.     Do you find that Sun Social Media, Inc., Konstantin Bolotin, and Constantin Luchian's infringement was willful?

Answer Yes or No

If your answer to this question is "No," then you may award statutory damages between $750 and $30,000 per work. If your answer to this question is "Yes,"

then you may award statutory damages between $750 and $150,000 per work.

What is the amount of statutory damages you award for this work? State for each claimed infringed work on attached Schedule

## **TRADEMARK CLAIMS**

52.     Do you find that Hydentra HLP Int. Ltd. owns a federal registration of its trademark MetArt on the Principal Register.

     Answer Yes or No

53.     Do you find that Hydentra HLP Int. Ltd. owns a federal registration of its trademark SexArt on the Principal Register.

     Answer Yes or No

If your answer is "No" to 36 and 37 this ends your deliberations on the trademark claims, go to question 66. If your answer is "Yes" to either, go to the next question.

54.     Do you find Sun Social Media, Inc.'s use of its trademark caused a likelihood of confusion with Hydentra HLP Int. Ltd's trademark.

     Answer Yes or No

55.     Do you find a party, other than Sun Social Media, Inc., has infringed Hydentra HLP Int. Ltd.'s trademark and Sun Social Media, Inc. knew that the other party would be

engaging in trademark infringement if it undertook the challenged activity.

     Answer Yes or No

56.     Do you find Sun Social Media, Inc. intentionally induced the other party to engage in the trademark infringing activity.

     Answer Yes or No

57.     Do you find Sun Social Media, Inc. is liable for contributory trademark infringement.

     Answer Yes or No

58.     Hydentra HLP Int. Ltd. has suffered actual monetary damages.

     Answer Yes or No

     If your answer is "Yes," in what amount?

     $_____

59.     Do you find that Sun Social Media, Inc., Konstantin Bolotin, and Constantin Luchian's conduct was willful and deliberate, or Sun Social Media, Inc., Konstantin Bolotin, and Constantin Luchian were unjustly enriched, or an award of Sun Social Media, Inc., Konstantin Bolotin, and Constantin Luchian's profits is necessary to deter future conduct.

     Answer Yes or No

If your answer is "Yes," in what amount?

$_____

60.     Do you find that Hydentra HLP Int. Ltd. has **not** proved any actual monetary damages nor have Sun Social Media, Inc. and Konstantin Bolotin's profits been awarded, but Hydentra HLP Int. Ltd. is awarded nominal damages.

Answer Yes or No

If your answer is "Yes," in what amount?

$_____

61.     Do you find that Hydentra HLP Int. Ltd. gave permission for its trademark to be affixed to Sun Social Media, Inc., Konstantin Bolotin, and Constantin Luchian 's products.

Answer Yes or No

If your answer is "No," go to Question No. 62. If your answer to this question is "Yes," then go to Question 66.

62.     Do you find that Sun Social Media, Inc. and Konstantin Bolotin used a trademark which is identical or substantially indistinguishable from Hydentra HLP Int. Ltd.'s registered trademark on goods that are covered by the registration.

Answer Yes or No

If your answer to this question is "Yes," go to Question No. 63. If your answer to this question is "No," then go to Question 66.

63.     Do you find that Sun Social Media, Inc. and Konstantin Bolotin used the counterfeit trademark in the sale, offering for sale, distribution, or advertising of goods.

Answer Yes or No

If your answer to this question is "Yes," go to Question No. 64. If your answer to this question is "No," go to Question 66.

64.     Do you find that at the time of the counterfeiting activity, Sun Social Media, Inc. and Konstantin Bolotin knew that the trademark he/it used was a counterfeit.

Answer Yes or No

If your answer to this question is "No," then you may award statutory damages between $1,000 and $200,000 per counterfeit mark, per type of goods sold, offered for sale, or distributed. If your answer to this question is "Yes," then you may award statutory damages to a maximum of $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed.

65.     Do you find that Hydentra HLP Int. Ltd. is awarded statutory damages.

Answer Yes or No

If your answer to this question is "Yes," in what amount?

$ _____

### UNAUTHORIZED PUBLICATION OF
### NAME AND LIKENESS:

66.      Do you find that Sun Social Media, Inc. violated Florida state statutes prohibiting

display the likeness of any natural person with express authority?

Answer Yes or No

67.      Do you find that Sun Social Media, Inc. should be assessed punitive or

exemplary damages.

Answer Yes or No

If your answer to this question is "Yes," in what amount?

$ _____

_____
Foreperson's signature

Date: _____