**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**

|  |  |
|---|---|
| HYDENTRA HLP INT. LIMITED,<br>a foreign corporation d/b/a METART,<br><br>        Plaintiff,<br><br>v.<br><br>CONSTANTIN LUCHIAN, an individual,<br>KONSTANTIN BOLOTIN, an individual,<br>SUN SOCIAL MEDIA, INC., a corporation,<br>individually and d/b/a PLAYVID.COM,<br>FEEDVID.COM, PLAYVIDS.COM and<br>PEEKVIDS.COM; PLAYVID.COM;<br>FEEDVID.COM; PLAYVIDS.COM;<br>PEEKVIDS.COM; and<br>John Does 1-20,<br><br>        Defendants. | **Case No.**<br>**1:15-cv-22134-UU** |

**<u>DEFENDANTS' PROPOSED JURY INSTRUCTIONS</u>**

1

Instruction No. ____

In this case, Hydentra HLP International Ltd. claims ownership of a copyright in multiple motion pictures and/or audiovisual works, and claims Sun Social Media, Inc., Konstantin Bolotin, and Constantin Luchian have infringed the asserted copyright by displaying the works without authorization. Sun Social Media, Inc., Konstantin Bolotin, and Constantin Luchian deny infringing the asserted copyrights, and assert other defenses which I will describe later.

11th Cir. Pattern Instruction 1.6 alt – Copyright Preliminary Instruction

Instruction No. _____

In this case, the Defendants assert the affirmative defenses of the Digital Millennium Copyright Act safe harbor protections, copyright misuse, unclean hands, fair use, lack of intention, lack of volition, innocent infringement, lack of proximate damages, and failure to mitigate damages. Even if the Plaintiff proves its claims by a preponderance of the evidence, the Defendants can prevail in this case if they prove an affirmative defense by a preponderance of the evidence.

When more than one affirmative defense is involved, you should consider each one separately.

I caution you that the Defendants do not have to disprove the Plaintiff's claims, but if the Defendants raise an affirmative defense, the only way they can prevail on that specific defense is if they prove that defense by a preponderance of the evidence.

11th Cir. Pattern Jury Inst. 3.7.2 – Responsibility for Proof Affirmative Defenses

3

Instruction No. _____

The presumption of receipt of mail is not a conclusive presumption of law, but a mere inference of fact.  When it is opposed by evidence that the letters were never received, it must be weighed with all the other circumstances of the case in determining the question of whether the letters were actually received or not.

*Barnett v. Okeechobee Hospital*, 283 F.3d 1232 , 1250 (11ᵗʰ Cir. 2002)

Instruction No. ____


If you're persuaded that Hydentra HLP Int. Ltd. owns a valid copyright, you can consider whether Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian improperly direrctly copied Hydentra HLP Int. Ltd.'s copyrighted material. It is the burden of Hydentra HLP Int. Ltd.  to show that Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian infringed on its valid copyright. This is called "direct infringement" of a copyright. Hydentra HLP Int. Ltd. must show that Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian infringed on its valid copyright.  I will later instruct you on Hydentra's claims of "indirect" infringement.

In this case, Hydentra HLP Int. Ltd.  claims that Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian directly infringed its copyright in Hydentra HLP Int. Ltd.'s copyrighted work by including the copied material in Sun Social Media, Inc.'s websites. To succeed on this claim, Hydentra HLP Int. Ltd.  must prove that Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian themselves copied the part[s] of Hydentra HLP Int. Ltd.'s copyrighted work that the law protects.

There are two ways in which Hydentra HLP Int. Ltd.  can prove a claim of copyright infringement.

First, Hydentra HLP Int. Ltd.  can show direct evidence that Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian actually copied the copyrighted material. For example, Hydentra HLP Int. Ltd.  could introduce believable eyewitness testimony or an

5

admission by Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian. Such direct evidence is rare.

