UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 1:15-cv-22134-UU

HYDENTRA HLP INT. LIMITED,
a foreign corporation d/b/a METART,

        Plaintiff,

vs.

CONSTANTIN LUCHIAN, an individual,
KONSTANTIN BOLOTIN, an individual,
SUN SOCIAL MEDIA, INC., a corporation,
individually and d/b/a PLAYVID.COM,
FEEDVID.COM, PLAYVIDS.COM, and
PEEKVIDS. COM; PLAYVID.COM;
FEEDVID.COM; PLAYVIDS. COM;
PEEKVIDS.COM and;
and John Does 1-20,

        Defendants.

_____/

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS IN OPPOSITION TO
DEFENDANT'S, CONSTANTIN LUCHIAN, MOTION FOR SUMMARY JUDGMENT**

PLAINTIFF, HYDENTRA HLP INT. LIMITED d/b/a METART ("Hydentra" or
"Plaintiff"), through its counsel, submits the following Statement of Disputed Material Facts in
Opposition of Defendant's, Constantin Luchian ("Defendant" or "Luchian"), Motion for
Summary Judgment, and states the following.

    1.      Not disputed.

    2.      Not disputed pursuant to Defendant's deposition testimony.

    3.      Unknown, and therefore disputed.

    4.      Not disputed, pursuant to Defendant's deposition testimony.

5.      Not disputed, pursuant to Defendant's deposition testimony.

6.      Disputed. During Konstantin Bolotin's deposition as Corporate Representative of Sun Social Media, Inc. ("SSM"), he refused to answer questions concerning business loans to SSM, only generally stating that he knows and is friendly with the person who provided such loan. Plaintiff suspects there is direct or indirect common ownership (or similar relationship) between SSM and INI. D.E. #74, *Bolotin Deposition January 18, 2016, pgs. 87 – 89, 113.* Because Mr. Bolotin unlawfully refused to answer deposition questions (D.E. #107, Page 2), Plaintiff disputes this statement.

7.      Disputed. During Konstantin Bolotin's deposition as Corporate Representative of SSM, he refused to answer questions concerning business loans to SSM, only generally stating that he knows and is friendly with the person who provided such loan. Plaintiff suspects there is direct or indirect employer/employee relationship (or similar relationship) between SSM and INI/Luchian. D.E. #74, *Bolotin Deposition January 18, 2016, pgs. 87 – 89, 113.* Because Mr. Bolotin unlawfully refused to answer deposition questions (D.E. #107, Page 2), Plaintiff disputes this statement.

8.      Disputed. During Konstantin Bolotin's deposition as Corporate Representative of SSM, he refused to answer questions concerning business loans to SSM, only generally stating that he knows and is friendly with the person who provided such loan. Plaintiff suspects there is direct or indirect common ownership between SSM and INI. D.E. #74, *Bolotin Deposition January 18, 2016, pgs. 87 – 89, 113.* Because Mr. Bolotin unlawfully refused to answer deposition questions (D.E. #107, Page 2), Plaintiff disputes this statement.

9.      Disputed. During Konstantin Bolotin's deposition as Corporate Representative of SSM, he refused to answer questions concerning business loans to SSM, only generally stating

that he knows and is friendly with the person who provided such loan. Plaintiff suspects there is direct or indirect business relationship (including control) between Luchian and SSM. D.E. #74, *Bolotin Deposition January 18, 2016, pgs. 87 – 89, 113.* Because Mr. Bolotin unlawfully refused to respond to deposition questions (D.E. #107, Page 2), Plaintiff disputes this statement.

10.     Disputed. During Konstantin Bolotin's deposition as Corporate Representative of SSM, he refused to answer questions concerning business loans to SSM, only generally stating that he knows and is friendly with the person who provided such loan. Plaintiff suspects there is direct or indirect business relationship (including control) between SSM and INI. D.E. #74, *Bolotin Deposition January 18, 2016, pgs. 87 – 89, 113.* Because Mr. Bolotin unlawfully refused to respond to deposition questions (D.E. #107, Page 2), Plaintiff disputes this statement. Additionally, Bolotin and Luchian both began working at Webzilla in about 2009/2010 – Bolotin as the Director of Operations and Luchian as Financial Director. [D.E. #74, 1/18/16 Deposition, Pages 14-15 of 242, D.E. #75, Pages 11-12, 13, 17 of 106]. Presently, Mr. Luchian continues working for Webzilla, Inc., which hosts the content for all four of SSM's websites. [D.E. #75, Page 17 of 106]. Given the relationship between Luchian and Bolotin and the fact that Webzilla hosts the four websites at issue, a jury must determine the extent of control that INI or Luchian exercise over SSM.

