UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 1:15-cv-22134-UU

HYDENTRA HLP INT LIMITED,
a foreign corporation d/b/a METART,

    Plaintiff,

vs.

CONSTANTIN LUCHIAN, an individual,
KONSTANTIN BOLOTIN, an individual,
SUN SOCIAL MEDIA, INC., a corporation,
individually and d/b/a PLAYVID.COM,
FEEDVID.COM, PLAYVIDS.COM, and
PEEKVIDS. COM; PLAYVID.COM;
FEEDVID.COM; PLAYVIDS. COM;
PEEKVIDS.COM and;
and John Does 1-20,

    Defendants.
_____/

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S, CONSTANTIN LUCHIAN, MOTION FOR SUMMARY JUDGMENT

Plaintiff, HYDENTRA HLP INT LIMITED d/b/a METART ("Plaintiff"), through the undersigned counsel, files this Response in Opposition to Constantin Luchian's Motion for Summary Judgment, and in support states the following:

1. Plaintiff filed its Complaint on June 4, 2015. [D.E. #1]. Since then, Defendants failed to conduct any discovery other than to serve a set of interrogatories and requests for production outside of the Court's time limitations for doing so. Defendant filed a Motion for Protective Order as to the interrogatories but produced documents it

intends to use at trial. Notably, Defendant failed to take any depositions whatsoever, and accordingly its record evidence is rather limited.

2. Plaintiff took the deposition of SSM's corporate representative on January 18 and 19, 2016, as well as served interrogatories and requests for production during the discovery period.

3. The facts and record evidence establish that, at a minimum, there exists a genuine issue of material fact as to whether Mr. Luchian violated Plaintiff's rights and therefore is liable for copyright infringement, contributory copyright infringement, vicarious copyright infringement, inducement of copyright infringement, the unauthorized publication of name and likeness in violation of Fla. Stat. 540.08, trademark infringement, contributory trademark infringement, and false designation of origin under the Lanham Act.

### I. *Standard for Motion for Summary Judgment*

This Court may only grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." *Fed. R. Civ. P*. 56(c). The movant "bears the initial responsibility of informing the district court of the basis for absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To discharge this burden, the movant must demonstrate a lack of evidence supporting the nonmoving party's case. *Id*. In resolving a motion for summary judgment, the Court must view any evidence submitted in the light most favorable to the opposing party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970).

## II.     *Relevant Facts*

Mr. Luchian begins his Motion for Summary Judgment by stating that Incorporate Now, Inc. ("INI") is a company that provides certain limited administrative services to Sun Social Media, Inc. ("SSM"). Mr. Luchian then argues that the claims against him make "even less sense than if the Plaintiff had named Florida Power and Light as a defendant, reasoning that, if SSM didn't receive electricity, then it couldn't maintain websites where the users allegedly uploaded infringing materials." [D.E. #72, Page 1]. Defendant's position is perplexing: INI serves as SSM's listed DMCA agent; and SSM affirmatively defends the claims against it pursuant to the Safe Harbor provisions of the DMCA. This situation is not as attenuated as Defendant tries to characterize, and certainly not akin to the FP&L analogy.

Defendants' primary defense is that they never received DMCA take-down notices with respect to the websites at issue, a job that INI and Mr. Luchian handled on behalf of SSM. Mr. Luchian repeatedly denounces any connection that he or INI may have to SSM and the four websites where infringing content was posted. However, there is ample material record evidence that demonstrates such a connection in fact exists, thus precluding Summary Judgment.

Bolotin and Luchian both began working at Webzilla in about 2009/2010 – Bolotin as the Director of Operations and Luchian as Financial Director. Plaintiff's Statement of Disputed Facts ("DSOF"), ¶10. Presently, Mr. Luchian continues working for Webzilla, Inc., which hosts the content for all four of SSM's websites. *Id*. Mr. Luchian's involvement can be summarized as follows: (1) he is employed by Webzilla who hosted (and continues to host) SSM's websites where the infringing content was

uploaded; (2) he has personally known Defendant Bolotin since they started working for Webzilla at or around the same time; and (3) he is the director/officer of INI, whose function is to receive DMCA take-down notices on behalf of SSM. For the reasons that follow, summary judgment must be precluded as to each of the claims against Mr. Luchian.

