## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### MIAMI DIVISION

|  |  |
|---|---|
| HYDENTRA HLP INT. LIMITED,<br>a foreign corporation d/b/a METART,<br><br>    Plaintiff,<br><br>v.<br><br>CONSTANTIN LUCHIAN, an individual,<br>KONSTANTIN BOLOTIN, an individual,<br>SUN SOCIAL MEDIA, INC., a corporation,<br>individually and d/b/a PLAYVID.COM,<br>FEEDVID.COM, PLAYVIDS.COM and<br>PEEKVIDS.COM; PLAYVID.COM;<br>FEEDVID.COM; PLAYVIDS.COM;<br>PEEKVIDS.COM; and<br>John Does 1-20,<br><br>    Defendants. | Case No.<br>**1:15-cv-22134-UU** |

### <u>Declaration of Valentin Gurvits</u>

I, Valentin Gurvits, do declare and state as follows:

1.      I am attorney licensed to practice law in the Commonwealth of Massachusetts. I have personal knowledge of the facts stated herein. If called upon to do so, I could and would testify to the truth hereof.

1.      I worked as a computer programmer and in other computer-related positions from 1985 to 1996, and I received my J.D. from the Boston University School of Law in 1999.

2.      I have been a member in good standing of the Massachusetts Bar since 1999.

3.      My practice focuses primarily on intellectual property, computer, and Internet law matters.

4.      I have represented defendants in many copyright cases similar to the above captioned case around the country, including (to name just a few): Disney Enterprises, Inc. v. Hotfile Corp., Case No. 1:2011-cv-20427 (S.D. Fla.), Fraserside IP LLC v. Youngtek Solutions Ltd, 3:2011-03005 (N.D. Iowa), Fraserside IP LLC v. Hammy Media Ltd, 3:2011-cv-03025 (N.D. Iowa); Cybernet Entertainment LLC v. Kovalchuck, 0:2012-cv-60660 (S.D. Fla.), Cybernet Entertainment LLC v. IG Media Incorporated, 2:2012-cv-01101 (D. Ariz.), Flava Works, Inc v. John Doe 1 to 26, 1:2012-cv-05844 (N.D. Ill.), Datatech Enterprises, LLC v. FF Magnat Limited, 3:2012-cv-04500 (N.D. Cal.), North Jersey Media Group Inc. v. Depositphotos, Inc., 1:2014-cv-04785 (S.D.N.Y.) and AMA Multimedia, LLC v. Borjan Solutions, S.L., 2:2015-cv-01673 (D. Nev.).

5.      As a result of my focus on defending Internet companies in copyright litigation and advising Internet companies world-wide, I have served as an adjunct professor at the Boston University School of Law where I taught two courses, E-Commerce Law and International Intellectual Property.

6.      I have also served as a co-chair of the Computer and Internet Law Committee of the Boston Bar Association's Intellectual Property Section.

7.      I have served as Sun Social Media, Inc.'s *de facto* outside general counsel since its inception.

8.      I have represented Constantin Luchian and Konstantin Bolotin in both litigation and non-litigation matters for both business and personal matters for over six years.

9.      Attached hereto are true copies of Boston Law Group's Engagement Letters with Constantin Luchian, Constantin Bolotin and SunSocial – the Defendants in the above-captioned action.

2

10.     Of the at least eighteen lawsuits filed by the Plaintiff in the above captioned matter in the past approximate year around the country, I have represented defendants in at least nine of those cases.

11.     Of those nine cases, I have been instrumental in settling lawsuits for at least five of my clients.

12.     My hourly rate in this matter has been $450 per hour.  It is my understanding that this rate is considered under-market for an attorney with my level of experience, technical background and specialization in intellectual property and internet related law.

13.     The present case was a time intensive one, made more so by the aggressive litigation positions taken by the Plaintiff which included numerous (unnecessary and unsuccessful) motions brought by Plaintiffs throughout the case.

14.     Despite all of this, I believe that the total amounts invoiced to the clients by the entire litigation defense team – in the neighborhood of $150,000 – were incredibly reasonable, particularly given the results obtained.

15.     It is my practice to keep contemporaneous time and expense records.  I track my time and expenses related to this matter through the billing software Amicus Attorney.  The time and expenses I track in Amicus Attorney are automatically incorporated into Boston Law Group, PC's invoices.

16.     Given the complexity of the issues raised, the Plaintiff's litigation strategies and tactics, and the results obtained for the clients, I believe the amounts billed to be more than reasonable.

