UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 1:15-cv-22134-UU

HYDENTRA HLP INT. LIMITED,
a foreign corporation d/b/a METART,

      Plaintiff,

vs.

CONSTANTIN LUCHIAN, an individual,
KONSTANTIN BOLOTIN, an individual,
SUN SOCIAL MEDIA, INC., a corporation,
individually and d/b/a PLAYVID.COM,
FEEDVID.COM, PLAYVIDS.COM, and
PEEKVIDS. COM; PLAYVID.COM;
FEEDVID.COM; PLAYVIDS. COM;
PEEKVIDS.COM and;
and John Does 1-20,

      Defendants.
_____/

## DECLARATION OF JON KROGMAN IN SUPPORT OF PLAINTIFF'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES

I, Jon Krogman, declare:

1.     I am over the age of 18, a resident of Los Angeles, California, and citizen of the United States. I make this declaration based upon personal knowledge and, if called to testify could and would testify competently to the facts set forth herein.

2.     I am the President of Hydentra HLP Int. Limited and its subsidiaries and am involved in the day to day operation of the company, including the production of movies, operation of paid membership sites, and the protection of the company's intellectual property.

3. Hydentra is the producer, distributor, and exclusive licensor of its own motion pictures that explore and deliver sensuality and sexuality through artistic photography, video, and erotic stories. Hydentra also owns and/or operates MetArt.com and SexArt.com, and other paid membership sites through which Hydentra offers its motion pictures to the public for a fee.

4. Since 1999, Hydentra has grown its trademark brands into a globally recognized leader of sensual art garnering numerous industry awards through the use of studios around the globe, exotic locations, high budget productions, engaging storylines, famed photographers and directors coupled with the dedication from its artists and technicians. The MetArt library is comprised of exclusive content that features over 5000 models shot by 250 photographers/directors including such notables as Vivian Thomas and the late Zalman King, who also brought Hollywood films such as Wild Orchid, Two Moon Junction, 9 ½ Weeks, and the Showtime network groundbreaking series Red Shoes Diaries.

5. Hydentra prides itself on high quality movies, often spending six times more than industry standards in production costs. Hydentra expends a significant amount of resources, in locating and contracting actor/models, film makers, editors, producers, and locations to produce new films monthly. The production model is a constant on-going process – and therefore expenditure. Hydentra's effort in producing high quality content is recognized in the industry. In fact, SexArt.com recently won 2016 XBiz Erotic Adult Site of the Year and 2016 AVN Best Director & Film.

6. Hydentra has spent over $45,000 registering its works with the United States Copyright Office. Hydentra has taken industry standard steps to identify its products. Hydentra's videos are watermarked with Hydentra's readily identifiable registered trademark.

7. Hydentra's movies are intended to be available only through its paid membership sites or purchase by scene, set, or asset. The Hydentra business model is simply that a user must pay Hydentra to view Hydentra's movies. Each member of Hydentra's membership web sites has an average value of $120. This considers that an average retention rate is three months at $29.99 per month, the average up-sale for each member, and trial and promotional deals.

8. I am aware that the Defendants have asserted that the value of a membership for Hydentra is $8.33. This is an incorrect assessment. Hydentra does offer a yearly membership for $99. Broken down, this does average to $8.33 per month. However, it requires the member to pay $99 up front. These memberships are taken into account when Hydentra determines the average value of its memberships. Further, most of Hydentra's members do not choose to spend $99 up front, but chose a monthly paid membership.

9. Hydentra engages in extremely limited licensing of its content to other entities or websites for viewing, in addition to the small sample of promotional materials provided to Hydentra affiliates for the sole purpose of the affiliates' promoting Hydentra's web sites. All licensing is done with the intent for brand exposure and is limited to a small subset of hand-selected short format content. Hydentra has issued limited exclusive licenses for cable, satellite, and broadcast, displaying in countries that include Canada, Germany, Austria, Netherlands, South Korea, and the United States. Specifically in the United States, Hydentra has issued a limited broadcast distribution license to Larry Flynt Productions (LFP/Hustler).

