UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 15-22134-CIV-UNGARO/OTAZO-REYES

HYDENTRA HLP INT. LIMITED,
a foreign corporation d/b/a METART,

        Plaintiff,

v.

CONSTANTIN LUCHIAN, an individual,
KONSTANTIN BOLOTIN, an individual,
SUN SOCIAL MEDIA, INC., a corporation,
individually and d/b/a PLAYVID.COM,
FEEDVID.COM, PLAYVIDS.COM, and
PEEKVIDS.COM; PLAYVID.COM;
FEEDVID.COM; PLAYVIDS.COM;
PEEKVIDS.COM; and
John Does 1-20,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon Defendants Constantin Luchian ("Luchian"),

Konstantin Bolotin ("Bolotin"), and Sun Social Media, Inc.'s ("SSM") (collectively,

"Defendants") Motion for Attorney's Fees (hereafter, "Motion for Fees") [D.E. 148].  This

matter was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Ursula

Ungaro, United States District Judge [D.E. 151].  For the reasons discussed below, the

undersigned respectfully recommends that Defendants' Motion for Fees be DENIED.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Hydentra HLP Int. Limited ("Hydentra" or "Plaintiff") produced or held licensing rights to adult-content videos, which were displayed on Hydentra's websites.  See Omnibus Order [D.E. 138 at 1-2].[1]

Defendant SSM developed the following video-sharing websites through which users could upload adult-content videos: Playvid.com, Playvids.com, Peekvids.com, and Feedvid.com (collectively, "Websites").  Id. at 3-4.  Videos available on SSM's Websites were uploaded by SSM's users, not by SSM or its agents or contractors.  Id. at 3.

Defendant Bolotin was the director of operations at SSM.  Id. at 4.

SSM designated Defendant Luchian as its agent to receive notifications of claimed infringement (hereafter, "takedown notices"), pursuant to the Digital Millennium Copyright Act ("DMCA").  Id. at 5.[2]  On its Websites, SSM provided a number of methods for sending takedown notices to Luchian, including via email or physical delivery.  Id. at 5-6.  Generally, within 48 hours of receiving a takedown notice via physical delivery, Luchian scanned it and emailed it to SSM.  Id. at 7.  Under SSM's procedures, upon receiving a takedown notice, it acted to remove the infringing videos.  Id. at 6.

Hydentra hired Jason Tucker ("Tucker") to investigate infringement of its copyrights and to send takedown notices for detected infringements.  Id. at 9.  Tucker discovered that a number of Hydentra's copyrighted videos were displayed on Playvid.com.  Id.  On January 15, 2015, Tucker sent a package containing takedown notices to Luchian via U.S. mail, using a tracking

---

[1] The Omnibus Order has been published at Hydentra HLP Int. Ltd. v. Luchian, No. 1:15-cv-22134-UU, 2016 WL 5951808 (S.D. Fla. June 2, 2016).
[2] The DMCA shields service providers from liability for the acts of third-party users, where the providers meet certain criteria such as designating an agent to receive takedown notices.  See 17 U.S.C. § 512(c)(2).

number to confirm that the package was received. Id. at 9-10.[3]  On January 20, 2015, Carmen Jusino ("Jusino") signed for the package on Luchian's behalf.  Id. at 10.  However, "Luchian never personally received the package . . . and claim[ed] that it was lost after Jusino signed for [it]."  Id.  "SSM claim[ed] that it never received these takedown notices and was unaware of the allegedly infringing files until this lawsuit."  Id.  Prior to the filing of this lawsuit, SSM did not remove Hydentra's copyrighted videos from Playvid.com [D.E. 155 at 2].

