UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

| | |
|---|---|
| HYDENTRA HLP INT. LIMITED,<br>a foreign corporation d/b/a METART,<br><br>     Plaintiff,<br><br>v.<br><br>CONSTANTIN LUCHIAN, an individual,<br>KONSTANTIN BOLOTIN, an individual,<br>SUN SOCIAL MEDIA, INC., a corporation,<br>individually and d/b/a PLAYVID.COM,<br>FEEDVID.COM, PLAYVIDS.COM and<br>PEEKVIDS.COM; PLAYVID.COM;<br>FEEDVID.COM; PLAYVIDS.COM;<br>PEEKVIDS.COM; and<br>John Does 1-20,<br><br>     Defendants. | Case No.<br>1:15-cv-22134-UU |

**DEFENDANTS' OBJECTIONS TO MAGISTRATE'S REPORTAND AND RECOMMENDATION DENYING MOTION FOR ATTORNEY'S FEES**

**INTRODUCTION**

On June 2, 2016, this Court issued its Omnibus Order on the Motions for Summary Judgment (the "Omnibus Order"), dismissing all of the claims against Defendant Constantin Luchian ("Mr. Luchian") and dismissing all of the copyright claims and the state statutory claims against Defendants Sun Social Media, Inc. ("Sun Social") and Konstantin Bolotin ("Mr. Bolotin"), finding, in each instance, that the Defendants were entitled to judgment as a matter of law.

The Defendants moved for an award of their reasonable attorney's fees pursuant to 17 U.S.C., §505 and – despite finding that Defendants were prevailing parties on all of the copyright claims – the magistrate denied an award of such fees based primarily on her finding that

1

Plaintiff's complaint was not frivolous, a finding that was, in turn, based entirely on the Magistrate's finding that the Plaintiffs held valid copyrights in the allegedly infringing materials.

Given this Court's findings in the Omnibus Order – both that there had never been *any* basis for claims to be brought against Mr. Luchian and that there was no basis to find that any of the Defendants infringed upon Plaintiffs' copyrights – the Magistrate's Report and Recommendation ("RAR") must be rejected and an order requiring the Plaintiffs to pay Defendants' reasonable attorney's fees should enter.

In support of its objections, Defendants state as follows.

## PROCEDURAL HISTORY[1]

Plaintiff filed the present action on June 5, 2015. Docket No. 1. This lawsuit was one of at least 20 near-identical lawsuits filed by Plaintiff in federal courts around the country from February of 2015 through May of 2016.[2]

Plaintiff served the Defendants on July 15 and 16, 2015, Docket Nos. 11, 13, and agreed to extend the time for Defendants to file their response to the Complaint. On August 6, 2015 the Court *sua sponte* issued an Order to Show Cause as to why default should not be entered. Docket No. 15. Despite having agreed to allow Defendants more time to respond, Plaintiff filed a Motion for Judgment on August 19, 2015. Docket No. 20. On August 27, 2015, Defendants