Or second, Hydentra HLP Int. Ltd. can show indirect or circumstantial evidence that Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian copied its work. For example, indirect evidence of infringement may be proof that Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian tried to get a copy of Hydentra HLP Int. Ltd.'s work and then published a work that is substantially similar to Hydentra HLP Int. Ltd.'s work. In general, the two elements of infringement are (1) access and (2) substantial similarity.

11th Cir. Pattern Jury Inst. 9.17 – Copyright Infringement Introduction to Element

Instruction No. ____

Remember, I described the two general elements of direct infringement as (1) access and (2) substantial similarity. I'll now discuss access in more detail.

Hydentra HLP Int. Ltd. can show that Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian had "access" to its work by showing that Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian had a reasonable opportunity to see the work. It isn't necessary to show that Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian actually saw Hydentra HLP Int. Ltd.'s work before creating Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian's own work if the evidence reasonably establishes that Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian could have seen/heard it and could have copied it.

But you can't base a finding that Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian had access to Hydentra HLP Int. Ltd.'s work on mere speculation, conjecture, or a guess. To support a finding of access, there must be more than just a slight possibility of access. There must be a reasonable possibility of access.

Sometimes Hydentra HLP Int. Ltd. can't show that Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian had access to its] work before Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian created an alleged copy. In these cases, Hydentra HLP Int. Ltd. can still establish a rebuttable presumption of copying by showing that the material Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian allegedly

7

directly copied is so strikingly similar to its copyrighted material that the similarity is unlikely to have occurred unless there was copying.

Put another way, if Hydentra HLP Int. Ltd.'s work and Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian's work are so strikingly similar that a reasonable person would assume Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian copied from Hydentra HLP Int. Ltd.'s work and that there is no possibility of independent creation, coincidence, or prior common source, then Hydentra HLP Int. Ltd. is entitled to a rebuttable presumption that copying occurred. "Strikingly similar" is a greater degree of similarity than "substantially similar." An accused work is substantially similar to an original piece if an ordinary observer would conclude that the accused work's creator unlawfully took protectable material of substance and value from the original piece. Even if there is little similarity between the pieces, the accused work can still be substantially similar if the copied parts from the original piece are the important quality. A "rebuttable presumption" means that you assume that copying occurred unless Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian proves that it didn't happen.

If Hydentra HLP Int. Ltd. shows (1) that Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian had access to the copyrighted material and that there is substantial similarity between the copyrighted work and the work directly created by Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian, or (2) that the works are strikingly similar, then the burden of proof shifts to Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin

8

Luchian to prove that its work is an independent creation—not a copy. Proof that a work is an

independent creation overcomes a presumption of copying.


11th Cir Pattern Jury Inst. 9.18 – Copyright Infringement Access

Instruction No. _____

Having discussed access, I'll now discuss the issue of substantial similarity. To succeed on its claim of direct copyright infringement, Hydentra HLP Int. Ltd. must prove that Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian's own accused works are substantially similar to Hydentra's copyrightable expression in the copyrighted work. Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian's accused work is substantially similar in expression to Hydentras 's if an ordinary observer would conclude that Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian unlawfully took Hydentra HLP Int. Ltd.'s protectable expression by themselves directly taking material of substance and value.

Even if the degree of similarity between Hydentra HLP Int. Ltd.'s copyrighted work and Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian's accused work is small in quantity, you can still find that there's substantial similarity if the copied portions of Hydentra HLP Int. Ltd.'s copyrighted work are important in quality.

But if Sun Social Media, Inc., Konstantin Bolotin, and/or Constantin Luchian's copying is minimal or trivial, you shouldn't find infringement.