11.     Disputed. See ¶10.

12.     Disputed. See ¶10.

13.     Disputed. Defendants' own document production reflects that in some instances, content was uploaded to one or more of the Defendants' websites from an IP address that started with 0.00. According to the Declaration of Jason Tucker, an IP address that commences in this fashion could only have been uploaded internally, meaning either from SSM or from its hosting

company, Webzilla. *See Declaration of Jason Tucker, Exhibit "A", ¶30.* Since approximately 2009/2010, Mr. Luchian has worked for Webzilla, who hosts the websites at issue. Thus, the issue of control or access over what is posted to the websites remains a factual issue to be determined by the jury.

14.     Disputed. See ¶13. Additionally, and as the host of the websites, Webzilla (and therefore Luchian) have a financial interest in the performance of the websites. *See Declaration of Jason Tucker, Exhibit "A", ¶¶18-19.*

15.     Disputed. Mr. Bolotin was unprepared during his Corporate Representative Deposition to testify as to his contractual relationship with INI. Though he was asked to describe the contractual terms of the relationship between SSM and INI, he was unable to do so. D.E. #74, *Bolotin Deposition January 18, 2016, pg. 207.*

16.     Disputed. See ¶13. Additionally, given Mr. Luchian's interest in Webzilla, corresponding control over the websites at issue and Webzilla's financial interest in the performance of the websites, it remains a jury question whether Luchian posted the infringing materials.

17.     Disputed. See ¶16.

18.     Disputed. Plaintiff delivered DMCA take-down notices to Mr. Luchian (D.E. 91-1, Pages 6, 13 generally and D.E. 90-2), and therefore he had actual knowledge of the infringements at issue.

19.     Disputed See ¶18.

20.     Eleven (11) uploads of Plaintiff's videos display an IP address "from which the video was uploaded" that begins with 0.0. An IP Address that begins with 0.0 means that it is from an internal, local network e.g. a phone extension to phone extension in your "office." A 0.0

IP Address cannot come from the outside, it has to be inside, on the server or in the network locally in order to generate or use an IP of this type. Therefore, the Defendants (or one acting on their behalf with access to the servers) uploaded these videos.   *See Declaration of Jason Tucker, Exhibit "A", ¶¶ 30-31.*

21.     Plaintiff delivered DMCA take-down notices to Mr. Luchian in January 2015. [D.E. #76, ¶11]. Mr. Luchian claims he never received the notices, despite Plaintiff's proof of mailing and delivery. [D.E. 76, ¶11, D.E. #72-2].

22.     Ultimately, SSM's corporate representative testified to a predominant issue in the case – he admitted that SSM failed to disable the videos listed in Exhibits A to Plaintiff's Complaint until after he was served with the Complaint.  [D.E. #74, 1/18/19, *Pg. 231.*]

23.     Sun Social Media, Inc. states that it did not receive the DMCA take-down notices from Mr. Luchian (or INI) [D.E. #73-1, ¶35].

24.     The purpose of Mr. Luchian's job as DMCA agent is to receive notices directed to infringing materials posted on the websites of his principals, here SSM. [D.E. #75, Pages 24-25 of 106].

25.     In addition, Mr. Luchian has a financial interest in SSM's exploitation of the copyrighted materials. Mr. Luchian is the Financial Director of Webzilla, the host of SSM's websites at issue. In his position with Webzilla, Mr. Luchian has a direct financial interest in SSM's posting of infringing materials. A host has a financial interest in the websites' generation of traffic because an increase in such traffic results in increased bandwidth, which in turn results in increased revenues. *See Exhibit A hereto, Declaration of Jason Tucker, ¶19.*

26.     During Defendants' depositions on January 18 and January 19, 2016, Mr. Luchian and Mr. Bolotin refused to answer the following inquiries:

      a.   Why Mr. Bolotin Entered the United States (which relates to Webzilla);

      b.   The Holders of Debt in Sun Social Media;

      c.   The shareholders of Incorporate Now, Inc.; and

      d.   Incorporate Now, Inc.'s Client List.