A common theme throughout Mr. Luchian's attempt to secure summary judgment concerns whether he received Plaintiff's DMCA take-down notices, and subsequently delivered same to SSM, pursuant to his legal obligations as the DMCA agent.[1] Plaintiff relies upon the mailbox rule in Florida, which provides that a presumption of receipt arises when a party has demonstrated: (1) the document was properly addressed; (2) the document was stamped; and (3) the document was mailed. *Barnett v. Okeechobee Hospital*, 283 F.3d 1232, 1250 (11th Cir. 2002). Should this Court accept Plaintiff's position, Plaintiff would prevail on its Motion for Summary Judgment. On the other hand, should the Court reject Plaintiff's position, then the issue must be presented to a jury, rather than serve as the basis of Mr. Luchian's Motion for Summary Judgment.

### III.    *Direct Infringement*

To establish direct copyright infringement, Plaintiff must establish: (1) Ownership of the copyrights allegedly infringed; and (2) that the copyright was copied. *LGS Architects, Inc. v. Concordia Homes of Nev.*, 434 F.3d 1150, 1156 (9th Cir. 1996). Defendant does not (and cannot) dispute the ownership of the infringed copyrights. Plaintiff establishes that Defendant engaged in a violative act causing copying of the copyrighted material at issue. *See Fox Broadcasting Co. v. Dish Network*, LLC, 747 F.3d

---

[1] The DMCA only requires that Plaintiff deliver the take-down notices to the DMCA agent (Mr. Luchian). Plaintiff is not required to either personally deliver or ensure delivery from the DMCA agent to the principal (SSM).

1060, 1066-68 (9th Cir. 2014); *The Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008); *Wolk v. Kodak Imaging Network*, 840 F.Supp.2d 724, 741-42.

Evidence of Mr. Luchian's direct infringement is clear and Defendants' own document production establishes this claim. Defendants' document disclosures reflect that in some instances, content was uploaded to one or more of the Defendants' websites from an IP address that started with 0.00. *DSOF ¶20*. According to the Declaration of Jason Tucker, an IP address that commences in this fashion could only have been uploaded internally, meaning either from SSM or from its hosting company, Webzilla. In other words, either Webzilla (through Mr. Luchian) or SSM could have uploaded the infringing content onto the websites. *DSOF ¶20*. It is for a jury to resolve this factual issue.

Even if Mr. Luchian or Webzilla did not directly upload or post the infringing content, Mr. Luchian (and INI) nevertheless failed in their legal obligations as DMCA agent to SSM, and as a result Plaintiff's content continued to be infringed for a period of six months. Plaintiff delivered DMCA take-down notices to Mr. Luchian in January 2015. *DSOF ¶21*. Mr. Luchian claims he never received the notices, despite Plaintiff's proof of mailing and delivery.[2] *DSOF ¶21*. Mr. Luchian's mishandling of the take-down notices and failure to notify SSM of the same resulted in SSM's continued posting of Plaintiff's content on its websites for an additional six months, until service of this lawsuit finally caused Defendants to remove the infringing materials in June 2015. *DSOF ¶22*. But for Mr. Luchian's alleged mishandling of Plaintiff's DMCA take-down and

---

[2] Defendants fail to overcome the mailbox rule and the presumption that they indeed received the DMCA take-down notices. *Barnett v. Okeechobee Hospital*, 283 F.3d 1232, 1250 (11th Cir. 2002).

failure to deliver the notices to SSM, Plaintiff would not have incurred damages for an additional six months.

### IV.     Contributory Infringement

As the Supreme Court explained, "When a widely shared service or product is used to commit infringement, it may be impossible to enforce rights in the protected work effectively against all direct infringers, the only practical alternative being to go against the distributor of the copying device for secondary liability on a theory of contributory or vicarious liability." *MGM Studios Inc. v. Grokster*, 545 U.S. 913, 929-30 (2005); see also *In re Aimster Copyright Litigation,* 334 F.3d 634, 645 (7th Cir. 2003). "One infringes contributorily by inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Grokster*, 545 U.S. at 930.

A contributory infringer is one who, (1) "with knowledge of the infringing activity," (2) "induces, causes or materially contributes to the infringing conduct of another." *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004). The knowledge requirement is met by a showing of actual or constructive knowledge or by evidence that a defendant took deliberate actions to willfully blind itself to specific infringing activity. See *Softech Worldwide, LLC v. Internet Tech. Broad. Corp.*, No. 1:10cv651, 2010 U.S. Dist. LEXIS 119122, 2010 WL 4645791, at 3 (E.D. Va. Nov. 8, 2010); *Seoul Broad. Sys. Int'l, Inc. v. Young Min Ro*, No. 1:09cv433, 2011 U.S. Dist. LEXIS 82377, 2011 WL 3207024, at *9 (E.D. Va. July 27, 2011). DMCA-compliant notices are evidence of knowledge. See *Capitol Records, LLC v. Escape Media Group, Inc.*, 2015 U.S. Dist. LEXIS 38007, 43 (S.D. NY 2015); *Perfect 10, Inc. v. Giganews,*

*Inc.*, 2014 U.S. Dist. LEXIS 183590, *7 (C. Cal. 2014); *see also Corbis Corp. v. Amazon Inc.*, 351 F. Supp. 2d 1090, 1107 (W. Was. 2004) (stating that notices are "the most powerful evidence of a service provider's knowledge").