Valentin Gurvits

3

## Boston Law Group, PC Terms and Conditions of Engagement

The following are Boston Law Group, PC's terms and conditions for client representation:

1.   <u>Fees and Hourly Rates</u>.  Our fees are charged according to the time devoted to the engagement and are calculated according to hourly rates for professional services.  Our current billing rate is $450 per hour for senior attorneys and $300 per hour for junior attorneys, billed in fifteen minute increments.  The time devoted to your matter for which you will be billed may include consultations, correspondence, meetings, telephone calls, negotiations, factual investigations, legal research, document preparation, travel away from the office on your behalf, and any other work related to your matter.

Our hourly rates are subject to review and change periodically, generally at the beginning of a new calendar year. The hourly rate you are charged is specified on your statement and any change in the rate set forth on the statement will constitute notice of a change in rates.

2.   <u>Disbursements</u>.  The performance of legal services involves certain costs and expenses that you must pay, either directly or by reimbursing us.  We will bill you for smaller expenses incurred in the normal course of work, such as filing fees, computerized research, long-distance telephone charges, overnight mail charges, sending and receiving facsimiles, photocopying charges, messenger services, and travel expenses (e.g., mileage, meals, parking, lodging, etc.).  We bill local, long distance and international faxes at $.25, $.50 and $1 per page, respectively, and photocopies are billed at $.15 per page.  All other disbursements are billed at cost.  In circumstances involving larger expenses, such as IRS filing fees, specialized reports or analyses, airfare, or extended field expenses, we may require you to advance these sums to us before we incur the expenses, or we may require that you directly reimburse the vendor.

3.   <u>Monthly Statements and Payment Terms</u>.  Our practice is to send monthly statements for services rendered during the previous month and for any disbursements incurred for your account.  The monthly statements will itemize the services provided in a diary format, and they will separately state the fees and disbursements incurred.

Our fee structure is based upon an understanding that all statements are due and payable upon receipt but, in any event, no later than thirty (30) days thereafter.  We reserve the right to charge a monthly late payment fee, at the rate of eighteen percent (18%) per year, computed from thirty (30) days after the statement's issuance date until paid.  In the event it becomes necessary for us to engage a collection agency or take legal action for the collection of fees and disbursements, you agree to be responsible for the costs associated with such actions, including the reasonable fees of outside counsel retained for the purpose of collection.

We work hard to ensure that our clients are satisfied, not just with our services but also with the reasonableness of our fees and the disbursements charged for those services.  Thus, if you have a question about a billing statement or the basis for our fees, please raise it promptly for discussion.

4.     <u>File Retention and Destruction</u>. At the conclusion of this matter, we will retain your legal files for a period of three (3) years after we close our file. At the expiration of the three-year period, we will destroy these files unless you notify us in writing that you wish to take possession of them. We reserve the right to charge administrative fees and costs associated with researching retrieving, copying and delivering such files.

5.     <u>Retainer</u>. It is the firm's policy to obtain a retainer before beginning work. We may waive that requirement in certain circumstances while reserving the right to request a retainer in the future. The amount of any retainer we request will depend on the nature and amount of anticipated services, but it does not necessarily represent our estimate of the total charges that may be incurred. The amount of any retainer may be applied against our legal fees and disbursements except to the extent otherwise agreed. We reserve the right to require that you restore the retainer to its original amount if it becomes depleted or when it drops below an agreed-upon amount. In order to begin representation, we would require a retainer of: N/A.

The retainer will be held in our lawyer trust account and applied to our fees and disbursements in the event you fail to timely pay any monthly statement. We reserve the right to request additional retainers from time to time, and will do so in the event our work for you is expected to exceed this amount in any given month (e.g. if we are asked to work on substantive matters including research, discovery, attend hearings, or trial). If, at the completion of the matter, or upon termination of our legal services, the total of our legal fees and disbursements is less than the amount of any retainer, the balance will be promptly refunded to you.

6.     <u>Withdrawal from Representation</u>. The attorney-client relationship is founded upon mutual trust and confidence. If you have any questions about the provisions of this letter or the services that we provide, please contact us for clarification or additional information. If you do not meet the obligation of timely payment as set forth above, we reserve the right to withdraw from representation on that basis alone, subject, of course, to any required judicial or administrative approval.

Our representation may also be terminated by either party upon reasonable notice for any reason. Upon such termination, however, you shall remain liable for any unpaid fees and disbursements incurred prior to the effective date of the termination.