10. *Numerous* web sites display free copyrighted adult content without license or authority. These video streaming sites are often portrayed as third party upload sites, analogous to Youtube.com. The existence of video streaming sites damages paid membership sites as users are less likely to pay a monthly membership fee when they can access a producer's movies for

free. The display and viewing of Hydentra's movies for free results in a direct loss of revenue for Hydentra.

11. As Hydentra's works have grown in popularity, so has the prevalence of the unlawful display of Hydentra's videos on video streaming sites, wherein those site owners earn revenue from advertising monies. By way of example, the prevalence of the piracy of Hydentra intellectual property has extended to the point that Hydentra images are infringed and sold as mouse pads, and other goods, on Amazon and Ebay.

12. The prevalence of piracy seriously threatens every element of Hydentra's business, certainly the value of the paid membership sites and licenses to distributors. Simply put, if Hydentra videos and images are readily available for free, there is little incentive for distributors to license the product and little incentive for an end user to pay for a membership. "Free" will win, every time.

13. Given the prevalence of video streaming sites and the damage such sites do to Hydentra's paid membership sites, Hydentra retained the services of several vendors including Takedown Piracy and Battleship Stance LLC to investigate copyright infringement, send DMCA complaint takedown notices for detected infringement of Hydentra copyrighted works, and document infringements when takedown notices are ignored and/or the web sites are not registered as Internet Service Providers.

14. The purpose of Hydentra's actions has been, and continues to be, to thwart infringements of its copyrighted works. Contrary to Defendants' assertions, Hydentra's copyright enforcement is not a business model.

15. Hydentra has spent over $500,000 to enforce its copyrights, including investigations, take down notices, and litigation. In contrast, Hydentra has recovered less than a

quarter of those costs from infringing ISPs. Given confidentiality agreements, we are prevented from giving specifics on these settlement terms.

16. Specific to the Defendants in the instant matter, investigations revealed significant infringements on Playvid.com, Playvids.com, Peekvids.com, and Feedvid.com. Beginning in 2013, Hydentra utilized Takedown Piracy to send take down notices for infringements on these sites.

17. Hydentra tested the sources of infringements by blocking IP addresses from the servers hosting video streaming sites, including Defendants' sites. This meant that persons with IP addresses from these servers could not access Hydentra's paid membership sites from those IPs. This action resulted in an immediate decrease in the frequency of infringements of Hydentra content and an increase in Hydentra memberships.

18. As a result, it appeared that someone was directly downloading Hydentra' content from its paid membership sites and posting on the Defendants Sites. For business purposes, Hydentra could not permanently disable these IP addresses.

19. There were concerns that the take down notices sent via email regarding the Defendants Sites were not actually being received, as there was no return receipt and no way to be sure that the notices were actually delivered and received. Accordingly, Hydentra retained Battleship Stance to physically send paper notices to the DMCA Agent which would establish the delivery of the notices. Such notices were delivered in January 2015.

20. Given the failure to respond to any type of take down notice, it was determined that litigation was necessary to thwart the piracy of Hydentra's works on the Defendants sites.

21. While Hydentra lost its copyright claims on summary judgment, the primary purpose of the litigation was successful. As a result of this litigation, Hydentra's works are no longer infringed on the Defendants sites.

22. Prior to and during this litigation, an Internet search (using search engines such as Google and BING) for MetArt or SexArt videos produced Defendants sites high in results, enabling consumers to easily find Hydentra's content for free on Defendants sites. Since this litigation, Defendants sites do not come up in such searches.

23. Prior to and during this litigation, a search for MetArt or SexArt videos using the search tool on the Defendants sites resulted in the display of *numerous* Hydentra videos displayed in violation of Hydentra's copyrights. Since this litigation, such a search on the Defendants sites results in the display of exactly zero of Hydentra's videos.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Execute on the  19th  day of August, 2016 at  Santa Monica , California.

_____
Jon Krogman