On June 4, 2015, Hydentra filed this action asserting the following claims against Defendants:

| | |
|---|---|
| Count I: | Direct Copyright Infringement Under the Copyright Act, 17 U.S.C. §§ 101 et seq. (hereafter, "Copyright Act"); |
| Count II: | Contributory Copyright Infringement; |
| Count III: | Vicarious Copyright Infringement; |
| Count IV: | Inducement of Copyright Infringement (Counts I-IV collectively, "Copyright Act Counts"); |
| Count V: | Unauthorized Publication of Name and Likeness in Violation of Florida Statute § 540.08; |
| Count VI: | Trademark Infringement Under the Lanham Act, 15 U.S.C. § 1114; |
| Count VII: | Contributory Trademark Infringement; |
| Count VIII: | False Designation of Origin Under the Lanham Act, 15 U.S.C. § 1125. |

See Compl. [D.E. 1 at 14-38].  Hydentra sought, inter alia, damages "for all infringing activities" from the date on which its copyrights were first infringed; and to enjoin Defendants from engaging in further infringing activities.  Id. at 17-18, 20-21, 23-24, 26-27.  Hydentra attached to the Complaint a list identifying its copyrighted videos that were displayed on the Websites.  Id.

---

[3]  Later, Tucker discovered more of Hydentra's copyrighted videos displayed on Playvids.com, Peekvids.com, and Feedvid.com; but he did not send takedown notices as to these videos. Id. at 2, 9.

at 41-46.  Upon receiving the Complaint, "SSM disabled access to and/or removed" the listed videos.  See Omnibus Order [D.E. 138 at 10].

On February 12, 2016, Hydentra and Defendants filed Cross Motions for Summary Judgment [D.E. 72, 73 & 86].[4]  On June 2, 2016, the Court issued an Omnibus Order ruling on the summary judgment motions.  See Omnibus Order [D.E. 138].

Regarding Count I, Hydentra needed to establish that it owned valid copyrights to the videos at issue and that Defendants copied the videos.  Id. at 14-15.  Defendants conceded that Hydentra owned valid copyrights to the videos at issue.  Id. at 15.  Thus, the Court had to determine "whether Defendants may be held liable for direct infringement based upon third-party users' uploading of [Hydentra's] copyrighted videos onto Defendants' Websites."  Id.  In its analysis, the Court noted that, to establish such liability, Hydentra had to prove "that Defendants engaged in a volitional act to cause the illegal copying"; but acknowledged that the Eleventh Circuit had "not considered whether volitional conduct is a necessary element for finding an internet company liable for direct copyright infringement."  Id. at 15, 17.  Hydentra argued that Defendants engaged in volitional acts by employing a moderator to screen videos that were uploaded to, but not yet displayed on, their Websites showing "child pornography, animal pornography, spam, and to ensure that the video constitute[d] adult entertainment."  Id. at 18. However, the Court disagreed that such monitoring constituted volitional acts.  Id. at 20. Accordingly, the Court granted SSM and Bolotin's Motion for Summary Judgment and denied Hydentra's Motion for Summary Judgment as to Count I.  Id.

Regarding Count II, Hydentra needed to establish: that Defendants knew or had reason to know about the infringing activity; that Defendants induced, caused, or materially contributed to

---

[4] SSM and Bolotin filed a joint Motion for Summary Judgment, while Luchian moved for summary judgment independently.

4

the infringing conduct of another; and that "the product in question [was not] capable of 'substantial noninfringing uses.'" Id. at 24, 26. After determining that a question of fact existed as to whether Defendants had constructive knowledge of the infringing activities, the Court proceeded to discuss the noninfringing-use requirement. Id. at 26. With respect to the noninfringing-use requirement, Hydentra argued that the requirement applied only to the sale of products, not to cases involving the use of a website; and that "there [was] nothing about the infringing videos that ha[d] a non-infringing purpose." Id. at 27. The Court recognized that the noninfringing-use requirement originally addressed only the sale of products; but explained that the requirement predated the Internet and found that it applied in this case. Id. Further, Defendants demonstrated that the Websites were capable of substantial noninfringing uses since SSM started as an online dating website; and the Websites hosted videos and allowed users to upload, playback, and organize videos. Id. at 27-28. Hence, the Court granted SSM and Bolotin's Motion for Summary Judgment as to Count II. Id. at 28.