---

[1] Because the Court provided an extensive recitation of facts in its Omnibus Order, which the Defendants incorporate by reference herein, a separate factual recitation is not included in this motion.
[2] *See Hydentra HLP Int. Limited v. Kporno.com et al*, Case No. 2:2015-cv-00238 (D. Arizona) (filed Feb. 10, 2015), *Hydentra HLP Int. Limited v. Tubenn.com et al*, Case No. 2:2015-cv-00239 (D. Arizona) (filed Feb. 10, 2015), *Hydentra HLP Int. Limited v. Pornvideoxo.com et al*, Case No. 2:2015-cv-00240 (D. Arizona) (filed Feb. 10, 2015), *Hydentra HLP Int. Limited v. Spankbang.com et al*, Case No. 2:2015-cv-00199 (W.D. Wash.) (filed Feb. 10, 2015), *Hydentra HLP Int. Limited v. HDPorn1080.com et al*, Case No. 2:2015-cv-00442 (D. Arizona) (filed March 11, 2015), *Hydentra HLP Int. Limited v. Pornburst.xxx et al*, Case No. 2:2015-cv-00443 (D. Arizona) (filed March 11, 2015), *Hydentra HLP Int. Limited v. Pornowow.com et al*, Case No. 2:2015-cv-00444 (D. Arizona) (filed March 11, 2015), *Hydentra HLP Int. Limited v. Seesexvideo.net et al*, Case No. 2:2015-cv-00371 (W.D. Wash.) (filed March 11, 2015), *Hydentra HLP Int. Limited v. Sextvx.com*, Case No. 2:2015-cv-00372 (W.D. Wash.) (filed March 11, 2015), *Hydentra HLP Int. Limited v. Porn69.org et al*, Case No. 2:2015-cv-00451 (D. Arizona) (filed March 12, 2015), *Hydentra HLP Int. Limited v. Motherless, Inc. et al*, Case No. 2:2015-cv-03834 (C.D. Cal.) (filed May 20, 2015), *Hydentra HLP Int. Limited v. Jojobaa.net*, Case No. 2:2015-cv-03904 (C.D. Cal.) (filed May 22, 2015), *Hydentra HLP Int. Limited v. Adultpornvideoxx.com et al*, Case No. 2:2015-cv-03950 (C.D. Cal.) (filed May 25, 2015), *Hydentra HLP Int. Limited v. Luchian et al*, Case No. 1:2015-cv-22134 (S.D. Fla.) (filed June 4, 2015), *Hydentra HLP Int. Limited v. Maximum Apps Inc. et al*, Case No. 1:2015-cv-22463 (S.D. Fla.) (filed June 30, 2015), *Hydentra, L.P. HLP General Partner, Inc. et al v. Mindgeek USA Inc. et al*, Case No. 1:2015-cv-23230 (S.D. Fla.) (filed August 27, 2015), *Hydentra, L.P. HLP General Partner, Inc. et al v. Era Technologies, Ltd. et al*, Case No. 1:2015-cv-24293 (S.D. Fla.) (filed November 18, 2015), *Hydentra, L.P. HLP General Partner, Inc. et al v. Siracusa Management S.A. et al*, Case No. 1:2016-cv-20191 (S.D. Fla.) (filed January 15, 2016), *Hydentra HLP Int. Limited v. Stach et al*, Case No. 2:2016-cv-00120 (E.D. Wash.) (filed April 15, 2016), *Hydentra HLP Int. Limited et al v. Sagan Limited et al*, Case No. 2:2016-cv-01494 (D. Ariz.) (filed May 16, 2016).

filed a Motion to Set Aside Default, Docket No. 26, which the Court granted on August 28, 2015.  Docket No. 30.

Defendants filed their Answer to the Complaint on September 1, 2015.  Docket No. 32.  Shortly thereafter, Plaintiff's counsel met and conferred with Defendant's counsel about its intention to file a Motion to Strike the Affirmative Defenses set forth in the Answer.  In response thereto, Defendants filed a Motion to Amend the Answer and Affirmative Defenses resolving all the issues raised by Plaintiffs in the proposed Motion to Strike on October 15, 2015.  Docket No. 38.  The Court allowed Defendants' Motion to Amend on October 16, 2015.  Despite the Amended Answer resolving all of the issues raised by Plaintiff in the proposed motion, Plaintiff filed its Motion to Strike anyway on October 29, 2015, seeking to strike every single affirmative defense.  Docket No. 41.  After briefing, the Motion to Strike was denied virtually in its entirety.  Docket No. 53.

Thereafter, Plaintiff began a steady and consistent course of filing frivolous motion after frivolous motion against Defendants.  On December 1, 2015, Plaintiff filed a Motion to Compel Answers to Requests for Production, Docket No. 51, which was denied almost in its entirety.  Docket No. 58.  On February 10, 2016, Plaintiff filed a Motion for Sanctions for Unlicensed Practice of Law, Docket No. 69, which was denied.  Docket No. 135.  Also on February 10, 2016, Plaintiff filed a Motion for Sanctions for Failure to Comply with Rule 30(b)(6), Docket No. 70, which was denied on February 23, 2016.  Docket No. 107.  On February 12, 2016, Plaintiff filed a Motion to Compel Arising From Instructions Not to Answer, and Refusal to Answer, Deposition Questions, Docket No. 71, which was denied on February 23, 2016.  Docket No. 107.

On February 5, 2016 the parties attended a mediation before Mr. John S. Freud.  Docket No. 63.  The mediation ended when Plaintiff and Plaintiff's counsel left shortly after its start.

On February 12, 2016, the parties filed cross-motions for summary judgment.  Docket Nos. 72, 73, 86.

On February 26, 2016, Defendants' Counsel Val Gurvits filed a Motion to Appear *Pro Hac Vice*.  Docket No. 110.  Despite having complained about Attorney Gurvits not having yet moved for admission, plaintiffs opposed the motion, Docket No. 114, and Defendants were required to reply to the opposition.  Docket No. 117.  The Court granted Mr. Gurvits' Motion to Appear *Pro Hac Vice* on February 29, 2016.  Docket No. 118.

After briefing the Motions for Summary Judgment, but before the issuance of the order thereon, the Parties began their pre-trial preparation. Defendants did not file Motions in Limine, but Plaintiff's filed an omnibus Motion in Limine on February 19, 2016 (Docket No. 98), which Defendants opposed. After full briefing, the Court denied 7 out of 10 parts of Plaintiff's Motion in Limine in their entirety. Docket No. 137. On February 26, 2016, the Parties filed their proposed jury instructions, pretrial stipulations and trial exhibit lists in accordance with the Court's scheduling order. Docket Nos. 111-113, 115-116.