11th Cir. Pattern Jury Inst. 9.19 – Copyright Infringement Substantial Similarity

Instruction No. _____

       To succeed on its claim for direct infringement of copyright against the Defendants, the Plaintiff must show by a preponderance of the evidence that the Defendants engaged in a volitional act that caused the copyright of the copyrighted material at issue.[1]

       Something more must be shown than mere ownership of a machine used by others to make infringing copies.[2]  If Plaintiff cannot show that Defendants engaged in volitional acts directly related to the infringement, then it cannot succeed on its claims for direct infringement against Defendants.[3]

_____

[1] Am. Broad. Companies, Inc. v. Aereo, Inc., 134 S. Ct. 2498, 2512-13 (2014); Fox Broadcasting Co. v. Dish Network, LLC, 747 F.3d 1060, 1066-68 (9th Cir. 2014); The Cartoon Network LP, LLLP v. CSC Holdings, Inc., 536 F.3d 121, 131 (2d Cir. 2008); Wolk, 840 F.Supp.2d at 741-42 ("Direct liability requires 'volitional conduct' that 'causes' the infringement.").

[2] CoStar Group, Inc. v. Loopnet, Inc., 373 F.3d 544, 549 (4th Cir. 2004).

[3] Disney Enters. v. Hotfile Corp., 798 F. Supp. 2d 1303, 1308 (S.D. Fla. 2011) ("Merely alleging that the defendants operated a service that "allows users to upload and download copyrighted material without volitional conduct" is insufficient even on a site where the Court finds the existence of "massive infringement.").

Instruction No. ____

Separate from its claim of direct copyright infringement, in this case, Hydentra HLP Int. Ltd. claims that each of Sun Social Media, Inc., Konstantin Bolotin, and Constantin Luchian is a contributory infringer. A "contributory infringer" is one who, with knowledge of another's infringing conduct, induces, causes, or materially contributes to the infringing conduct. "Knowledge" means the alleged contributory infringer actually knew, or had reason to know, of the infringement. If you find that there has been a direct infringement of Hydentra HLP Int. Ltd.'s copyrighted materials by one defendant, you can also consider whether there has been "contributory infringement" by another defendant (or a third party).

11th Cir. Pattern Jury Inst. 9.19 – Copyright Infringement Contributory Infringement

Instruction No. ____

Contributory infringement cannot be found where the product in question is capable of substantial noninfringing uses.  When a product is widely used for legitimate, unobjectional purposes and is more than merely capable of substantial noninfringing use, the provider of that product cannot be liable for contributory infringement.

Sony Corp. of Am. V. Universal City Studios, Inc., 464 U.S. 417, 442 (1984).

Instruction No. ____

A defendant does not "exercise control" over infringement unless it has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so.  For website operators, the party needs something more than the ability to remove or block access to materials posted on the website.  Alternatively, the website operator must exert substantial influence on the activities of users.


Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1173 (9th Cir. 2007); UMG Recordings, Inc. v. Shelter Capital Partners LLC, 718 F.3d 1006, 1030 (9th Cir. 2013); Viacom Int'l, Inc. v. YouTube, Inc., 676 F.3d 19, 38 (2d Cir. 2012).

<u>Instruction No. _____</u>

The Defendants have put forth the affirmative defense of Copyright Misuse.  The

doctrine of copyright misuse prohibits a copyright holder from using a copyright to secure

exclusive rights or limited monopoly not granted by the Copyright Office and which is contrary

to public policy to grant.[4]  The defense functions as an absolute bar on recovery for copyright

plaintiffs who have attempted to extend their limited rights to property not covered by the

copyright.[5]  Misuse often exists where the copyright holder has engaged in some form of anti-

competitive behavior.[6]

---

[4] <u>Home Design Servs., Inc. v. Park Square Enterprises, Inc.</u>, No. 6:02-CV-637-ORL28JGG, 2005 WL 1027370, at
*11 (M.D. Fla. May 2, 2005).
[5] <u>Home Design Servs., Inc. v. Park Square Enterprises, Inc.</u>, No. 6:02-CV-637-ORL28JGG, 2005 WL 1027370, at
*11 (M.D. Fla. May 2, 2005).
[6] <u>Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.</u>, 342 F.3d 191, 204 (3d Cir. 2003), <u>as amended</u> (Sept. 19,
2003).