The Court determined that the deponents should have responded to these four areas of inquiry at their depositions. *See Exhibit B, hereto, Declaration of Jon Krogman*, and D.E. 107, Pg. 2.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of February, 2016 we served the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:   Brady J. Cobb, Esq., and Valentin Gurvits, Esq. (*admitted Pro Hac Vice*).

Respectfully submitted,

By:    */s/Aaron Behar, Esq.*
Aaron Behar, Esq.
Florida Bar No.: 166286
E-mail: AB@BeharBehar.com
*/s/Jaclyn Behar, Esq.*
Jaclyn Behar, Esq.
Florida Bar No.: 63833
E-mail: JB@BeharBehar.com
BeharBehar
1840 North Commerce Parkway
Suite 1
Weston, Florida 33326
Telephone:  (954) 688-7642
Facsimile: (954) 332-9260
E-mail: ab@beharbehar.com
**Counsel for Plaintiff**

*/s/Spencer D. Freeman, Esq.*
Spencer D. Freeman, Esq.
Freeman Law Firm, Inc.
1107 ½ Tacoma Avenue South
Tacoma, WA 98402
Telephone:  (253) 383-4500
Facsimile:  (253) 383-4501
E-mail: sfreeman@freemanlawfirm.org
**Counsel forPlaintiff (Pro Hac Vice)**

# EXHIBIT "A"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 1:15-cv-22134-UU

HYDENTRA HLP INT. LIMITED,
a foreign corporation d/b/a METART,

      Plaintiff,

vs.

CONSTANTIN LUCHIAN, an individual,
KONSTANTIN BOLOTIN, an individual,
SUN SOCIAL MEDIA, INC., a corporation,
individually and d/b/a PLAYVID.COM,
FEEDVID.COM, PLAYVIDS.COM, and
PEEKVIDS. COM; PLAYVID.COM;
FEEDVID.COM; PLAYVIDS. COM;
PEEKVIDS.COM and;
and John Does 1-20,

      Defendants.

_____/

**DECLARATION OF JASON TUCKER IN OPPOSITION OF DEFENDANT
CONSTANTIN LUCHIAN'S MOTION FOR SUMMARY JUDGMENT**

I, Jason Tucker, declare:

1.    I am over the age of 18, a resident of Phoenix, Arizona, and citizen of the United States of America. I make this declaration based upon personal knowledge and, if called to testify could and would testify competently to the facts set forth herein.

2.    I am a director of Battleship Stance LLC, a leading intellectual property management and anti-piracy investigation company. Our clients include award winning adult entertainment studios.

3.      I have been in the business of legal adult entertainment production (both on and off the Internet), marketing, and management at an executive level for over ten (10) years, serving for over six (6) years as President of a company that owns and licenses one of the world's largest libraries of erotic images.

4.      I have served as a consultant to fortune 100 companies including Microsoft Corporation for the rollout of several versions of Windows Media and in the development and roll out of their Digital Rights Management technology and Akamai Technologies among others.

5.      As an experienced executive within the adult entertainment industry, I have been featured and quoted in publications including Newsweek, BusinessWeek, USA Today, Wired, and the Washington Post and frequently am requested to speak on panels and at seminars at industry events on various industry related topics and trends.

6.      I have purchased, managed, and sold top-level adult domain names such as Erotica.com, SexSlaves.com, Sex.tv, and Wetdreams.com.

7.      I have been involved in more than fifty (50) federal lawsuits brought against a range of defendants for copyright infringement, and have previously served as an expert witness in similar proceedings.

8.      I have made myself familiar with the corporate structure of Plaintiff and its sibling companies, and related entities.

9.      I have made myself familiar with the Plaintiff's methods, procedures, production, and ownership of copyrighted materials.

10.      I am personally aware of the methods utilized by Plaintiff and can attest to the facts that Plaintiff works require and/or have required great sums of money to create story lines, film in locations; construct detailed intricate sets; employ directors, actors, and editors; use the

highest quality production equipment; and exceed the production value of typical adult erotic entertainment.