Willful blindness is the equivalent of knowledge in copyright law. See *Aimster*, 334 F.3d at 650. "A person is 'willfully blind' or engages in 'conscious avoidance' amounting to knowledge where the person was aware of a high probability of the fact in dispute and consciously avoided confirming that fact." *Viacom Int'l, Inc. v. Youtube, Inc.*, 676 F.3d 19, 35 (2nd Cir. 2012) (internal quotation marks omitted). There must be evidence that the defendant took "deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 131 S. Ct. 2060, 2070, 179 L. Ed. 2d 1167 (2011).

Mr. Luchian relies upon a supposed disconnect to SSM to suggest he did not have any actual knowledge of trademark or copyright infringement by SSM users, and therefore cannot be liable for such claims on a contributory basis. Mr. Luchian's position is suspect given that the DMCA take-down notices were delivered directly to him (through INI) as the registered DMCA agent of SSM. As a matter of law, this constitutes *actual knowledge* of copyright infringement. *Corbis Corp.* 351 F. Supp. 2d at 1107.

Plaintiff likewise satisfies the causation element of its claims. As demonstrated throughout this Response and in Plaintiff's own Motion for Summary Judgment, it is undisputed that Plaintiff delivered its DMCA take-down notices to Mr. Luchian in January 2015. *DSOF ¶21*. Mr. Luchian cannot overcome the presumption of delivery of

such notices.[3] *Barnett v. Okeechobee Hospital*, 283 F.3d 1232, 1250 (11th Cir. 2002). SSM has likewise taken the position that it too did not receive the DMCA take-down notices from Mr. Luchian (or INI). *DSOF ¶23*. Thus, the only conclusion is inescapable – Mr. Luchian failed to deliver the DMCA take-down notices to SSM, and therefore he contributed to the infringement for six months until Plaintiff filed its lawsuit in June 2015. *DSOF ¶22*.

Causation can also be established in another way. Mr. Luchian constituted the very first step of what is, for all practical purposes, a repeat infringer policy that is so deficient that in essence is non-existent. As set forth in Plaintiff's Motion for Summary Judgment, SSM's policy does not have a working *notification system* between SSM and its designated agent, Mr. Luchian. [D.E. 86, Page 13 of 26]. Notices sent to (and received by) Mr. Luchian went ignored and never delivered to SSM, thereby compounding the problems caused by SSM and its posting of infringing content (and subsequent failure to disable such content). SSM's repeat infringer policy starts with Mr. Luchian and fails with Mr. Luchian.

V. ***Inducement of Copyright Infringement***

To be liable for inducing copyright infringement, the defendant must "with knowledge of the infringing activity, induce . . . the infringing conduct of another." *Casella v. Morris*, 820 F.2d 362, 365 (11th Cir. 1987). Mr. Luchian simply denies that he has induced or encouraged anyone to engage in direct infringement. Plaintiff has made clear that Mr. Luchian was the first step in an ineffective repeat infringer policy, and was the cause of a six month delay in the removal of the content following Plaintiff's delivery

---

[3] Even assuming Mr. Luchian was to somehow overcome the presumption created by the mailbox rule, any determination as to whether he received the notices is for a jury to make.

of the DMCA take-down notices. Mr. Luchian knows the purpose of his job as DMCA agent is to receive notices directed to infringing materials posted on the websites of his principals, here SSM. *DSOF ¶24*. Charged with such knowledge, it is only reasonable that Mr. Luchian must know that his failure to deliver the DMCA take-down notices to his principal will result in the perpetuation of the infringement. Thus, because Mr. Luchian knew of the infringing activity (by virtue of the take-down notices) and failed to deliver the take-down notices to SSM he induced SSM's continued infringement for a period of six months.