Name: *Konstantin Bololin*

By: _____

Date: 7/16/2015

BOSTON LAW GROUP, PC

By: _____

Date: 07/16/2015

## <u>Boston Law Group, PC Terms and Conditions of Engagement</u>

The following are Boston Law Group, PC's terms and conditions for client representation:

1.      <u>Fees and Hourly Rates</u>.  Our fees are charged according to the time devoted to the engagement and are calculated according to hourly rates for professional services.  Our current billing rate is $450 per hour for senior attorneys and $300 per hour for junior attorneys, billed in fifteen minute increments.  The time devoted to your matter for which you will be billed may include consultations, correspondence, meetings, telephone calls, negotiations, factual investigations, legal research, document preparation, travel away from the office on your behalf, and any other work related to your matter.

Our hourly rates are subject to review and change periodically, generally at the beginning of a new calendar year. The hourly rate you are charged is specified on your statement and any change in the rate set forth on the statement will constitute notice of a change in rates.

2.      <u>Disbursements</u>.  The performance of legal services involves certain costs and expenses that you must pay, either directly or by reimbursing us.  We will bill you for smaller expenses incurred in the normal course of work, such as filing fees, computerized research, long-distance telephone charges, overnight mail charges, sending and receiving facsimiles, photocopying charges, messenger services, and travel expenses (e.g., mileage, meals, parking, lodging, etc.).  We bill local, long distance and international faxes at $.25, $.50 and $1 per page, respectively, and photocopies are billed at $.15 per page.  All other disbursements are billed at cost.  In circumstances involving larger expenses, such as IRS filing fees, specialized reports or analyses, airfare, or extended field expenses, we may require you to advance these sums to us before we incur the expenses, or we may require that you directly reimburse the vendor.

3.      <u>Monthly Statements and Payment Terms</u>.  Our practice is to send monthly statements for services rendered during the previous month and for any disbursements incurred for your account.  The monthly statements will itemize the services provided in a diary format, and they will separately state the fees and disbursements incurred.

Our fee structure is based upon an understanding that all statements are due and payable upon receipt but, in any event, no later than thirty (30) days thereafter.  We reserve the right to charge a monthly late payment fee, at the rate of eighteen percent (18%) per year, computed from thirty (30) days after the statement's issuance date until paid.  In the event it becomes necessary for us to engage a collection agency or take legal action for the collection of fees and disbursements, you agree to be responsible for the costs associated with such actions, including the reasonable fees of outside counsel retained for the purpose of collection.

We work hard to ensure that our clients are satisfied, not just with our services but also with the reasonableness of our fees and the disbursements charged for those services.  Thus, if you have a question about a billing statement or the basis for our fees, please raise it promptly for discussion.

4.      File Retention and Destruction. At the conclusion of this matter, we will retain your legal files for a period of three (3) years after we close our file. At the expiration of the three-year period, we will destroy these files unless you notify us in writing that you wish to take possession of them. We reserve the right to charge administrative fees and costs associated with researching retrieving, copying and delivering such files.

5.      Retainer. It is the firm's policy to obtain a retainer before beginning work. We may waive that requirement in certain circumstances while reserving the right to request a retainer in the future. The amount of any retainer we request will depend on the nature and amount of anticipated services, but it does not necessarily represent our estimate of the total charges that may be incurred. The amount of any retainer may be applied against our legal fees and disbursements except to the extent otherwise agreed. We reserve the right to require that you restore the retainer to its original amount if it becomes depleted or when it drops below an agreed-upon amount. In order to begin representation, we would require a retainer of: N/A.

        The retainer will be held in our lawyer trust account and applied to our fees and disbursements in the event you fail to timely pay any monthly statement. We reserve the right to request additional retainers from time to time, and will do so in the event our work for you is expected to exceed this amount in any given month (e.g. if we are asked to work on substantive matters including research, discovery, attend hearings, or trial). If, at the completion of the matter, or upon termination of our legal services, the total of our legal fees and disbursements is less than the amount of any retainer, the balance will be promptly refunded to you.

6.      Withdrawal from Representation. The attorney-client relationship is founded upon mutual trust and confidence. If you have any questions about the provisions of this letter or the services that we provide, please contact us for clarification or additional information. If you do not meet the obligation of timely payment as set forth above, we reserve the right to withdraw from representation on that basis alone, subject, of course, to any required judicial or administrative approval.

Our representation may also be terminated by either party upon reasonable notice for any reason. Upon such termination, however, you shall remain liable for any unpaid fees and disbursements incurred prior to the effective date of the termination.