Regarding Count III, Hydentra needed to establish that Defendants profited directly from the infringement and that they declined to exercise a right to stop or limit the infringement Id. at 28-29. Hydentra argued that SSM was compensated by advertisers based on the amount of Internet traffic that was directed to the advertisers' websites from SSM's Websites. Id. at 29. Therefore, Hydentra argued that the existence of its copyrighted videos on SSM's Websites "financially benefit[ed] Defendants" because "the attractiveness of the content" on SSM's Websites would increase traffic to the advertisers' websites. Id. However, the Court found that there was "no evidence that [Hydentra's] copyrighted videos drew additional traffic to Defendants' Websites," so Hydentra could not establish that Defendants "received a <u>direct</u>

financial benefit from the uploading of [Hydentra's] videos." Id. Thus, the Court granted SSM and Bolotin's Motion for Summary Judgment as to Count III. Id. at 30.

Regarding Count IV, the Court noted that Hydentra neither responded to Defendants' arguments, nor moved for summary judgment as to this Count. Id. The Court found that there was no evidence that Defendants induced users to upload copyrighted videos because they acted as "passive internet service providers." Id. Therefore, the Court granted SSM and Bolotin's Motion for Summary Judgment as to Count IV. Id.

Additionally, the Court granted SSM and Bolotin's Motion for Summary Judgment as to Count V; denied it as to Counts VI-VIII; and denied Hydentra's Motion for Summary Judgment. Id. at 37.[5]

On June 7, 2016, Hydentra filed a Motion to Dismiss without prejudice Counts VI-VIII which the Court granted, thereby dismissing the remaining Counts and closing the case [D.E. 140 & 141].

On August 2, 2016, Defendants filed the instant Motion for Fees seeking $162,165.00 in attorney's fees pursuant to the Copyright Act. See Motion for Fees [D.E. 148]. On August 19, 2016, Hydentra filed its Opposition to Defendants' Motion for Fees (hereafter, "Plaintiff's Response") [D.E. 154]. On August 26, 2016, Defendants filed their Reply in Support of their Motion for Fees (hereafter, "Defendants' Reply") [D.E. 155] in which Defendants corrected errors in their initial fee calculation and sought an amended total of $151,902.50 in attorney's fees. Id. at 5.

## APPLICABLE LAW

In copyright infringement actions, Section 505 of the Copyright Act authorizes courts to "award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505.

---

[5] The Court also granted Luchian's Motion for Summary Judgment. Id. at 36.

Generally, the prevailing party is "the party succeeding on a significant litigated issue that achieves some of the benefits sought by that party in initiating the suit." Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 853 (11th Cir. 1990). Here, Defendants prevailed at summary judgment on Plaintiff's Copyright Act Counts, and Plaintiff concedes that Defendants are the prevailing parties as to those Counts. See Plaintiff's Response [D.E. 154 at 10].

As prevailing parties, Defendants bear the burden of establishing entitlement to attorney's fees. Katz v. Chevaldina, 127 F. Supp. 3d 1285, 1296 (S.D. Fla. 2015). The decision to award attorney's fees falls within the court's sound discretion. Klein & Heuchan, Inc. v. CoStar Realty Info., Inc., No. 8:08-cv-1227-T-30EAJ, 2011 WL 6097980, at *2 (M.D. Fla. Dec. 7, 2011). In exercising their discretion, courts consider the following non-exclusive factors: (1) frivolousness; (2) motivation; (3) objective unreasonableness of the non-prevailing party's positions; and (4) the need to advance considerations of compensation and deterrence. Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994).[6]