On June 2, 2016, this Court issued the Omnibus Order. Docket No. 138. Defendant Constantin Luchian's Motion for Summary Judgment was granted in its entirety, dismissing him from the case. Defendants Sun Social Media, Inc. and Konstantin Bolotin's Motion for Summary Judgement was granted, resulting in the dismissal of all of the copyright claims and the state statutory claims against both defendants. Plaintiff's Motion for Partial Summary Judgment was denied in its entirety.

Following the issuance of the Omnibus Order, the Court ordered the parties to engage in a second mediation, which the parties held on June 6, 2016 before Mr. Mark A. Buckstein. The mediation resulted in an impasse after approximately two hours of discussion. Docket No. 143.

The day after the mediation, on June 7, 2016, Plaintiff filed a Motion to Dismiss all remaining claims in the litigation. Docket No. 140. The Court granted the Motion the same day, closing the case. Docket No. 141. The Court's order closing the case constituted the final judgment in this matter.

On July 1, 2016, Plaintiff filed a Notice of Appeal to appeal the Court's Omnibus Order on the Motions for Summary Judgment, noting that the order became a final judgment on June 7, 2016, upon the Court issuing its order on that date, closing the case. Docket No. 144.

On July 26, 2016, Plaintiff voluntarily dismissed its complaint in *Hydentra, L.P. HLP General Partner, Inc. et al v. ERA Technologies, Ltd. et al,* Case No. 1:15-cv-24293-MGC (S.D. Fla.) and in *Hydentra, L.P. HLP General Partner, Inc. et al v. Siracusa Management S.A. et al,* Case No. 1:16-cv-20191-RNS (S.D. Fla.). In both cases, Plaintiff explicitly referenced the adverse decisions in this case for the basis of its dismissal.

On August 8, 2016, Plaintiff moved to voluntarily dismiss its appeal of the Omnibus Order and, on August 18, 2016, the Eleventh Circuit Court of Appeals dismissed the appeal.[3]

## ARGUMENT

I.  Standard of Review

This Court "must review the Report and Recommendation's legal conclusions, as well as those objected to portions, *de novo*. *SEC v. Greenberg*, 105 F. Supp. 3d 1342, 1346, 2015 U.S. Dist. LEXIS 66486, *6 (S.D. Fla. 2015). *See also Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1308 (11th Cir. 2016)("A timely objection to a Magistrate Judge's Report and Recommendation requires a district court to review the objected-to findings or recommendations *de novo*"); *Willis v. United States,* 346 Fed. Appx. 404, 406 (11th Cir. 2009)("When a party objects to the findings contained in a magistrate judge's report and recommendation, the district court must conduct a de novo review of those findings.")

II.  Section 505 of the Copyright Act Authorizes an Award of Costs and Attorney's Fees.

"Under the Copyright Act, courts may award reasonable attorney's fees and costs to the prevailing party in a copyright infringement claim." *Katz v. Chevaldina*, 127 F. Supp. 3d 1285 (S.D. Fla. 2015). In the present case, it is undisputed that Defendants were "prevailing parties" as defined by the statute. *See* RAR, p. 7 ("Defendants prevailed at summary judgment on Plaintiff's Copyright Act Counts, and Plaintiff concedes that Defendants are the prevailing parties as to those Counts.").

"Section 505 of the Copyright Act contains only two requirements for awarding attorneys' fees: (1) the fees must be awarded to the prevailing party, and (2) the amount of fees awarded must be reasonable.… A showing of bad faith or frivolity is not a precondition to awarding attorney's fees." *Pronman v. Styles*, 2017 U.S. App. LEXIS 824, *6-7 (11th Cir. 2017).

The case law in this Court and in the Eleventh Circuit is consistent and clear on three crucial and relevant points: (1) an award of attorney's fees to a prevailing party is the rule, rather than the exception; (2) where the Defendants are the prevailing party, there is a "very strong"

---

[3] In yet another case in this court, *Hydentra HLP Int. Limited v. Maximum Apps Inc. et al*, Case No. 1:2015-cv-22463 (S.D. Fla.), the case was dismissed for lack of personal jurisdiction over any of the Defendants; the Plaintiffs appealed to the Eleventh Circuit, and the case was dismissed when Plaintiffs did not even bother to file a brief. Eleventh Circuit, Case No. 16-14813.