15

Instruction No. _____

Here, the Defendants state that they are not liable for the claims of copyright infringement because they are protected by the safe-harbor set forth in the Digital Millennium Copyright Act.

Congress enacted the Digital Millennium Copyright Act (the "DMCA") to balance the competing interests between protecting intellectual property rights of content holders and protecting the rights of online service providers so as to promote innovation and the growth of services on the Internet.[7]   Therefore, Congress granted qualified online service providers a safe-harbor under the DMCA.  The DMCA Safe-Harbor is an affirmative defense, construed in favor of service providers, requiring relatively little effort by their operations to maintain immunity.[8]

Online service providers that satisfy the conditions of the DMCA Safe-Harbor are immune from all monetary relief relating to infringement of copyright by reason of storing files at the direction of their users.[9]

The conditions to qualify for the safe harbor are as follows:

(1)     The online service provider must designate an agent to receive notifications of claimed infringement (a "DMCA Agent") by making available on its website and by providing to the Copyright Office the contact information for the DMCA Agent.[10]

(2)     The online service provider can have no actual knowledge of infringing material or be aware of facts or circumstances from which infringing activity is apparent.[11]

---

[7] Capitol Records, Inc. v. MP3tunes, LLC, 821 F.Supp.2d 627, 646 (S.D.N.Y. 2011) (purpose of DMCA is "innovation and growth of internet services").
[8] Disney Enters., Inc. v. Hotfile Corp., 2013 WL 6336286, at *19 (S.D. Fla. Sept. 20, 2013)
[9] 17 U.S.C. § 512(c)(1).
[10] 17 U.S.C. § 512(c)(2).
[11] 17 U.S.C. § 512(c)(1)(A)(i) and (ii)

(3)     Upon obtaining knowledge or awareness of infringing material, the online service provider must act expeditiously to remove, or disable access to, the material.[12]

(4)     The online service provider may not receive financial benefit directly attributable to infringing activities where the provider has the right and ability to control that activity.[13]

(5)     The online service provider must adopt and reasonably implement, and inform users of, a policy that provides for the termination in appropriate circumstances of users who are repeat infringers.[14]

(6)     The online service provider must accommodate and not interfere with technical measures that are used by copyright owners to identify or protect copyrighted works.[15]

If an online service provider satisfies these conditions, it has qualified for the DMCA Safe-Harbor and cannot be liable for monetary damages.

---

[12] 17 U.S.C. § 512(c)(1)(A)(iii) and (c)(1)(C).
[13] 17 U.S.C. § 512(c)(1)(B).
[14] 17 U.S.C. § 512(i)(1)(A)
[15] 17 U.S.C. § 512(i)(1)(B) and (i)(2)

<u>Instruction No. ___</u>

In relation to the first condition, that is the designation of a DMCA Agent, only substantial compliance with the requirement is required.[16]

Technical errors (such as misspelling a name, supplying an outdated area code if the phone number is accompanied by an accurate address, or supplying an outdated name if accompanied by an e-mail address that remains valid for the successor of the prior designated agent) does not disqualify service providers.[17]

The focus is whether someone with an infringement complaint would be able to contact the company.[18]

---

[16] <u>Disney Enters., Inc. v. Hotfile Corp.</u>, 2013 WL 6336286, at *25 (S.D. Fla. Sept. 20, 2013); <u>Perfect 10, Inc. v. Amazon.com, Inc.</u>, 2009 WL 1334364, at *8 (C.D. Cal. May 12, 2009).

[17] "The Committee intends that the substantial compliance standard in subsections (c)(2) and (c)(3) be applied so that technical errors (such as misspelling a name, supplying an outdated area code if the phone number is accompanied by an accurate address, or supplying an outdated name if accompanied by an e-mail address that remains valid for the successor of the prior designated agent or agent of a copyright owner) do not disqualify service providers and copyright owners from the protections afforded under subsection (c). The Committee expects that the parties will comply with the functional requirements of the notification provisions—such as providing sufficient information so that a designated agent or the complaining party submitting a notification may be contacted efficiently—in order to ensure that the notification and take down procedures set forth in this subsection operate smoothly." S.Rep. No. 105-190 (1998).