11.     I have actual knowledge of the evidence of infringements committed by Defendants as outlined in the Complaint.

12.     I have reviewed the discovery produced by the Defendants in this case.

13.     Based upon my experience and judgement I believe that the websites in this case are a home for massive copyright infringement.

14.     Having worked with large technology companies, having been trained by the likes of Akamai and Microsoft, operating web sites, and existing on the Internet since its at least 1999, I understand how networking of computers, people, and technical devices operate on the Internet and the World Wide Web (www) to a level that I feel that I can articulate what I see when I see it.

15.     I am a FCC licensed Amateur Radio Operator familiar with packet radio. Packet radio was and is a way to route messages from one location to another similar to how computers speak to each other and email travels today. This was in use well before the Internet and I have been using it before email was the new normal.

16.     In order for websites to be seen on the World Wide Web, they need to be located on a server or servers typically at a hosting company that provides internet services.

17.     Feedvid.com, Playvid.com, Playvids.com, and peekvids.com are hosted at Webzilla, a website hosting provider in Florida. This information was garnered from using readily available web tools including domaintools.com, a 15-year-old company that "has been the most popular Whois research service on the internet. [Domain Tools] have collected and stored not only Whois records, but also related screenshots, IP addresses, hosting, name servers

and other DNS data to provide researchers with a comprehensive set of interconnected data services."[1] This hosting information was also confirmed in Defendants deposition testimony.

18. Hosting companies primarily make money from the storage and delivery of content. Other services are offered such as security services, but this is the core service. Simply put, the more a customer stores and delivers to users the more they can charge for the service. Delivery occurs over the Internet using what is known as bandwidth. Hosting companies charge for bandwidth a client uses. The more stored and the more bandwidth delivered, the more a monthly bill will be. Hosting companies have a financial incentive to have their video hosting clients store and deliver as much as possible.

19. In addition, Mr. Luchian has a financial interest in SSM's exploitation of the copyrighted materials. Mr. Luchian is the Financial Director of Webzilla, the host of SSM's websites at issue. In his position with Webzilla, Mr. Luchian has a direct financial interest in SSM's posting of infringing materials. A host has a financial interest in the websites' generation of traffic because an increase in such traffic results in increased bandwidth, which in turn results in increased revenues.

20. Based on deposition testimony and other identified and produced documents, Constantin Luchian works at Webzilla and Incorporate Now.

21. Based on deposition testimony and other identified and produced documents, Konstantin Bolotin is and may still serve as the Director of Operations for Webzilla and Owner of Sun Social Media and the websites in this case.

---

[1] Source: http://www.domaintools.com/products/. Last checked February 29, 2016.

4

22.     Every machine on a network has a unique identifier. Just as you would address a letter to send in the mail, computers use the unique identifier to send data to specific computers on a network.

23.     IP Addresses are essentially phone numbers that are assigned to properties on the web allowing them to be readily routed and identified by networks. An IP address serves two principal functions: host or network interface identification and location addressing.

24.     Certain numbers allow for "an outside line" to the outside world (external), while others are internal numbers like an extension on a telephone system that would only work in your office.

25.     Using this example, in order to call to another computer outside (external) of your "office" you would have to assign an IP Address that the Internet would understand as an outside line e.g. a phone number (IP Address) that included an area code and full number along with a "1" or other prefix typical to routing calls. Should you miss a number or not have a full number, your call will not reach its intended destination, will never leave your office, and will return an error.

26.     I reviewed Defendant Discovery Production SSM1001-10010. This is a print-out displaying information specific to Plaintiff owned content purported to be uploaded to Defendant websites. This Production appears to be extracted directly from the Defendants database tables. I know this because of the way it is presented and that certain lines have the letters, "DB." DB is a term used to refer to database.

27.     This Production shows, among other information: Video URL; Date and time the video was uploaded; the specific web site to which the video was uploaded; uploader's user name, and *IP address from which the video was uploaded*.

28.     Defendants provided information on this Production for one hundred eleven (111) pieces of Plaintiff's video content purportedly uploaded to the Database.

29.     Of the total, eleven (11) uploads of Plaintiff video display an IP address "from which the video was uploaded" that begins with 0.0.