### VI. Vicarious Copyright Infringement

A variant on respondeat superior, vicarious liability holds a defendant accountable for third-party infringement if he "(1) possessed the right and ability to supervise the infringing activity; and (2) possessed an obvious and direct financial interest in the exploited copyrighted materials." *Nelson—Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 513 (4th Cir. 2002). Unlike contributory infringement, vicarious liability is not based on the knowledge or intent of the defendant, but rather is entirely dependent on the existence of a financial benefit and the defendant's relationship to the infringement. *See Arista Records, LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 156 (S.D.N.Y. 2009); *see also EMI Apr. Music, Inc. v. White*, 618 F. Supp. 2d 497, 507 (E.D. Va. 2009). Mr. Luchian was the first step in what SSM calls its repeat infringer policy and as such possessed the ability to supervise SSM's infringing activity – in other words, the ability to start the process of stopping the infringement.

In addition, Mr. Luchian also had a financial interest in SSM's exploitation of the copyrighted materials. Mr. Luchian is the Financial Director of Webzilla, the host of SSM's websites at issue. In his position with Webzilla, Mr. Luchian has a direct financial

interest in SSM's posting of infringing materials. As demonstrated in Mr. Tucker's Declaration (attached hereto), a host has a financial interest in the websites' generation of traffic because an increase in such traffic results in increased bandwidth, which in turn results in increased revenues. *DSOF ¶25*.

### VII.    *Defendants Improperly Refused to Answer Deposition Questions*

This Court recently overruled a number of objections, instructions not to answer, and refusals to answer deposition questions. *DSOF ¶26*. Those questions and resulting answers affect the issues Mr. Luchian raises in his Motion for Summary Judgment. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order. F.R.C.P. Rule 56(d).

Defendants have purposefully precluded Plaintiff from obtaining relevant and discoverable information during the discovery period. Specifically, during their depositions on January 18 and January 19, 2016, Mr. Luchian and Mr. Bolotin refused to answer the following inquiries, all which could have provided essential information to defending this Motion for Summary Judgment, and all of which relate to the issue of control and/or the relationship between Mr. Bolotin and Mr. Luchian:

1. Why Mr. Bolotin Entered the United States (which relates to Webzilla);
2. The Holders of Debt in Sun Social Media;
3. The shareholders of Incorporate Now, Inc.; and
4. Incorporate Now, Inc.'s Client List.

As discussed above, there is a clear connection between co-defendants Luchian and Bolotin (and his company SSM), which involves Webzilla, Inc. Webzilla hosts (and at all material times, hosted) all of SSM's websites and infringed content at issue here.

*See* D.E. #71 and #104 for a full analysis of how the discovery information sought was relevant and essential to Plaintiff's position.

The Court agreed that the deponents should have responded to these four areas of inquiry at their depositions. *DSOF ¶26*. Plaintiffs were prejudiced during the depositions in that they were precluded from examining the witnesses on relevant and important topics. To now award summary judgment in favor of Mr. Luchian would compound the prejudicial effects of Defendants' conduct.

## CONCLUSION

Mr. Luchian attempts to convince this Court that his only involvement in SSM and this action is as an independent contractor that provided certain administrative functions to SSM, no more involved than a power company supplying power to SSM. This argument is unpersuasive, as Mr. Luchian was the first link in the take-down chain, and in what turned out to be a deficient repeat infringer policy. Because of the defects in SSM's repeat infringer policy, Plaintiff not only incurred damages as a result of the initial infringement, but also during the six month period between January and June 2015 when the content should have been removed from SSM's websites. However, because of Mr. Luchian's failure to perform his duties and deliver the DMCA take-down notices to SSM, Plaintiff's content was permitted to remain online for an additional six months. There are connections between SSM, Bolotin and Luchian that go well beyond any administrative duties provided, a connection that Plaintiff attempted to delve into further at depositions and that Defendants Bolotin and Luchian refused to answer. As a result, entry of summary judgment in Mr. Luchian's favor is not justified.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of February, 2016 we electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Brady J. Cobb, Esq., and Valentin Gurvits, Esq. (*admitted Pro Hac Vice).*

        Respectfully submitted,

        BeharBehar
        1840 North Commerce Parkway
        Suite One
        Weston, Florida 33326
        Telephone: (954) 688-7642
        Facsimile: (954) 332-9260
        E-mail: AB@BeharBehar.com

By:   */s/Aaron Behar, Esquire*
        Aaron Behar, Esquire
        Florida Bar No.: 166286
        Jaclyn Behar, Esquire
        Florida Bar No.: 63833
           ***Counsel for Plaintiff***

And:   Spencer D. Freeman
           Freeman Law Firm, Inc.
        1107 ½ Tacoma Avenue South
        Tacoma, WA 98402
        Telephone:  (253) 383-4500
        Facsimile:  (253) 383-4501
        E-mail: sfreeman@freemanlawfirm.org
        ***Counsel for Plaintiff***
        (Admitted pro hac vice)