Name: *Sun Social Media Inc*

By: _____

Date: *7/16/2015*

BOSTON LAW GROUP, PC

By: _____

Date: *7/16/2015*

<u>**Boston Law Group, PC Terms and Conditions of Engagement**</u>

The following are Boston Law Group, PC's terms and conditions for client representation:

1.      <u>Fees and Hourly Rates</u>.  Our fees are charged according to the time devoted to the engagement and are calculated according to hourly rates for professional services.  Our current billing rate is $450 per hour for senior attorneys and $300 per hour for junior attorneys, billed in fifteen minute increments.  The time devoted to your matter for which you will be billed may include consultations, correspondence, meetings, telephone calls, negotiations, factual investigations, legal research, document preparation, travel away from the office on your behalf, and any other work related to your matter.

Our hourly rates are subject to review and change periodically, generally at the beginning of a new calendar year. The hourly rate you are charged is specified on your statement and any change in the rate set forth on the statement will constitute notice of a change in rates.

2.      <u>Disbursements</u>.  The performance of legal services involves certain costs and expenses that you must pay, either directly or by reimbursing us.  We will bill you for smaller expenses incurred in the normal course of work, such as filing fees, computerized research, long-distance telephone charges, overnight mail charges, sending and receiving facsimiles, photocopying charges, messenger services, and travel expenses (e.g., mileage, meals, parking, lodging, etc.). We bill local, long distance and international faxes at $.25, $.50 and $1 per page, respectively, and photocopies are billed at $.15 per page.  All other disbursements are billed at cost.  In circumstances involving larger expenses, such as IRS filing fees, specialized reports or analyses, airfare, or extended field expenses, we may require you to advance these sums to us before we incur the expenses, or we may require that you directly reimburse the vendor.

3.      <u>Monthly Statements and Payment Terms</u>.  Our practice is to send monthly statements for services rendered during the previous month and for any disbursements incurred for your account.  The monthly statements will itemize the services provided in a diary format, and they will separately state the fees and disbursements incurred.

Our fee structure is based upon an understanding that all statements are due and payable upon receipt but, in any event, no later than thirty (30) days thereafter.  We reserve the right to charge a monthly late payment fee, at the rate of eighteen percent (18%) per year, computed from thirty (30) days after the statement's issuance date until paid.  In the event it becomes necessary for us to engage a collection agency or take legal action for the collection of fees and disbursements, you agree to be responsible for the costs associated with such actions, including the reasonable fees of outside counsel retained for the purpose of collection.

We work hard to ensure that our clients are satisfied, not just with our services but also with the reasonableness of our fees and the disbursements charged for those services.  Thus, if you have a question about a billing statement or the basis for our fees, please raise it promptly for discussion.

4.   File Retention and Destruction. At the conclusion of this matter, we will retain your legal files for a period of three (3) years after we close our file. At the expiration of the three-year period, we will destroy these files unless you notify us in writing that you wish to take possession of them. We reserve the right to charge administrative fees and costs associated with researching retrieving, copying and delivering such files.

5.   Retainer. It is the firm's policy to obtain a retainer before beginning work. We may waive that requirement in certain circumstances while reserving the right to request a retainer in the future. The amount of any retainer we request will depend on the nature and amount of anticipated services, but it does not necessarily represent our estimate of the total charges that may be incurred. The amount of any retainer may be applied against our legal fees and disbursements except to the extent otherwise agreed. We reserve the right to require that you restore the retainer to its original amount if it becomes depleted or when it drops below an agreed-upon amount. In order to begin representation, we would require a retainer of: N/A.

The retainer will be held in our lawyer trust account and applied to our fees and disbursements in the event you fail to timely pay any monthly statement. We reserve the right to request additional retainers from time to time, and will do so in the event our work for you is expected to exceed this amount in any given month (e.g. if we are asked to work on substantive matters including research, discovery, attend hearings, or trial). If, at the completion of the matter, or upon termination of our legal services, the total of our legal fees and disbursements is less than the amount of any retainer, the balance will be promptly refunded to you.

6.   Withdrawal from Representation. The attorney-client relationship is founded upon mutual trust and confidence. If you have any questions about the provisions of this letter or the services that we provide, please contact us for clarification or additional information. If you do not meet the obligation of timely payment as set forth above, we reserve the right to withdraw from representation on that basis alone, subject, of course, to any required judicial or administrative approval.

Our representation may also be terminated by either party upon reasonable notice for any reason. Upon such termination, however, you shall remain liable for any unpaid fees and disbursements incurred prior to the effective date of the termination.

Name:
By: _Luchian_
Constantin Luchian
Date: July 16, 2015

Text
BOSTON LAW GROUP, PC

By: _____
Date: 7/16/2015