## DISCUSSION

### (1) Frivolousness

"Frivolousness, in copyright cases, is usually found in cases in which the [plaintiff] does not even own the copyright in question or has granted a license to the alleged infringer but sues for infringement nonetheless." Medallion Homes Gulf Coast, Inc. v. Tivoli Homes of Sarasota, Inc., No. 8:14-cv-3117-T-33JSS, 2016 WL 5870215, at *2 (M.D. Fla. Oct. 7, 2016) (citations omitted); Prof'l LED Lighting, Ltd. v. AAdyn Tech., LLC, 88 F. Supp. 3d 1356, 1375 (S.D. Fla. 2015) (same). Defendants argue that "the claims brought against [Bolotin and Luchian] could

---

[6] These are generally called the "Fogerty" factors. Malibu Media, LLC v. Pelizzo, 604 F. App'x 879, 881 (11th Cir. 2015).

7

not be considered anything other than frivolous." See Motion for Fees [D.E. 148 at 9]. However, Defendants conceded that Plaintiff owned valid copyrights to the videos at issue in this case. Thus, the undersigned concludes that Plaintiff's case was not frivolous. Medallion Homes Gulf Coast, 2016 WL 5870215, at *2; Prof'l LED Lighting, 88 F. Supp. 3d at 1375. Therefore, this factor militates against awarding attorney's fees to Defendants.

**(2) Motivation**

In evaluating this factor, courts consider whether the non-prevailing "party litigated in good or bad faith." Klein & Heuchan, 2011 WL 6097980, at *5. This determination may turn on a number of considerations, including whether the non-prevailing party initiated the lawsuit for an improper motive. Id.; see Luken v. Int'l Yacht Council, Ltd., 581 F. Supp. 2d 1226, 1245 (S.D. Fla. 2008) (considering the non-prevailing party's motivation for bringing the lawsuit).

Defendants argue that Plaintiff brought this action in bad faith for the purpose of achieving a windfall by forcing a settlement. See Motion for Fees [D.E. 148 at 11]. To support this position, Defendants argue that: (1) Plaintiff's lawsuit should never have been initiated; (2) Plaintiff sent the takedown notices via U.S. mail, rather than email, to manufacture Defendants' error; and (3) Plaintiff did not dismiss this lawsuit after Defendants removed its copyrighted videos from the Websites. Id. at 2, 11 n.7, 13; Defendants' Reply [D.E. 155 at 2-3]. The undersigned finds no merit in these arguments.

First, Plaintiff only filed this lawsuit after: Plaintiff discovered its copyrighted videos on Playvid.com; Plaintiff sent Luchian takedown notices via U.S. mail; the takedown notices were delivered to, and accepted by, Jusino on Luchian's behalf; and Plaintiff's copyrighted videos were not removed from Playvid.com. Given this pre-suit history, the undersigned concludes that Plaintiff filed this action in good faith to protect its copyrighted videos. See Luken, 581 F. Supp.

8

2d at 1245 ("It goes without saying that protection of one's copyright constitutes a permissible motivation in filing a copyright infringement case against one whom the copyright holder believes in good faith to have infringed the copyright.").

Second, pursuant to information on SSM's Websites, takedown notices could be sent to Luchian via email or physical delivery, so Plaintiff sent the takedown notices in accordance with SSM's instructions. Therefore, the method of delivery is not evidence of improper motivation.

Third, although Defendants removed Plaintiff's copyrighted videos from the Websites after being served with the Complaint, such removal did not oblige Plaintiff to dismiss this action given that Plaintiff sought to recover damages from the date on which its copyrights were first infringed.

Therefore, the undersigned concludes that Plaintiff brought this action in good faith, and not for an improper motive. Klein & Heuchan, 2011 WL 6097980, at *5; Luken, 581 F. Supp. 2d at 1245. Thus, this factor militates against awarding attorney's fees to Defendants.

### (3) Objective Unreasonableness

To determine whether the non-prevailing party's position was objectively unreasonable, courts consider "the clarity of the law with respect to the losing party's position at the time that the losing party pressed its argument." Luken, 581 F. Supp. 2d at 1240. To that end, courts consider whether the unsuccessful "position was patently without merit or otherwise clearly lacking a legal or factual basis." Klein & Heuchan, 2011 WL 6097980, at *2 (citation omitted). The Supreme Court has recently cautioned that "objective reasonableness can be only an important factor in assessing fee applications—not the controlling one." Kirtsaeng v. John Wiley & Sons, Inc., 136 S. Ct. 1979, 1988 (2016).