presumption in favor of an award of attorney's fees; and (3) an award of attorney's fees does not require a showing that the Plaintiff's claims were frivolous or brought in bad faith. *See*, *e.g.*, *Pronman*, *supra* at *7 ("In any case, even in cases where a plaintiff had a reasonable basis to file suit, the award of attorney's fees to a successful defendant is 'the rule rather than the exception,' and 'a finding of bad faith or frivolity is not required for an award.'" (citations omitted)); *Original Appalachian Artworks, Inc. v. McCall Pattern Co.*, 825 F.2d 355, 356-57 (11th Cir.1987) ("Prevailing defendants who are seeking attorney's fees under the Copyright Act need not show that the plaintiff pursued the case in bad faith or that the claims were frivolous."); *Strategic Mktg. v. Great Blue Heron Software, LLC*, 2017 U.S. Dist. LEXIS 23365, *5 (S.D. Fla. Feb. 16, 2017) ("[I]n copyright cases, 'although attorneys' fees are awarded in the trial court's discretion, they are the rule rather than the exception and should be awarded routinely.'"); *Katz v. Chevaldina*, 127 F. Supp. 3d 1285, 1297 (S.D. Fla. 2015) ("[A] finding of bad faith or frivolity is not required for an award. Where a defendant is the prevailing party in a copyright case, the presumption in favor of awarding fees to the defendant is very strong."); *Olem Shoe Corp. v. Wash. Shoe Co.,* 2015 U.S. Dist. LEXIS 186041, *21-22 (S.D. Fla. Oct. 5, 2015) ("A prevailing party in a copyright action need not prove blameworthiness or exceptional circumstances to be awarded attorneys' fees."); *Hermosilla v. Coca-Cola Co.*, 2011 U.S. Dist. LEXIS 156499, *9 (S.D. Fla. July 15, 2011) ("While the award of attorneys' fees under Section 505 lies within the discretion of the District Court, where a defendant is the prevailing party in a copyright case, the presumption in favor of awarding fees is very strong."); *Lil' Joe Wein Music, Inc. v. Jackson*, 2008 U.S. Dist. LEXIS 112730, *12-13 (S.D. Fla. June 6, 2008) ("A prevailing party in a copyright action need not prove blameworthiness or exceptional circumstances to be awarded attorney's fees.… While the award of attorney's fees under Section 505 lies within the discretion of the District Court, where a defendant is the prevailing party in a copyright case, the presumption in favor of awarding fees is very strong."); *Arista Records, Inc. v. Beker Enters., Inc.,* 298 F. Supp. 2d 1310, 1316 (S.D. Fla. 2003) ("In copyright cases, although attorneys' fees are awarded in the trial court's discretion, they are the rule rather than the exception and should be awarded routinely."). *See*, *also*, *Woodhaven Homes & Realty, Inc. v. Hotz*, 396 F.3d 822, 824 (7th Cir. 2005) ("When the prevailing party is the defendant…the presumption in favor of awarding fees is very strong. For without the prospect of such an award, the party might be forced into a nuisance settlement or deterred all together from exercising his rights.");

*Assessment Technologies of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434, 436 (7th Cir. 2004) (same).

In the context of this caselaw and the framework under which the Magistrate should have considered Defendants' Motion, the Court should reject the RAR's denial of the Plaintiff's Motion for Attorney's Fees.

### III. Consideration of the Applicable Factors Justifies an Award of Attorney's Fees

While "[t]here is no precise rule or formula" for determining whether the Court, in its discretion, should award attorney's fees to a prevailing party, the Supreme Court has identified the following nonexclusive factors, any of which the Court may consider: (1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) objective unreasonableness (both in the factual and in the legal components of the case); and (5) the need in particular circumstances to advance considerations of compensation and deterrence. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994); *Mitek v. Holdings, Inc. v. Arce Engineering Co.*, 198 F.3d 840, 842 (11th Cir. 1999) (enumerating *Fogerty* factors). *See*, *also*, *Katz*, 127 F. Supp. 3d at 1297 (same). Consideration of these factors demonstrates the appropriateness of a fee award to Defendants.

### A. Degree of Success Obtained

In its odd zeal to deny Defendants an attorney's fees award to which there exists a **strong presumption** of entitlement, the RAR ignores entirely this first factor.

In its Complaint, Plaintiff sought, among other things, over $5.5 million in damages and the forfeiture of the Defendants' internet domains. Instead, all of Plaintiff's copyright claims were resolved in favor of Defendants. Defendants' success in this action was total and complete. *See Maljack Prods., Inc. v. Goodtimes Home Video Corp.*, 81 F.3d 881, 890 (9th Cir. 1996) (award of attorney's fees proper where defendant, for which summary judgment was granted, "obtained total success in defending against [plaintiff's] copyright claims."). On June 7, 2016, Plaintiff voluntarily dismissed the remaining claims in the litigation. Docket No. 140. And, on August 8, 2016, Plaintiffs voluntarily dismissed their appeal to the Eleventh Circuit without ever having filed a brief – apparently recognizing that this Court's Omnibus Order stood squarely on a solid legal foundation. Accordingly, an award of fees is warranted.