[18] <u>Disney Enters., Inc. v. Hotfile Corp.</u>, 2013 WL 6336286, at *26 (S.D. Fla. Sept. 20, 2013).

<u>Instruction No. ___</u>

In relation to the second condition, an online service provider may not qualify for the DMCA Safe-Harbor if it has either actual knowledge of infringement or "red flag" knowledge of infringement – but in both cases that knowledge must be specific.[19]

Only actual knowledge or awareness of facts or circumstances that indicate specific and identifiable instances of infringement will disqualify a service provider from the DMCA Safe-Harbor.[20]

With respect to "red flag" knowledge, the question is whether the online service provider was subjectively aware of facts that would have made specific infringement objectively obvious to a reasonable person, but again it applies only to specific instances of infringement.[21]

Finally, the question of knowledge, whether actual or "red flag," applies only with respect to the works at issue in this trial.[22]

---

[19] <u>Viacom Intern. Inc. v. YouTube, Inc.</u>, 676 F.3d 19, 30-32 (2nd Cir. 2012) (and cases discussed therein).
[20] <u>Viacom Intern. Inc. v. YouTube, Inc.</u>, 676 F.3d 19, 32 (2nd Cir. 2012).
[21] <u>Viacom Intern. Inc. v. YouTube, Inc.</u>, 676 F.3d 19, 31 (2nd Cir. 2012); <u>UMG Recordings, Inc. v. Shelter Capital Partners LLC</u>, 667 F.3d 1022, 1038 (9th Cir. 2011).
[22] <u>Viacom Intern. Inc. v. YouTube, Inc.</u>, 676 F.3d 19, 34 (2nd Cir. 2012).

<u>Instruction No.   </u>

      The third requirement is only that the online service provider acts expeditiously to remove, or disable access to, material that it obtains knowledge or awareness that it is infringing.[23]

---

[23] 17 U.S.C. § 512(c)(1)(A)(iii).

<u>Instruction No.    </u>

The fourth requirement is that the online service provider may not receive financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity.[24]  To determine whether the online service provider has satisfied this requirement, you must first determine whether the provider has the right and ability to control an infringing activity, and if so then whether the provider received a financial benefit directly attributable to the infringing activity.

A service provider does not exercise control over infringing activity unless it has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so.[25]  The right and ability for an online service provider to control an activity requires something more than the ability to remove or block access to materials posted on the service provider's website.[26]  Alternatively, the right and ability to control such activity can be shown by the service provider exerting substantial influence on the activities of users.[27]  Unless the service provider has this type of right and ability to control, a service provider has satisfied this requirement of the DMCA Safe-harbor.

But even if the service provider does has the right and ability to control activities, the service provider satisfies this requirement of the Safe-Harbor if it does not receive financial benefit directly attributable to infringing activities.  Where a service provider does not attract or

---

[24] 17 U.S.C. § 512(c)(1)(B).
[25] <u>Perfect 10, Inc. v. Amazon.com, Inc.</u>, 508 F.3d 1146, 1173 (9th Cir. 2007).
[26] <u>UMG Recordings, Inc. v. Shelter Capital Partners LLC</u>, 718 F.3d 1006, 1030 (9th Cir. 2013); <u>Viacom Int'l, Inc. v. YouTube, Inc.</u>, 676 F.3d 19, 38 (2d Cir. 2012).
[27] <u>UMG Recordings, Inc. v. Shelter Capital Partners LLC</u>, 718 F.3d 1006, 1030 (9th Cir. 2013); <u>Viacom Int'l, Inc. v. YouTube, Inc.</u>, 676 F.3d 19, 38 (2d Cir. 2012).

retain direct income from the infringing activities, the service provider satisfies this

requirement.[28]