30.     An IP Address that begins with 0.0 means that it is from an internal, local network e.g. a phone extension to phone extension in your "office." A 0.0 IP Address cannot come from the outside, it has to be inside, on the server or in the network locally in order to generate or use an IP of this type.

31.     This means that Plaintiff's videos were uploaded onto one or more of the 4 SSM websites at issue directly from the internal network computers of either SSM or its host, Webzilla.

I declare under the penalty of perjury under the laws of the United States of America that, to the best of my knowledge, the foregoing is true and correct.

Execute on this 29th day of February, 2016 at Phoenix, Arizona.


Jason Tucker

EXHIBIT "B"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 1:15-cv-22134-UU

HYDENTRA HLP INT LIMITED,
a foreign corporation d/b/a METART,

       Plaintiff,

vs.

CONSTANTIN LUCHIAN, an individual,
KONSTANTIN BOLOTIN, an individual,
SUN SOCIAL MEDIA, INC., a corporation,
individually and d/b/a PLAYVID.COM,
FEEDVID.COM, PLAYVIDS.COM, and
PEEKVIDS. COM; PLAYVID.COM;
FEEDVID.COM; PLAYVIDS. COM;
PEEKVIDS.COM and;
and John Does 1-20,

       Defendants.

_____/

**DECLARATION OF JONATHAN KROGMAN IN OPPOSITION TO
CONSTANTIN LUCHIAN'S MOTION FOR SUMMARY JUDGMENT**

    1.    I am over the age of 18, a resident of Los Angeles, California, and citizen of the United States. I make this declaration based upon personal knowledge and, if called to testify could and would testify competently to the facts set forth herein.

    2.    I am the President of Hydentra HLP Int. Limited and its subsidiaries and am involved in the day-to-day operation of the company, including the production of movies, operation of paid membership sites, and the protection of the company's intellectual property.

    3.    Hydentra took the depositions of Sun Social Media's Corporate

1

Representative on January 18-19, 2016, Mr. Konstantin Bolotin on January 19, 2016 and Mr. Constantin Luchian on January 19, 2016 in this case.

4.     At the depositions, Mr. Spencer Freeman, counsel for Plaintiff, asked Mr. Bolotin questions related to the following:

  a.  The reason(s) for Mr. Bolotin moving to the United States;

  b.  The identity of the person and/or entity than loaned money to Sun Social Media, Inc., and the terms of such loan.

5.     Plaintiff inquired as to Mr. Bolotin's move to the United States because Plaintiff suspects there is a connection between the Defendants, which is relevant to the issues of control over SSM, among other things.

6.     Plaintiff determined that upon moving to the United States, Mr. Bolotin commenced work with Webzilla, Inc., where he worked together with Mr. Luchian for a period of time. Mr. Bolotin's response to this topic would have led to other relevant questions concerning his relationship with Mr. Luchian, both personally and professionally, and as such concerns Webzilla.

7.     Plaintiff inquired as to SSM's debt to determine the identity of all individuals and/or entities to whom SSM may be indebted as such may affect that individual's control over SSM's operations. Mr. Bolotin's response to this topic would have led to other relevant questions concerning the issue of control, which is relevant to the secondary claims against Defendants.

8.     At the depositions, Mr. Spencer Freeman, counsel for Plaintiff, asked Mr. Luchian questions related to the following:

  a.  The identity of IncorporateNow, Inc.'s shareholders.

2

b.   Incorporate Now, Inc.'s client list.

9.      Plaintiff inquired as to these topics to identify the extent of the relationship between Mr. Bolotin and Mr. Luchian, and their associated entities (Sun Social Media, Inc. and IncorporateNow, Inc.) as well as their involvement with Webzilla. Mr. Luchian's response to these topics would have led to other relevant questions concerning the corporate structures and relationships between INI, SSM, and Webzilla together with the business relationships between the individuals involved.

10.     Mr. Bolotin and Mr. Luchian refused to answer questions related to the above four subjects, all subjects at issue now in Mr. Luchian's Motion for Summary Judgment. Should the Court be inclined to grant Mr. Luchian's Motion, Plaintiff respectfully requests that it be provided with an opportunity to discovery and present facts essential to its opposition.

**I declare under penalty of perjury that the foregoing is true and correct. Executed on February 29, 2016 in Los Angeles, California**

By:   **JONATHAN KROGMAN**

3