Defendants argue that Plaintiff's positions were objectively unreasonable because the "Court fully examined – and rejected – each of Plaintiff's theories of liability against [SSM]." See Motion for Fees [D.E. 148 at 9]. However, the fact that Plaintiff lost at summary judgement is insufficient to establish that Plaintiff's positions were objectively unreasonable. See Corwin v. Walt Disney World Co., No. 6:02-cv-1377-Orl-19KRS, 2008 WL 754697, at *7 (M.D. Fla. Mar. 18, 2008) ("The mere fact that summary judgment was granted to Worldco, in and of itself, also does not speak to whether Plaintiff's claims were 'objectively unreasonable.'"). Moreover, in summarizing the Court's findings in its Omnibus Order, Defendants simply made conclusory statements that Plaintiff's claims were objectively unreasonable. See Motion for Fees [D.E. 148 at 8-10]. However, a review of the Court's Omnibus Order on the Copyright Act Counts does not support Defendants' conclusion that Plaintiff's positions were objectively unreasonable. As to Counts I-III, the Court's determinations turned on close questions of fact and law. As to Count IV, Plaintiff did not respond to Defendants' arguments or move for summary judgment.

Therefore, the undersigned finds no support for Defendants' argument that Plaintiff's positions were objectively unreasonable. Klein & Heuchan, 2011 WL 6097980, at *2; Luken, 581 F. Supp. 2d at 1240. Hence, this factor militates against awarding attorney's fees to Defendants.

### (4) Considerations of Compensation and Deterrence

In evaluating this factor, courts consider whether awarding attorney's fees would further the purposes of the Copyright Act, Luken, 581 F. Supp. 2d at 1246, by looking to their findings with respect to the frivolousness, motivation, and objective unreasonableness of the non-prevailing party's positions. See Klein & Heuchan, 2011 WL 6097980, at *6; see also Malibu Media, 604 F. App'x at 881 ("As for considerations of compensation and deterrence, we evaluate

those factors as 'inextricably intertwined' with the reasonableness and frivolity of Malibu's claims.").

Here, the undersigned has already found that Plaintiff's case was not frivolous; that Plaintiff initiated this action in good faith, and not for an improper motive; and that there is no support for finding Plaintiff's positions to have been objectively unreasonable. Given these findings and the pre-suit history of this case, Plaintiff's claims properly served the purposes of the Copyright Act. See Malibu Media, 604 F. App'x at 881 ("If Malibu's claims were properly brought and properly maintained, then they properly served the purposes of the Copyright Act."). Put another way, awarding attorney's fees would frustrate the purposes of the Copyright Act if it deters plaintiffs from bringing reasonable actions in good faith to protect their copyrights. Klein & Heuchan, 2011 WL 6097980, at *6; see Luken, 581 F. Supp. 2d at 1246 ("Consistent with furthering the purposes of the Copyright Act, a party that advances a reasonable position should not be deterred from doing so for fear that it will have to pay attorney's fees if it loses." (citation omitted)). Hence, this factor also militates against awarding attorney's fees to Defendants.

## CONCLUSION

The undersigned has considered all of the Fogerty factors and has concluded that each of them militates against awarding attorney's fees to Defendants. Therefore, it is RESPECTFULLY RECOMMENDED that Defendants' Motion for Fees [D.E. 148] be DENIED.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen** days from the date of this Report and Recommendation to file written objections, if any, with the Honorable Ursula Ungaro. Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996

F.2d 1144, 1149 (11th Cir. 1993).  Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida, this 23rd day of February, 2017.

ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc:     United States District Judge Ursula Ungaro
        Counsel of Record