7

B. <u>Frivolousness and Objective Unreasonableness</u>[4]

As is outlined in detail above, although a party's bad faith and/or the frivolousness of a party's claims *may* factor into the Court's decision to award fees, a finding of bad faith or frivolity is not required for an award. *Supra*, pp. 6-7. Indeed, the United States Supreme Court has recently reaffirmed the proposition that a fee award can be appropriate even when the losing party's position was objectively reasonable:

> This means in any given case a court may award fees even though the losing party offered reasonable arguments (or conversely, deny fees even though the losing party made unreasonable ones). For example, a court may order fee-shifting because of a party's litigation misconduct, whatever the reasonableness of his claims or defenses.… Or, a court may do so to deter repeated instances of copyright infringement or overaggressive assertions of copyright claims, again even if the losing position was reasonable in a particular case.

*Kirtsaeng v. John Wiley & Sons, Inc.,* 136 S. Ct. 1979, 1988-89 (2016). *See*, *also*, *Cable/Home Communication v. Network Productions, Inc.*, 902 F.2d 829, 853 (11th Cir. 1990) ("[A] showing of bad faith or frivolity is not a precondition to awarding attorney's fees."); *Casella v. Morris*, 820 F.2d 362, 366 (11th Cir. 1987); *Matthews v. Freedman*, 157 F.3d 25, 29 (1st Cir. 1998) ("Depending on other circumstances, a district court could conclude that the losing party should pay even if all of the arguments it made were reasonable.").

In the present case, however, regardless of how the Court conceptualizes this factor – unreasonableness, frivolousness, or bad faith – the facts counsel in favor of an award of fees. As a starting point, and as this Court properly recognized in the Omnibus Order, even at the summary judgment stage it was wholly unclear why the individual defendants were named as defendants in this case. *See* Omnibus Order, p. 13, fn. 4. With respect to Defendant Luchian, this Court concluded:

> There is no record evidence whatsoever to establish that Luchian had any involvement with the facts of this case, other than being listed as the Designated DMCA Agent on the United States Copyright Office's database. The Court finds Plaintiff has failed to meet its burden in establishing that there is a genuine dispute as to Luchian's liability for the claims being asserted against him.

Omnibus Order, p. 36.

---

[4] Although *Fogerty* listed these two factors separately, Courts frequently collapse the inquiry into one factor. *See*, *e.g.*, *Katz*, 127 F. Supp. 3d at 1298-99.

Similarly, the Court found that there were no allegations as to Defendant Bolotin, but rather that the Plaintiff lumped Mr. Bolotin together with corporate defendant Sun Social Media Inc., without actually articulating or proving any claims against Mr. Bolotin. Omnibus Order, p. 13, fn. 4. Without question, the claims brought against the individual defendants could not be considered anything other than frivolous.

Nor do the claims against Sun Social fare any better. In its exhaustive Omnibus Order, this Court fully examined – and rejected – each of Plaintiff's theories of liability against Sun Social. In brief, this Court rejected Plaintiff's claims for direct copyright infringement, agreeing with the Defendants that the Plaintiff had failed to plead or prove any volitional conduct on the Defendants' part that would subject it to direct liability:

> The Court agrees with Defendants that in imposing liability upon an internet service provider for third-party users' uploading of copyrighted material, Plaintiff must establish that Defendants engaged in a volitional act to cause the illegal copying. To find otherwise would impose liability upon an otherwise passive internet service provider for conduct that is simply out of its control.

Omnibus Order, p. 17.

The Court rejected Plaintiff's claim of contributory infringement, finding that Sun Social's websites were capable of substantial non-infringing uses:

> Defendants have demonstrated that their Websites are capable of substantial noninfringing uses, notwithstanding that copyrighted material is, at times, located on their Websites. The Court is satisfied that Defendants have met their burden in establishing that its Websites are capable of substantial, noninfringing purposes, which are legitimate and unobjectionable.

Omnibus Order, p. 28.

The Court rejected Plaintiff's claims of vicarious copyright infringement, finding that the Plaintiff had failed to demonstrate that the Defendants received any direct financial benefit as a result of the infringement:

> The Court agrees with Defendants that there is no record evidence to substantiate that Defendants have received a direct financial benefit from the uploading of Plaintiff's videos.… It is undisputed that Defendants' revenues stem solely from advertising. There is no evidence that Plaintiff's copyrighted videos drew additional traffic to Defendants' Websites. Plaintiff's argument that the infringed videos somehow attracted and drew more visitors to Defendants' Websites, which allowed Defendants to receive more revenue in advertisements, is not supported by record evidence and highly speculative.