---

[28] <u>Wolk v. Kodak Imaging Network, Inc.</u>, 840 F.Supp.2d 724, 748 (S.D.N.Y. 2012) ("[W]here there is no evidence in the record that the service provider 'attracted or retained subscriptions because of the infringement or lost subscriptions because of its eventual obstruction of the infringement,' no reasonable jury could conclude that the service provider received a direct financial benefit from providing access to the infringing material."); <u>Perfect 10, Inc. v. CCBill LLC</u>, 488 F.3d 1102, 1118 (9th Cir. 2007); <u>Capital Records</u>, 821 F.Supp.2d at 645 ("[T]he financial benefit must be attributable to the infringing activity."); <u>Perfect 10</u>, 488 F.3d at 1117 ("[T]he relevant inquiry is whether the infringing activity constitutes a draw for subscribers, not just an added benefit…."); <u>Religious Tech. Ctr. V. Netcom On-Line Commun. Servs.</u>, 907 F.Supp. 1361, 1377 (N.D. Cal 1995) (finding no "direct financial benefit" where there was no evidence that the allegedly infringing materials "in any way enhances the value of Netcom's services to subscribers or attracts new subscribers").

<u>Instruction No. ___</u>

    The fifth requirement to qualify for the DMCA Safe-Harbor is for the online service provider to adopt a repeat infringer policy, inform its users of that policy, and to reasonably implement that policy.[29]

---

[29] 17 U.S.C. § 512(i)(1)(A).

<u>Instruction No. ___</u>

The sixth requirement for the DMCA Safe-Harbor is that an online service provider must accommodate standard technical measures by not interfering with mechanisms that copyright owners use to identify or protect copyrighted works.[30]  By way of example only, an online service provider's failure to comply with standard technical measures may include conduct that advises or encourages users to conceal a work's copyrighted status.[31]

---

[30] 17 U.S.C. § 512(i)(2).
[31] <u>Obodai v. Demand Media, Inc.</u>, 2012 WL 2189740 (S.D.N.Y. June 13, 2012)

Instruction No. _____

In making your determinations concerning the culpability of the parties, you should be guided by the fact that, in enacting the Digital Millennium Copyright Act, Congress made a considered policy determination to place the "burden of policing copyright infringement — identifying the potentially infringing material and adequately documenting infringement — squarely on the owners of the copyright."  This means that the copyright holder is required to identify the allegedly infringing material and bring it to the attention of the defendants.  The defendants were not obliged in any way to search themselves for – or to identify – allegedly infringing materials even if they had a general awareness that infringement may have been occurring.

17 U.S.C., §512(m); *UMG Recordings, Inc. v. Veoh Networks, Inc.,* 718 F.3d 1006, 1022 (9th Cir. 2013); *Viacom Int'l, Inc. v. YouTube, Inc.,* 2012 U.S. App. LEXIS 6909 (2d Cir. N.Y. 2012); *Perfect 10, Inc. v. CCBill LLC,* 488 F.3d 1102, 1113 (9th Cir. 2007); *In re Aimster Copyright Litig.,* 252 F. Supp. 2d 634, 657 (N.D. Ill. 2002) *aff'd,* 334 F.3d 643 (7th Cir. 2003) ("[T]he DMCA represents a legislative determination that copyright owners must themselves bear the burden of policing for infringing activity—service providers are under no such duty.").

<u>Instruction No. _____</u>

Defendants have put forth the affirmative defense that Plaintiff has failed to mitigate its damages.

Anyone who claims loss or damages as a result of an alleged wrongful act by another has a duty under the law to "mitigate" those damages – to take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damage.

So if you find that Defendants have proved by a preponderance of the evidence that Plaintiff did not seek out or take advantage of a reasonable opportunity to reduce or minimize the loss or damage under all the circumstances, you should reduce the amount of Plaintiff's damages (if any) by the amount that it could have reasonably received if it had taken advantage of such an opportunity.