Omnibus Order, pp. 29-30.

And, finally, the Court rejected Plaintiff's claims of copyright inducement, not only because the Plaintiff did not even bother to present argument in favor of its claim, but also because of a wholesale lack of record evidence to support such a claim:

> Defendants argue that they cannot be liable for inducement of copyright infringement because SSM has not induced or encouraged any user to engage in direct infringement. Bolotin Decl. ¶ 40. Plaintiff neither responds to Defendants' arguments as they pertain to Count IV, nor does Plaintiff move for summary judgment as to Count IV in its briefing. Aside from Plaintiff's failure to respond to Defendants' arguments, the Court agrees with Defendants that there is no record evidence that Defendants induced the third-party users' into uploading copyrighted material.

Omnibus Opposition, p. 30.

Despite this Court's comprehensive findings, the Magistrate found that the Plaintiff's claims were not frivolous based on a single finding: "Defendants conceded that Plaintiff owned valid copyrights to the videos at issue in this case.  Thus, the undersigned that Plaintiff's case was not frivolous."  RAR, p. 8.

It would be hard to overstate just how erroneous this conclusion is or how it would upend the legion of caselaw supporting attorney's fees awards for successful defendants.  It would, for example, mean that every defendant who succeeded on copyright claims with defenses of: fair use; DMCA safe harbor; lack of volitional behavior, license or consent; parody; de minimus use; or copyright misuse would all be denied recovery of attorney's fees because – in each instance – although the defendant was successful in defeating the claims, the Plaintiff held a valid copyright.  This is simply not the law.

Moreover, with respect to the individual defendants, the RAR's conclusion is all the more absurd.  This Court found no basis whatsoever for the allegations made against the individuals and yet the RAR would deny them recovery of attorney's fees simply because the Plaintiffs hold valid copyrights.  Under this theory, a copyright holder could sue every single individual within the United States (without any evidence that any of them infringed the Plaintiff's works), but the cases would still not be frivolous because "Plaintiff owned valid copyrights."

This conclusion recalls the old legal saw that: "to state the argument is to refute it."  As the Court's findings in the Omnibus Order indicate, each of Plaintiff's copyright claims were frivolous or, at a minimum, objectively unreasonable and brought in bad faith.  Indeed, because

the Plaintiff's claims were so lacking, the Court was never required to consider the other affirmative basis for the Defendants' Motion for Summary Judgment, namely that the Defendants were entitled to safe harbor under the Digital Millennium Copyright Act.  In other words, even if the Plaintiffs had managed to meet their burdens of proof under their copyright claims, they would nonetheless have failed.  As such, an award of fees is warranted.[5]

### C. Motivation

Defendants have long argued that the Plaintiff in this case has not acted in a manner consistent with a party legitimately looking to protect its intellectual property rights, but rather that the Plaintiff – which filed at least 20 boilerplate complaints in a 15-month timeframe – simply decided to exploit a new revenue stream, namely, wresting nuisance settlements from defendants who were otherwise faced with mounting legal fees.  Indeed, this case, and the others filed by the Plaintiff, have always been about one thing: forcing defendants to settle frivolous cases or face the pressure of ever-mounting legal bills.[6]  It is an understandable (if ethically questionable) tactic for the Plaintiff – which ordinarily relies on monthly subscriptions of $8.33 per user – to take.  Every $50,000 settlement that the Plaintiff extorts represents 6,000 monthly subscriptions that the Plaintiff need not sell.  It is, if one has no concern about the misuse of legal process, an excellent revenue model.  It is also precisely the type of lawsuit that Section 505 of the Copyright Act is intended to deter:

> [A]ttorney's fees should be awarded to deter plaintiffs from 'bringing unreasonable claims based on a cost/benefit analysis that tells such plaintiffs that they can score big if they win and that there will be no adverse consequences for losing.

*Lil' Joe Wein Music, Inc. v. Jackson*, 2008 U.S. Dist. LEXIS 112730, *21-22 (S.D. Fla. 2008).

---

[5] It is worth noting that, following the dismissal of the Plaintiff's copyright claims in this case, the Defendants also voluntarily dismissed two other actions filed in this Court.  Plaintiff voluntarily dismissed its complaint in *Hydentra, L.P. HLP General Partner, Inc. et al v. ERA Technologies, Ltd. et al,* Case No. 1:15-cv-24293-MGC (S.D. Fla.) and in *Hydentra, L.P. HLP General Partner, Inc. et al v. Siracusa Management S.A. et al,* Case No. 1:16-cv-20191-RNS (S.D. Fla.).  In both cases, Plaintiff explicitly referenced the adverse decisions in this case and the case in support of its dismissal.  Presumably, if the Plaintiff's cases were based on actual facts, the dismissal of one case would not mandate the dismissal of the other cases brought by the Plaintiff.