Even in situations where a Plaintiff is requesting statutory damages, a failure to mitigate damages may remain relevant, particularly because one purpose of statutory damages is to approximate actual damages that are difficult to prove.[32]

---

[32] *Malibu Media, LLC v. Zumbo*, No. 2:13-cv-729-JES-DNF, 2014 WL 2742830, at *4 (M.D. Fla. 2014).

<u>Instruction No. _____</u>

The Defendants have put forth an affirmative defense of unclean hands.  The doctrine of unclean hands requires that the Defendants show that the Plaintiff engaged in wrongdoing, that the Plaintiff's claim in the case directly relate to Plaintiff's wrongdoing, and that the Defendants were injured by Plaintiff's conduct.


*Thornton v. J Jargon Co.,* 580 F. Supp. 2d 1261, 1283 (M.D. Fla. 2008)

Instruction No. _____

(1)    In considering the amount of statutory damages to award you may take into consideration the amount of any actual damages you believe Plaintiff has suffered with respect to the works in question as a result of the infringing conduct of Sun Social Media, Inc's users. Although Plaintiff need not prove actual damages in order to recover statutory damages, the amount of statutory damages awarded should bear some relation to the amount of any actual damages suffered as a result of the infringement.

(2)    If you find that any of the Defendants are liable, your award of statutory damages must not be so severe and oppressive as to be wholly disproportionate to the offense. It may not be grossly excessive in relation to the actual harm suffered by the Plaintiff.

(1) *Clever Covers, Inc. v. Sw. Florida Storm Def., LLC,* 554 F. Supp. 2d 1303, 1313 (M.D. Fla. 2008); *EMI Entm 't World, Inc. v. Karen Records, Inc.,* 603 F. Supp. 2d 759,769-70 (S.D.N.Y. 2009) (noting "the settled principle that 'statutory damages cannot be divorced entirely from economic reality. " ') (quoting *Yurman Studio, Inc. v. Castaneda,* No. 07 Civ. 1241,2008 U.S. Dist. LEXIS 96994, 2008 WL4949775, at *3 (S.D.N.Y. Nov. 19, 2008)); *Peer Int 'l Corp. v. Luna Records, Inc.,* 887 F. Supp. 560, 568 (S.D.N.Y. 1995) ("Statutory damages should bear some relationship to the actual damages suffered."); *RSO Records, Inc. v. Peri,* 596 F. Supp. 849, 862 (S.D.N.Y. 1984) ("Undoubtedly assessed statutory damages should bear some relation to actual damages suffered."). *See also* 4 *Nimmer on Copyright§* 14.04(E)(l)(a) (20 1 0) (statutory damages "should be woven out of the same bolt of cloth as actual damages"). *See also Capitol Record Inc. v. Thomas-Rassett,* Civ. No. 06-1497, 2010 WL 291763, at *4 (D. Minn. Jan. 22, 2010) ("because statutory damages have, in part, a compensatory purpose, 'assessed statutory damages should bear some relation to the actual damages suffered") (quoting *Bly v. Banbury Books, Inc.,* 638 F. Supp. 983, 987 (E.D. Pa. 1986) ("[N]umerous courts have held that an assessed statutory damages should bear some relation to the actual damages suffered.").

(2) *St. Louis, I.M & S. Ry. Co. v. Williams,* 251 U.S. 63, 66 (1919); *see BMWof N Am., Inc. v. Gore,* 517 U.S 559, 585-86 (1996); *State Farm Mut. Auto Ins. Co. v. Campbell,* 538 U.S. 408 (2003); *Parker v. Time Warner,* 331 F.3d 13, 22 (2d Cir. 2003); *see also UMG Recordings, Inc. v. Lindor,* No. CV-05-1095, 2006 WL 3335048, at *3 (E.D.N.Y. Nov. 9, 2006); *At!. Recording Corp. v. Brennan,* 534 F. Supp. 2d 278, 282 (D. Conn. 2008) (recognizing viability of the defense that "the amount of statutory damages available under the Copyright Act, measured against the actual money damages suffered, is unconstitutionally excessive"); *Sony BMG Music Entm 't v. Tenenbaum,* 721 F. Supp. 2d 85, 121 (D. Mass. 2010) (reducing jury's statutory damages award by 90% because it was unconstitutionally excessive); Pamela Samuelson & Tara

Wheatland, *Statutory Damages in Copyright Law: A Remedy in Need of Reform,* 51 Wm. & Mary L. Rev. 439 (2009).