[6] Indeed, in this particular case, the Defendants (who had always been responsive to takedown notices received from the Plaintiff) pushed for an early mediation, hoping that the matter could be quickly and amicably resolved before either party was required to expend significant amounts on attorney's fees.  The Plaintiff refused all such overtures, insisting that they would not mediate until after all discovery had been completed, ensuring that a voluntary resolution was *less* likely to occur.  This was a perfect example of the old adage that pigs get fat and hogs get slaughtered.

Here, too, the rationale of the RAR is flawed.  The RAR, in essence, found that because the Plaintiffs were copyright holders whose videos had been allegedly been infringed, that the present action was, by necessity, brought in good faith.  In reaching this conclusion, the RAR seemingly ignored entirely: (a) the Parties' prior dealings (and Defendants' willingness to remove infringing content)[7]; (b) the Plaintiffs' conduct in numerous other litigations; (c) the Plaintiffs' conduct in this litigation; and (d) the Plaintiffs' post-litigation conduct.

The Plaintiff's actions in this litigation (and others) paint a picture of a Plaintiff willing to file frivolous motion after frivolous motion in an attempt to ratchet up Defendant's costs (and, thereby, the likelihood of settlement).  Because the Plaintiff's motivation was not the legitimate protection of its intellectual property, this factor, too, favors an award of fees.

### D.  Compensation and Deterrence

"The touchstone of attorney's fees under Section 505 is whether imposition of attorney's fees will further the interests of the Copyright Act." *Kernel Records Oy v. Mosley*, 2013 U.S. Dist. LEXIS 99094 (S. D. Fla. July 16, 2013) (finding that defendants' success weighed heavily in favor of an award of attorney's fees). "Defendants' efforts in pursuit of this successful defense should be compensated in order to encourage further meritorious defenses." *Id.* at *32.  *See*, *also*, *Mitchell-Proffitt Company v. Eagle Crest, Inc.*, 2005 U.S. Dist. LEXIS 33535, *7-8 (M.D. Fla. Nov. 28, 2005) ("Because copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible. To that end, defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent plaintiff are encouraged to litigate meritorious claims of infringement.… Defendant

---

[7] Defendants also note that Plaintiff's pre-litigation conduct demonstrates that the Plaintiff was not looking to legitimately protect its intellectual property rights.  Rather than sending its takedown notices via email (enabling the infringing content to be removed more expeditiously and more accurately), Plaintiff's sent hard copy takedown notices.   It is extremely unusual for studios that are actually interested in protecting their content to send such hard-copy takedown notices because sending such notices drastically *decreases* the likelihood that infringing content will be taken down.  This is true because the relevant links usually contain extremely long and random strings of characters.  When studios send electronic notices (as they usually do) a site can simply click on the allegedly infringing link (or cut and paste the link into a browser).  When a hard copy is sent, someone must manually type the long random string of characters into a web browser, increasing the possibility of error.  Sending hard copy notices is an attempt to create a forced error so that Hydentra can then initiate a frivolous suit.  Additionally, as this Court found, Sun Social had consistently and expeditiously removed infringing content from its sites when it received takedown notices from the Plaintiff.  Sun Social argued throughout the litigation that it had not received the takedown notices in issue in this litigation and, as the Court found, Sun Social promptly removed the allegedly infringing materials upon receiving the Complaint in this case.  Omnibus Order, p. 10.

should be compensated for its vigorous defense of the boundaries of copyright law."); *Katz*, 127 F. Supp. 3d at 1300 ("Just as when plaintiffs succeed on their claims, a successful defense also helps define the boundaries of copyright infringement law. It also continues to allow the public to have access to creative elements and ideas.… Under this last factor of compensation and deterrence, an award of attorney's fees furthers the goals of the Copyright Act and *Fogerty* by encouraging defendants to pursue their meritorious defenses to copyright infringement claims."); *Lil' Joe Wein Music, Inc.*, *supra*, at *21-22 ("[A]ttorney's fees should be awarded to deter plaintiffs from 'bringing unreasonable claims based on a cost/benefit analysis that tells such plaintiffs that they can score big if they win and that there will be no adverse consequences for losing.'" (*quoting Baker v. Urban Outfitters, Inc.,* 431 F. Supp. 2d 351, 359 (S.D.N.Y. 2006))).

Here, the RAR engaged in circular logic to find that an award of attorney's fees would not serve the goals of compensation and deterrence: basing its findings on its earlier (flawed) conclusions that the Plaintiffs' case was not frivolous and not brought in bad faith.