Instruction No. _____

In considering plaintiffs' lost profits as a factor in assessing statutory damages, you may consider only those losses that were proximately caused by the secondary infringement of the defendants; that is, you may consider plaintiffs' losses only if you determine that there is a necessary, immediate and direct causal connection between defendants' infringement of plaintiffs' copyrighted works and the losses that plaintiffs allege they have suffered. In making that determination, you may consider that a diminution in plaintiffs' profits over time may only be partially attributable to defendants if others caused some of plaintiffs' actual losses.

*See Clever Covers, Inc. v. Sw. Florida Storm Def., LLC*, 554 F. Supp. 2d 1303, 1310 (M.D. Fla. 2008)(including "revenues lost by the copyright holder as a result of the infringement" as a factor to be considered); *Big Seven Music Corp,* 554 F.2d 504, 509 (2d Cir. 1977); *see also Sunset Lamp v. Alsy Corp. ,* 749 F. Supp. 520, 522 (S.D.N.Y. 1990) (damages must bear a "necessary, immediate and direct causal connection' to the defendant's infringement") (quoting *Big Seven Music Group,* 554 F.2d at 509); *Getaped.com v. Cangemi,* 188 F. Supp. 2d 398, 403 (S.D.N.Y. 2002); 36 N.Y. Jur. 2d Damages§ 12 ("It is fundamental that, in order to maintain an action for damages for injuries claimed to have been caused by a negligent or other tortious or wrongful act or omission, it must be made to appear that such act or omission was the proximate cause of the injury complained of.")

Instruction No. _____

Even where there is uncontroverted evidence that a defendant knew or should have known that material on its site was infringing, a damage award on the lower end of the scale is warranted in the interests of justice where the defendant immediately removed the material identified as infringing.

*IO Group, Inc. v. Jordon*, 708 F. Supp. 2d 989, 1004 (N.D. Cal. 2010).

Instruction No. ____


It is a violation of Florida state statutes for a person to publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use given by:

(a)  Such person; or

(b)  Any other person, firm or corporation authorized in writing by such person to license the commercial use of her or his name or likeness; or

(c)  If such person is deceased, any person, firm or corporation authorized in writing to license the commercial use of her or his name or likeness, or if no person, firm or corporation is so authorized, then by any one from among a class composed of her or his surviving spouse and surviving children.

In the event the consent is not obtained, the person whose name, portrait, photograph, or other likeness is so used, or any person, firm, or corporation authorized by such person in writing to license the commercial use of her or his name or likeness, or, if the person whose likeness is used is deceased, any person, firm, or corporation having the right to give such consent may recover damages for any loss or injury sustained by reason thereof, including an amount which would have been a reasonable royalty, and punitive or exemplary damages.

However, there is no cause of action when the use of such name, portrait, photograph, or other likeness in connection with the resale or other distribution, where such person has consented to the use of her or his name, portrait, photograph, or likeness on or in connection with the initial sale or distribution thereof.

Moreover, the purpose of the Florida statute is to prevent the use of a person's name or likeness to directly promote a product or service because of the way that the use associates the person's name or personality with something else.  It was designed to prevent the unauthorized use of a name to directly promote the product or service of the publisher.  Thus, the publication

is harmful not simply because it is included in a publication that is sold for a profit, but rather because of the way it associates the individual's name or his personality with something else.

Fla. Stat. § 540.08; <u>Tyne v. Time Warner Ent. Co., L.P.</u>, 901 So.2d 802, 808 (Fla. 2005); <u>Loft v. Fuller</u>, 408 So. 2d 619, 622-23 (Fla. Dist. Ct. App. 1981).