In truth, in the present case, the Defendants have – at great cost – defended an action that should never have been initiated and which Plaintiff litigated in a manner calculated to ensure that Defendants would incur the maximum amounts of costs and fees possible (going so far as to spurn efforts at earlier mediation). The Court's extensive Order has helped to define the contours of copyright liability. Indeed, there is no need to speculate as to whether the decision in this case will deter the Plaintiff from bringing other frivolous actions: since the Court's Order, the Plaintiff has already dismissed two other near-identical actions against other defendants, citing the Court's decision in this matter.[8]

For this reason as well, Defendants are entitled to an award of attorney's fees.

IV. <u>The Fees Sought By The Defendants Are Reasonable.</u>

In *Katz,* this Court discussed in detail the considerations for the District Court in determining the proper amounts of attorney's fees to be awarded:

> Having determined that Defendant is entitled to fees and costs, the Court must next determine what amount is reasonable. The Supreme Court has stressed that the determination of fees "should not result in a second major litigation."… Fee applicants must submit appropriate documentation to meet "the burden of establishing entitlement to an award."… "But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees

---

[8] The Plaintiff in another case (who is represented by the same counsel) also dismissed its action, citing to the Court's decision in this matter. *See AMA Multimedia, LLC v. ERA Technologies, Ltd.,* Case No. 1:15-cv-24289-FAM (S.D. Fla.), Docket No. 54, July 25, 2016.

> (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."
>
> The existing settled law in this Circuit mandates calculating a reasonable attorney's fee by using the Lodestar method, which requires this Court to multiply counsel's reasonable hourly rate by the reasonable hours expended. …Defendant bears the burden of documenting reasonable hourly rates and reasonable hours expended.

*Katz*, 127 F. Supp. 3d at 1031.

In the present case, the fees sought by the defendants are eminently reasonable: counsel's rates range from $300 per hour to $450 per hour, consistent with (if not lower than) the reasonable hourly rate charged by "lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). All counsel have submitted affidavits in connection with this Motion in support of the hourly rates charged.

Plaintiff would be hard-pressed to complain that the hourly rates charged are unreasonable: in a similar case (in which the Plaintiff obtained a default judgment), Hydentra's lead attorney, Spencer Freeman (lead counsel in this case as well), who has comparable experience as Attorneys Gurvits and Fray-Witzer, billed at $450 an hour, a rate that he represented to the Court was a reasonable one. *See* Exhibit 1 to Defendants' Motion for Attorney's Fees.

Similarly, the hours expended were reasonable given the complexities of the case, the number of motions filed by the Plaintiff, and the fact that the Defendants had already completed most of the trial preparations when the Court's Order was issued. A precise breakdown of the hours expended, sorted first by attorney and then by date, is attached as Exhibit 3 to Defendants' Reply in Support of Motion for Attorney's Fees (Docket No. 155-3) and is incorporated herein, by reference.

## **CONCLUSION**

For the reasons stated hereinabove and in the Declarations of Brady Cobb, Val Gurvits, Matthew Shayefar, and Evan Fray-Witzer, filed with Defendants' Motion for Attorney's Fees, and the reply in support thereof, Defendants respectfully object to the Magistrate's Report and Recommendation and request that the Court reject the RAR and, instead, allow Defendants' Motion for Attorney's Fees in the amount of $151,902.50.

Respectfully submitted this 8th day of March, 2017.

> COBB EDDY, PLLC
> 642 Northeast Third Avenue
> Fort Lauderdale, Florida 33304
> Telephone (954) 527-4111
> Facsimile  (954) 900-5507
>
> **By:    /s/ BRADY J. COBB**
> BRADY J. COBB, ESQUIRE
> Florida Bar No. 031018
> bcobb@cobbeddy.com
> *Attorney for Defendants Constantin Luchian, Konstantin Bolotin, and Sun Social Media Inc.*

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served electronically via the CM/ECF electronic filing system on all counsel or parties of record on the service list below this 8th day of March, 2017.

/s/ **Brady J. Cobb**
Brady J. Cobb

## SERVICE LIST

Aaron Behar, Esquire
Jaclyn Behar, Esquire
BEHARBEHAR
1840 North Commerce Parkway
Suite One
Weston, Florida 33326
Telephone: (954) 688-7642
Facsimile: (954) 332-9260
AB@BeharBehar.com
JB@BeharBehar.com

Spencer D. Freeman
Freeman Law Firm, Inc.
1107 1/2 Tacoma Avenue South
Tacoma, Washington 98402
Telephone: (206) 516-3800
Facsimile: (206) 516-3888
sfreeman@freemanlawfirm.org